# EXHIBIT C

https://drive.google.com/drive/folders/... 1/1

Hearing Date: 1/12/2022 9:30 AM - 9:30 AM
Courtroom Number: 2301
Location: District 1 Court
Cook County, IL

FILED
9/14/2021 3:50 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH04676

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **DEAN H. DUSSIAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.** ***2021CH04676*** |
| | ) | |
| **MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Dean H. Dussias ("Dussias"), by his attorneys, Golan Christie Taglia LLP, as his Complaint for Declaratory Judgment and Other Relief against Defendants, Merri Gleckler ("Gleckler"), and TMG Kreations, LLC, a Delaware limited liability company, d/b/a Kashwere ("TMG"), states as follows:

## NATURE OF THE ACTION

1. Dussias files this action to recover the fair and reasonable value of his ownership interest in TMG, which has been wrongfully withheld by Gleckler. The action arises from Gleckler's wrongful conduct in attempting to eliminate Dussias' ownership interest in TMG, in breach of the parties' agreement, and Gleckler's failure to compensate Dussias for such interest. Dussias seeks a declaration related to his rights and interest in TMG, an accounting and constructive trust on the amounts due and owing him currently and in the future, and damages for the breaches of contract, promissory estoppel, and fiduciary obligations. As an alternative to the breaches, Dussias seeks damages for the unjust enrichment Gleckler and TMG have received by virtue of their wrongful refusal to provide Dussias with the value of his ownership interest in TMG.

9/29/21, 10:58 AM Image (10).bmp

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

2. For more than 30 years, Dussias has led diverse businesses throughout the business cycle, at both private and public companies. His background includes working with high growth start-ups and mature businesses, strategy development, and turnaround situations. In or about May 2019, Dussias met with Gleckler, the CEO of TMG, better known as "Kashwere," a retailer of luxury clothing, bedding, and bath accessories. Dussias and Gleckler had known each other for approximately 10 years, since Dussias previously served as a consultant for TMG. During their meeting, Gleckler informed Dussias she was ending a business relationship with her then partner, Cedric Reingold ("Reingold") and Gleckler proposed to Dussias for him to join her as a co-owner and partner in TMG, and to take over Reingold's role. Dussias accepted Gleckler's offer and, in August 2019, Dussias began working with Gleckler at TMG.

3. Thereafter, Dussias stabilized and strengthened TMG's business in a variety of ways, including but not limited to its operations, accounting, marketing, and technology platforms. Gleckler consistently referred to Dussias as her co-owner and partner at TMG when communicating internally and to third parties. Gleckler never referred to Dussias as an employee and he was not subject to an employment agreement. Dussias served as TMG's President. Dussias paid a capital contribution to TMG affirming his ownership interest in TMG. TMG paid Dussias and Gleckler as co-owners, where each received payments in the form of draws, consisting of distributions against future profits.

4. Between February and April 2021, counsel for Gleckler and Dussias exchanged communications to attempt to formalize, in writing, certain additional terms to TMG's Operating Agreement to address corporate governance, distributions, and leadership, in furtherance of Gleckler's desire to secure Women's Business Enterprise ("WBE") certification for TMG. Also, during this same period and under Dussias' leadership, TMG launched nearly all of its new



Image (11).bmp 9/29/21, 10:58 AM 1/1

https://drive.google.com/drive/folders/1GCMRIlzRtzd9z7gwT7VjoA4tqDjdwZCdqX-x 1/1

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

infrastructure and technology rebuild. Subsequently, Gleckler purported to "terminate" Dussias' employment with TMG on April 22, 2021. Despite the numerous indices of Dussias' ownership interest in TMG, and Gleckler's repeated admissions that Dussias is a TMG owner (not an employee), Gleckler has refused to acknowledge her breach of their agreement. Accordingly, Dussias brings this action to recover his ownership interest in TMG.

## PARTIES

5. Dussias is an individual residing in Winnetka, Cook County, Illinois.

6. Gleckler is an individual residing in Scottsdale, Maricopa County, Arizona.

7. TMG is a Delaware limited liability company with its principal place of business located in Northbrook, Cook County, Illinois.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 735 ILCS 5/2-209 since the Defendants, individually and collectively, conduct business in Illinois, and TMG, the business that is the subject of this dispute, at all times maintained its principal place of business in Illinois.

9. Venue is proper in Cook County, Illinois, pursuant to 735 ILCS 5/2-101 because TMG's principal place of business is located in Cook County, Illinois, and Dussias' work on behalf of TMG was, at all relevant times, in Cook County, Illinois.

## FACTS

### I. Background On The Parties' Relationship

10. Dussias and Gleckler first became acquainted in or about 2009, when Dussias performed due diligence work regarding a transaction involving TMG. Thereafter, in or about 2013, Gleckler, on behalf of TMG, engaged Dussias to perform consulting work for TMG.



9/29/21, 11:00 AM Image (12).bmp

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

11. In his prior role as a consultant, Dussias became familiar with Kashwere's business model and developed a business relationship with TMG's owners, Gleckler and Reingold.

12. In or about May 2019, Dussias met with Gleckler in Arizona.

13. During their meeting, Gleckler advised Dussias she was involved in litigation with Reingold. Gleckler informed Dussias she expected a resolution of the dispute with Reingold would result in his exit from TMG.

14. Gleckler and Dussias discussed that, upon Reingold's departure, Dussias would be her business partner and co-owner in TMG.

15. Gleckler and Dussias further engaged in multiple communications relative to Dussias' joining TMG and the scope of his equity in the company.

16. On or about July 4, 2019, Gleckler confirmed in writing to Dussias that upon joining TMG, the scope of his ownership in TMG would include the following:

> "1. 20% Equity up until 5 million in sales then it increases to 30% Equity"
>
> "2. Should the company [TMG] be sold for under 5 million [,] Equity reverts back to 20%, 5 million and above . . . 30% Equity"
>
> "3. Should Merri [Gleckler] want to get out earlier than Dean [Dussias], Merri [Gleckler] will let Dean [Dussias] know and give him the ability to buy Merri [Gleckler] for the same offer"
>
> "4. Dean [Dussias] will receive pay of $8,000 a month: Timing TBD."
>
> "5. Shares will be transferred after March 15 final payment to Cedric [Reingold] but we can create a side agreement until then to confirm all."
>
> "6. Dean [Dussias] can *openly* work with Merri [Gleckler] once agreement is signed. (Believe by end of July)."

17. Gleckler confirmed Dussias would be a TMG co-owner. Initially, Dussias would own a 20% equity interest and then it would grow to a 30% equity interest after TMG's sales exceeded $5 million per annum. Subsequently, as further detailed below, in June 2020, Gleckler

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

and Dussias finalized Dussias' ownership interest in TMG at 30%, with such equity interest to commence on July 1, 2020. Thereafter, neither Gleckler nor Dussias would receive base salaries, but only distributions from their respective 70% and 30% ownership interests in TMG.

18. Gleckler's confirmation of Dussias' interest in TMG was never for Dussias to merely serve as a TMG employee, but to be a TMG owner.

19. Dussias was never subject to an employment agreement with TMG.

20. Gleckler never referred to Dussias as a TMG employee.

**II. Dussias' Role At TMG**

21. Dussias, relying upon his discussions with Gleckler and Gleckler's written confirmation of their business relationship should he join TMG, commenced working with Gleckler at TMG in August 2019, and, initially, was not compensated.

22. Dussias focused his early work on TMG's accounting, enterprise resource planning ("ERP"), and general ledger ("GL") systems.

23. Dussias worked closely with TMG personnel at the TMG warehouse located in Northbrook, Cook County, Illinois.

24. Within a short period at TMG, by the end of September 2019, Dussias led TMG warehouse operations since Reingold stopped his work at TMG. Thereafter, Reingold assisted Dussias on a transition basis only.

25. In addition to running warehouse operations, Dussias began to assume Reingold's other responsibilities, including but not limited to all of TMG's accounting and finance activities, accounts payable, accounts receivable, TMG payroll, and technology management.

26. In this capacity, Dussias created a strategy and framework to create enterprise value for TMG, all of which was discussed extensively with Gleckler, and included but was not limited



Image (14).bmp
9/29/21, 11:01 AM

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

to the following: (1) focusing on TMG's stability and a successful transition following Reingold's exit from the company; (2) rebuilding TMG's systems, processes, and infrastructure across marketing, distribution, operations, accounting, and, eventually, sales; and (3) delivering profitable growth from a rebuilt business foundation.

27. At the time Dussias joined TMG in August 2019, Gleckler and Reingold each shared a 50% equity interest in TMG, and were working toward execution of a Membership Interest Purchase Agreement (the "MIPA"), for Gleckler to acquire Reingold's equity interest in TMG.

28. Gleckler expressed to Dussias that she did not want her intentions for Dussias' role with TMG to be disclosed to Reingold.

29. As of October 2019, Dussias pointed out to Gleckler that TMG's balance sheet was weak and he coordinated TMG's obtaining of a $500,000 loan in order to purchase additional inventory to fund sales.

30. Dussias continued to lead TMG's growth strategy, whereby Dussias, among other activities, handled the following: (1) led the engagement of a marketing/branding specialist, and (2) strategized regarding the approach for terminating and replacing a TMG licensee based in Japan. At all relevant times, throughout these discussions and meetings with third parties, Gleckler referred to Dussias as her partner, never as an employee.

31. Beginning in or about November 2019, Dussias led TMG's work to select (1) a new web platform, whereby TMG switched from Magento to Shopify; (2) a new ERP/GL system, with a transition to NetSuite; (3) a new WMS/shipping service, known as ShipStation; (3) new ancillary services to enable Kashwere's digital marketing platform and a scalable store; and (4) outsource

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

TMG's warehouse operations to a new third party logistics (3PL) provider, known as Bergen Logistics.

32. Dussias' activities were designed to rebuild Kashwere, the TMG brand, from the inside, including all of its processes, personnel, distribution, and the brand, all of which would support revenue growth, increase profitability, and create value for TMG.

33. At all relevant times, Dussias kept Gleckler apprised of his activities, all geared toward the long–term, profitable growth of TMG. In addition to the growth strategy and infrastructure rebuild described above, Dussias began to focus his work and attention to (1) strengthen TMG's balance sheet; (2) change the relationship with TMG's licensee based in Japan; (3) improve TMG's relationships with suppliers; and (4) eventually develop an improved TMG presence in Europe.

34. Due in substantial part to Dussias' efforts, TMG's sales increased substantially in fiscal year 2020, rising approximately 30% over 2019, despite the COVID-19 pandemic.

**III. The TMG Operating Agreement**

35. On information and belief, TMG was formed on or about December 15, 2009.

36. On information and belief, TMG's only Operating Agreement was executed on December 30, 2009. A true and accurate copy of the Operating Agreement is attached hereto as Exhibit 1.

37. Pursuant to the terms of the Operating Agreement, Gleckler and Reingold were each identified as the sole Members and shared an equal 50% ownership interest in TMG.

38. On information and belief, following Gleckler's and Reingold's execution of the MIPA, Reingold's ownership interest in TMG was terminated in or about late 2019 or early 2020.



https://drive.google.com/drive/folders/1BCMRkRz8dzy7wT2V0AGtNDtCpRKUydX 1/1
9/29/21, 11:02 AM Image (16).bmp

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

39. After the MIPA was finalized, Gleckler never presented the Operating Agreement to Dussias or required him to execute any documents relating thereto.

40. Instead, at all relevant times, following Gleckler's acquisition of Reingold's interest, Gleckler referred to Dussias as her co-owner and partner in TMG, orally, by conduct, and in written communications to third parties.

41. Gleckler never presented any document to Dussias to sign to confirm the terms of the Operating Agreement, or for Dussias to consent that his ownership interest was subject to and bound by the Operating Agreement or pursuant to any other document.

**IV. Dussias As A Member Of TMG**

42. At the end of January 2020 and early February 2020, Dussias met with Gleckler, and Gleckler's husband, Rob Gleckler, in Arizona, and discussed TMG completing its obligations related to the MIPA with Reingold, with Dussias thereafter to formalize his ownership interest in TMG.

43. As of March 2020, the MIPA was finalized. TMG made its final payment to Reingold and, thereafter, TMG had no further obligations to Reingold.

44. During the Spring of 2020, Dussias continued to work to strengthen TMG's performance and operations, which included his selection of Shopify as TMG's web platform, Anatta Design as TMG's lead web development group, and NetSuite as its enterprise resource planning system and general ledger.

45. In addition, throughout this period, Dussias led TMG's finalizing of contracts with multiple vendors, including but not limited to NetSuite, Anatta Design, and Shopify. Dussias executed each of these vendor contracts, with Gleckler's knowledge and approval, on behalf of TMG. Further, Dussias maintained a continuous, daily leadership presence over all employee



9/29/21, 10:59 AM Image (17).bmp https://drive.google.com/drive/folders/ 1/1

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

activity and operations at TMG's warehouse in Northbrook, Illinois. Dussias was also responsible for the hiring and firing of warehouse staff, all of which coincided with the early stages of the COVID-19 pandemic when many businesses were shuttered.

46. On March 28, 2020, TMG sent an email blast to approximately 16,000 Kashwere customers, with a subject line entitled "Kashwere for you, family and friends" (the "March 2020 Email"). In the March 2020 Email, TMG notified its customers regarding its founding principles; a 20% discount offer for the purchase of its products; and a charitable donation Kashwere was making to an organization supporting healthcare workers. At the conclusion of the email, TMG specifically identifies its two "Owners" as Gleckler and Dussias.

47. Thereafter, beginning in June 2020, Gleckler and Dussias engaged in discussions with David Lazar ("Lazar") to join TMG and to continue to accelerate the building of Kashwere's digital retail presence. In that capacity, Lazar's role was to enable TMG's digital presence and ensure its success in marketing directly to consumers. Moreover, the eventual goal was to bring Kashwere products to prominent retailers, such as Nordstrom and other similar retailers. Gleckler and Dussias also discussed with Lazar his potential to obtain an equity interest in TMG. During those discussions, Gleckler and Dussias specifically advised Lazar that Gleckler owns a 70% interest in TMG, and Dussias owns a 30% interest in TMG.

48. Ultimately, Lazar joined TMG solely as a consultant, without any equity interest.

49. Prior to Lazar's joining TMG, Gleckler and Dussias further discussed and finalized the economics of their relationship at TMG, including Dussias' ownership interest. They agreed that, after July 1, 2020, Gleckler and Dussias would each receive distributions against their respective share of profits.

https://drive.google.com/drive/folders/1X7Y2oHdnNXzTfL8ehQhtVnPZ-bkxJ 1/1

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

50. In mid-June 2020, Gleckler and Dussias agreed that each would receive one-time distributions of 70% ($17,916.50 to Gleckler) and 30% ($7,678.50 to Dussias), with such distributions paid by TMG to Gleckler and Dussias on June 15, 2020.

51. Gleckler and Dussias further agreed Gleckler would receive a $25,000 monthly draw as TMG's co-owner, and Dussias would receive a $15,000 monthly draw as TMG's co-owner, and that these payments would serve as distributions against their share of profits.

52. On June 30, 2020, pursuant to Dussias' agreement with Gleckler regarding his ownership in TMG, Dussias made a capital contribution of $20,000 to TMG.

53. In addition to their respective monthly draws, TMG paid Gleckler's and Dussias' monthly health care premiums and vehicle/expense allowances. Such payments were only made to TMG's owners, and not paid to any TMG employees.

54. On a going forward basis, after July 1, 2020, Gleckler continued as TMG's CEO and Dussias continued as TMG President. Both Gleckler and Dussias each were paid their respective monthly draws ($25,000 to Gleckler and $15,000 to Dussias), health care premiums, and vehicle/expense allowances, consistent with their agreed upon respective ownership interests of 70% and 30% in TMG.

55. In or about November 2020, TMG's Annual Report was filed with the Illinois Secretary of State, with Dussias identified as both TMG's President and as an Owner.

**IV. Negotiation Of An Amended Operating Agreement**

56. By the end of 2020, Gleckler and Dussias discussed the need to assemble an Amended Operating Agreement, since Gleckler sought to obtain WBE certification for TMG.

57. Between approximately February and April 2021, Gleckler and Dussias, through their respective counsel, exchanged multiple drafts of proposed Amended Operating Agreements



9/29/21, 11:04 AM Image (19).bmp

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

to discuss additional terms regarding corporate governance, distributions, and leadership, in furtherance of Gleckler's desire to secure WBE certification for TMG.

58. Through the process of reviewing the additional terms exchanged by the parties, Gleckler and Dussias also included TMG's accountant, Ray Conway ("Conway").

59. During those discussions with Conway, including email communications on February 18, 2021, Gleckler advised Conway regarding Dussias' ownership in TMG whereby Gleckler specifically stated: "Dean is a Member not a Manager."

**V. Gleckler's Improper Attempt To "Terminate" Dussias**

60. On April 22, 2021, counsel representing Gleckler and TMG sent a letter to Dussias' counsel informing Dussias that Gleckler and TMG "will not be pursuing the completion of the offer of membership into the Company by your client, Dean Dussias" (the "April 22 Letter").

61. The April 22 Letter ignored the fact that, in July 2019, as a condition to Dussias' joining TMG, Gleckler confirmed to him in writing an ownership interest in TMG. In return, Dussias accepted Gleckler's proposal and thereafter commenced working on behalf of TMG. Indeed, after Reingold exited TMG, Gleckler notified approximately 16,000 customers that she and Dussias were "Owners."

62. Further, the April 22 Letter ignored the fact that, in June 2020, Gleckler requested and Dussias agree to formalize his ownership whereby Dussias would not receive any base compensation, but only distributions. Beginning July 1, 2020, Dussias was only to be entitled and paid distributions by TMG, with no other compensation paid to him other than (i) the equity value of his 30% ownership of TMG; and (ii) health care benefits and vehicle/expense allowance, which were only paid to TMG's owners, Gleckler and Dussias.



https://drive.google.com/drive/folders/1XMARMZDqbyw8FVV1V2-HUiqDvktopqux 1/1
Image (20).bmp 9/29/21, 11:04 AM

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

63. The April 22 Letter further stated that the offer of membership was "predicated on your client performed [sic] certain roles and responsibilities for the Company," and states that since the offer was made, Dussias "has a [sic] made a series of mismanagement decisions, entered into deceptive behaviors, breached his fiduciary duties, and failed to perform critical tasks that has placed the Company in a serious financial and logistics issue."

64. Collectively, each of the foregoing allegations in the April 22 Letter are false and without any factual support.

65. Moreover, the allegations contained in the April 22 Letter constitute a misleading pretext for Gleckler to attempt to withhold and revoke Dussias' ownership interest which she promised to Dussias upon joining TMG with Reingold's departure, and which Dussias accepted.

66. Dussias, through counsel, replied in detail to the April 22 Letter, outlining the myriad of ways the allegations in the April 22 Letter are completely and utterly false. To date, the parties have been unable to resolve this matter and thus, Dussias has initiated this action to recover the fair and reasonable value of his ownership interest in TMG.

## CAUSES OF ACTION

## COUNT I
## DECLARATORY JUDGMENT

67. Dussias realleges and incorporates paragraphs 1 through 66 as through fully stated herein.

68. TMG remains in operation and continues to conduct business as Kashwere.

69. Gleckler, on behalf of TMG, has impermissibly withheld Dussias' ownership interest in TMG.

70. Dussias is entitled to an allocation of thirty percent (30%) of TMG's profits from July 1, 2020, and continuing to date, consistent with his ownership interest in TMG.



https://drive.google.com/drive/folders/1kNWhHMEdqTq9-FLV1V2H4NDfdcpbjbux 1/1
9/29/21, 11:04 AM Image (21).bmp

https://drive.google.com/drive/folders/1...
1/1

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

71. Dussias is entitled to payment of the fair and reasonable amount representing thirty percent (30%) of TMG's equity value.

72. Dussias has an inadequate remedy at law.

73. As a result of the above and foregoing, there is an actual case in controversy between Dussias and the Defendants.

**WHEREFORE**, Plaintiff, Dean H. Dussias, respectfully requests this Honorable Court enter an Order:

A. Finding Defendants, Merri Gleckler and TMG Kreations, LLC, wrongfully and impermissibly attempted to terminate Dussias' interest in TMG;

B. Finding Dussias is entitled to an allocation of thirty percent (30%) of TMG's profits from July 1, 2020, and continuing to date, consistent with his ownership interest in TMG;

C. Finding Dussias is entitled to payment of the fair and reasonable amount representing thirty percent (30%) of TMG's equity value; and

D. Granting such other and further relief as this Court deems just and proper.

**COUNT II**
**ACCOUNTING AND CONSTRUCTIVE TRUST**

74. Dussias re-alleges and incorporates by reference paragraphs 1 through 73 as though they were fully set forth and stated herein.

75. Gleckler and TMG owe fiduciary duties to Dussias with respect to the payment to Dussias of thirty percent (30%) of TMG's profits from July 1, 2020, and continuing to date, consistent with his ownership interest in TMG.

76. Gleckler was at all relevant times in a position of trust and confidence with respect to Dussias in the performance of her duties as CEO of TMG.



Image (22).bmp
9/29/21, 11:05 AM

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

77. Dussias cannot account for the allocation of profits earned by TMG, because Dussias does not control the books and records of TMG, as such financially information is solely controlled by Gleckler.

78. Gleckler and TMG have not accounted to Dussias with respect to the payments owed to Dussias for his interest in TMG.

79. Dussias has an inadequate remedy at law.

**WHEREFORE**, Dean H. Dussias, respectfully requests that this Honorable Court enter an Order:

A. Requiring Defendants to account for all profits earned by TMG from January 1, 2020 to date;

B. Imposing a constructive trust against Defendants with respect to TMG's profit allocation to Dussias;

C. Imposing a constructive trust against Defendants with respect to any and all distributions owed to Dussias, consistent with his ownership interest in TMG; and

D. Granting such further relief as this Court deems just and appropriate.

**COUNT III**
**BREACH OF CONTRACT**

80. Dussias re-alleges and incorporates by reference paragraphs 1 through 79 as though they were fully set forth and stated herein.

81. TMG, Gleckler, and Dussias, by their collective conduct, including oral and written communications, created a valid and enforceable agreement, whereby Gleckler and Dussias each served as co-owners of TMG.

82. In exchange for Gleckler's promise of ownership, Dussias commenced working on behalf of TMG. Dussias stabilized and strengthened TMG's business in a variety of ways,

1/1 https://drive.google.com/drive/...

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

including but not limited to its operations, accounting, and technology platforms, beginning in August 2019, and continuing to April 2021.

83. Dussias' leadership of TMG included, but not was not limited to, the selection of (1) a new web platform, whereby TMG switched from Magento to Shopify; (2) a new ERP/GL system, with a transition to NetSuite; (3) a new WMS/shipping service, known as ShipStation; (3) a new ancillary services to enable Kashwere's digital marketing platform and scalable store; and (4) a new third party logistics (3PL) provider, known as Bergen Logistics.

84. TMG's sales increased substantially in fiscal year 2020, rising approximately 30% over 2019, despite the COVID-19 pandemic, due in large part to Dussias' foregoing activities on behalf of TMG.

85. Dussias fully performed and satisfied the terms of the parties' agreement.

86. Gleckler and TMG materially breached the agreement by:

a. wrongfully and impermissibly attempting to terminate Dussias' interest in TMG;

b. failing and refusing to adequately account to Dussias concerning the expenses incurred, and the profits earned, by TMG;

c. failing to allocate thirty percent (30%) of TMG's profits to Dussias from July 1, 2020, and continuing to date, consistent with his ownership interest in TMG;

d. failing to pay Dussias the fair and reasonable amount representing thirty percent (30%) of TMG's equity value.

87. Dussias has sustained damages in an amount to be proven at trial, proximately caused by TMG and Gleckler's breach of the agreement.

**WHEREFORE**, Dean H. Dussias, respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, Merri Gleckler and TMG Kreations, LLC, in an



9/29/21, 11:06 AM Image (24).bmp

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

amount to be proven at trial, plus pre-judgment interest, and grant such further relief as this Court deems just and appropriate.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**

88. Dussias re-alleges and incorporates by reference paragraphs 1 through 87 as though they were fully set forth and stated herein.

89. Gleckler has an obligation of loyalty and good faith in their dealings with Dussias with respect to TMG.

90. Gleckler has a fiduciary duty to Dussias with respect to Dussias' ownership interest in TMG and such amounts distributable to Dussias consistent with said interest.

91. Gleckler breached her fiduciary duties to Dussias by:

a. failing and refusing to adequately account to Dussias concerning the expenses incurred, and the profits earned, by TMG;

b. failing to allocate thirty percent (30%) of TMG's profits to Dussias from July 1, 2020, and continuing to date, consistent with his ownership interest in TMG; and

c. failing to pay Dussias the fair and reasonable amount representing thirty percent (30%) of TMG's equity value.

92. Dussias has sustained damages as a direct and proximate result of Gleckler's breaches of her fiduciary duties.

**WHEREFORE**, Dean H. Dussias, respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, Merri Gleckler and TMG Kreations, LLC, in an amount to be proven at trial, plus pre-judgment interest, and grant such further relief as this Court deems just and appropriate.



https://drive.google.com/... 1/1
Image (25).bmp 9/29/21, 11:07 AM

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

**COUNT V**
**PROMISSORY ESTOPPEL**

93. Dussias re-alleges and incorporates by reference paragraphs 1 through 92 as though they were fully set forth and stated herein.

94. Gleckler made an unambiguous promise to Dussias that, should he join her at TMG, Dussias would serve as a co-owner of TMG.

95. At all relevant times, through and including April 2021, Dussias worked on behalf of TMG, as its co-owner, in reliance upon such promise by Gleckler.

96. Dussias' reliance upon Gleckler's promise was expected and foreseeable by Gleckler.

97. Dussias relied upon Gleckler's promise to his detriment, and has been wrongfully denied his ownership interest in TMG.

**WHEREFORE**, Dean H. Dussias, respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, Merri Gleckler and TMG Kreations, LLC, in an amount to be proven at trial, plus pre-judgment interest, and grant such further relief as this Court deems just and appropriate.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Pled In the Alternative to Count III)**

98. Dussias re-alleges and incorporates by reference paragraphs 1 through 79, and 88 through 97, as though they were fully set forth and stated herein.

99. Throughout the period August 2019, to and including April 2021, TMG and Gleckler received the benefit of Dussias' services.

100. Dussias performed his duties for TMG and Gleckler in reliance upon Gleckler's promise to Dussias that such work was performed in his capacity as a co-owner of TMG.

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

101. Notwithstanding TMG's and Gleckler's receipt of the benefit of Dussias' services in reliance upon Gleckler's promises, TMG and Gleckler have failed to remit to Dussias such amounts to which he is entitled as a co-owner of TMG.

102. TMG and Gleckler's retention of the ownership interest earned by Dussias was to the detriment of Dussias, and violates the principles of justice, equity, and good conscience.

**WHEREFORE**, Dean H. Dussias, respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, Merri Gleckler and TMG Kreations, LLC, in an amount to be proven at trial, plus pre-judgment interest, and grant such further relief as this Court deems just and appropriate.

DATED: September 14, 2021

Respectfully submitted,

**DEAN H. DUSSIAS**

By: _/s/ David J. Ben-Dov_
One of His Attorneys

David J. Ben-Dov (djbendov@gct.law)
Brittany N. Bermudez (bnbermudez@gct.law)
Golan Christie Taglia LLP
70 West Madison Street
Suite 1500
Chicago, IL 60602
Firm I.D. 42399
(312) 696-1361

1/1

FILED
9/14/2021 3:50 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
*2021CH04676*

14816073

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

# EXHIBIT 1

Image (28).bmp
9/29/21, 11:08 AM

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

# TMG Kreations, LLC

## Operating Agreement

THIS OPERATING AGREEMENT of TMG Kreations, LLC (the "Company") is entered into as of the date set forth on the signature page hereto by each of the persons named in Exhibit A hereto (referred to individually as a Member and collectively as the Members).

A. The Company has been formed as a limited liability company under Chapter 18 of Title 6, et seq., of the Delaware Code (the "Delaware Limited Liability Company Act"), by the filing of the certificate of formation with the office of the Secretary of State of Delaware. The Company may carry on any lawful business, purpose or activity permitted under the Act.

B. The location of the principal place of business of the Company shall be determined by the Members. In addition, the Company may maintain such other offices as the Manager may deem advisable at any other place or places within or without the United States.

C. The registered agent for the Company is set forth in the Company's certificate of formation, provided that the Members may from time to time designate another registered agent by appropriate filings with the Secretary of State.

D. The term of the Company commenced on the date of filing of the certificate of formation and shall be perpetual, unless an earlier term is specified in Section 8.1 or the Company is dissolved and terminated in accordance with the provisions of this Agreement

E. The Members enter into this agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

NOW THEREFORE, the Members agree as follows:

### ARTICLE 1: DEFINITIONS

Capitalized terms used in this agreement have the meanings specified in this Article or elsewhere in this agreement and when not so defined shall have the meanings set forth in the Delaware Limited Liability Company Act.

"Capital Contribution" means the amount of cash, property or services contributed to the Company.

"Company" means TMG Kreations, LLC, a Delaware limited liability company.

"Member" means a Person who acquires Membership Interests, as permitted under this agreement, and who becomes or remains a Member.

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

"Membership Interests" means either Percentage Interest or Units, based on how ownership in the Company is expressed on Exhibit A.

"Percentage Interest" means a percent ownership in the Company entitling the holder to an economic and voting interest in the Company.

"Person" means an individual, partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Unit" means a unit of ownership in the Company entitling the Member holding such Unit to an economic interest and a voting interest in the Company.

ARTICLE 2: CAPITAL AND CAPITAL CONTRIBUTIONS

2.1 **Initial Capital Contributions and Membership Interests.** The Capital Contributions of the initial Members, as well as the Membership Interests of each Member, are listed in Exhibit A, which is made part of this agreement. Membership Interests in the Company may be expressed either in Units or directly in Percentage Interests.

2.2 **Subsequent Contributions.** No Member shall be obligated to make additional capital contributions unless unanimously agreed by all the Members.

2.3 **Capital Accounts.** Individual capital accounts may be maintained for each Member consisting of that Member's Capital Contribution, (1) increased by that Member's share of profits, (2) decreased by that Member's share of losses and company expenses, (3) decreased by that Member's distributions and (4) adjusted as required in accordance with applicable tax laws.

2.4 **Interest.** No interest shall be paid on Capital Contributions or on the balance of a Member's capital account.

2.5 **Limited Liability.** A Member shall not be bound by, or be personally liable for, the expenses, liabilities, or obligations of the company except as otherwise provided in this agreement or as required by law.

ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1 **Allocations.** The profits and losses of the Company and all items of Company income, gain, loss, deduction, or credit shall be allocated, for Company book purposes and for tax purposes, pro rata in proportion to relative Membership Interests held by each Member.

3.2 **Distributions.** The Company shall have the right to make distributions of cash and property to the Members pro rata based on the relative Membership Interests. The timing and



https://drive.google.com/drive/folders/... 1/1
Image (30).bmp 9/29/21, 11:09 AM

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

amount of distributions shall be determined by the Members in accordance with Delaware law.

ARTICLE 4: MANAGEMENT

4.1 **Management.** The business of the Company shall be managed by the Members. In the event of a dispute between Members, final determination shall be made by a vote of the majority of the Members (unless a greater percentage is required in this Agreement or under Delaware law). Any Member may bind the Company in all matters in the ordinary course of business.

4.2 **Banking.** The Members are authorized to set up one or more bank accounts and are authorized to execute any banking resolutions provided by the institution where the accounts are being set up. All funds of the Company shall be deposited in one or more accounts with one or more recognized financial institutions in the name of the Company.

4.3 **Officers.** The Members are authorized to appoint one or more officers from time to time. The officers shall hold office until their successors are chosen and qualified. Subject to any employment agreement entered into between the officer and the Company, an officer shall serve at the pleasure of the Members. The current officers of the Company are listed on Exhibit B.

ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1 **Accounts.** Complete books of account of the Company's business, in which each Company transaction shall be fully and accurately entered, shall be kept at the Company's principal executive office and shall be open to inspection and copying on reasonable notice by any Member or their authorized representatives during normal business hours for purposes reasonably related to the interest of such person as a Member. The costs of such inspection and copying shall be borne by the Member.

5.2 **Records.** At all times during the term of existence of the Company, and beyond that term if the Members deems it necessary, the Members shall keep or cause to be kept the following:

(a) A current list of the full name and last known business or residence address of each Member, together with the Capital Contribution, the amount and terms of any agreed upon future Capital Contribution, and Membership Interest of each Member;

(b) A copy of the certificate of formation, as amended;

(c) Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six most recent taxable years; and

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

(d) An original executed copy or counterparts of this agreement and any amendments.

5.3 **Income Tax Returns**. Within 45 days after the end of each taxable year, the Company shall use its best efforts to send to each of the Members all information necessary for the Members to complete their federal and state income tax or information returns and a copy of the Company's federal, state, and local income tax or information returns for such year.

5.4 **Tax Matters Member**. Cedric Reingold shall act as tax matters member of the Company to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities and to expend Company funds for professional services and costs associated therewith.

## ARTICLE 6: MEMBERSHIP--MEETINGS, VOTING

6.1 **Members and Voting Rights**. Members shall have the right and power to vote on all matters with respect to which this agreement or Delaware law requires or permits such Member action. Voting shall be based on Membership Interests. Unless otherwise stated in this Agreement or under Delaware law, the vote of the Members holding a majority of the Membership Interests shall be required to approve or carry an action.

6.2 **Meetings**. Regular or annual meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company.

A written notice shall be given not less than 10 days nor more than 60 days before the date of the meeting to each member entitled to vote at the meeting. In any instance in which the approval of the Members is required under this agreement, such approval may be obtained in any manner permitted by Delaware law, including by conference telephone or similar communications equipment. In addition, any action which could be taken at a meeting can be approved without a meeting and without notice if a consent in writing, stating the action to be taken, is signed by the holders of the minimum Membership Interest needed to approve the action. A consent transmitted by electronic transmission shall be deemed to be written and signed for purposes of this paragraph.

## ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1 **Withdrawal**. A Member may withdraw from the Company prior to the dissolution and winding up of the Company with the unanimous consent of the other Members, or if such Member transfers or assigns all of his or her Membership Interests pursuant to Section 7.2 below. A Member which withdraws pursuant to this Section 7.1 shall be entitled to a distribution in an amount equal to such Member's Capital Account.



https://drive.google.com/drive/folders/1CNNhFV7/24OD5xnJU4ulPD0Kzx 1/1

9/29/21, 11:10 AM Image (32).bmp

https://drive.google.com/drive/folders/1X...
1/1

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

7.2 **Restrictions on Transfer**. A Member shall not transfer any Membership Interests, whether now owned or later acquired, unless Members holding a majority of the Membership Interests not subject to transfer consent to such transfer. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A person which acquires Membership Interests in accordance with this section shall be admitted as a Member of the Company after the person has agreed to be bound by the terms of this Operating Agreement by executing a consent in the form of Exhibit C.

ARTICLE 8: DISSOLUTION AND WINDING UP

8.1 **Dissolution.** The Company shall be dissolved upon the first to occur of the following events:

(a) The vote of Members holding a majority of the outstanding Membership Interests to dissolve the Company.

(b) Entry of a decree of judicial dissolution under the Delaware Limited Liability Company Act.

(c) At any time there are no Members, provided that the Company is not dissolved and is not required to be wound up if, within 180 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and to the admission of the legal representative of such Member or its assignee to the Company as a Member, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member.

8.2 **No automatic dissolution upon certain events**. Neither the death, incapacity, disassociation, bankruptcy or withdrawal of a Member shall automatically cause a dissolution of the Company.

ARTICLE 9: INDEMNIFICATION

9.1 **Indemnification**. The Company shall have the power to indemnify any Person who was or is a party, or who is threatened to be made a party, to any proceeding by reason of the fact that such Person was or is a Member, Manager, officer, employee, or other agent of the Company, or was or is serving at the request of the Company as a director, manager, officer, employee, or other agent of another limited liability company, corporation, partnership, joint venture, trust, or other enterprise, against expenses, judgments, fines, settlements, and other amounts actually and reasonably incurred by such Person in connection with such proceeding, if such Person acted in good faith and in a manner that such Person reasonably believed to be in the best interests of the Company, and, in the case of a criminal proceeding, such Person had no



Image (33).bmp
9/29/21, 11:10 AM

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

reasonable cause to believe that the Person's conduct was unlawful. The termination of any proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Person did not act in good faith and in a manner that such Person reasonably believed to be in the best interests of the Company, or that the Person had reasonable cause to believe that the Person's conduct was unlawful.

To the extent that an agent of the Company has been successful on the merits in defense of any proceeding, or in defense of any claim, issue, or matter in any such proceeding, the agent shall be indemnified against expenses actually and reasonably incurred in connection with the proceeding. In all other cases, indemnification shall be provided by the Company only if authorized in the specific case unanimously by all of the Members.

"Proceeding," as used in this section, means any threatened, pending, or completed action or proceeding, whether civil, criminal, administrative, or investigative.

9.2 **Expenses.** Expenses of each Person indemnified under this agreement actually and reasonably incurred in connection with the defense or settlement of a proceeding may be paid by the Company in advance of the final disposition of such proceeding, as authorized by the Members who are not seeking indemnification upon receipt of an undertaking by such Person to repay such amount unless it shall ultimately be determined that such Person is entitled to be indemnified by the Company.

"Expenses," as used in this section, includes, without limitation, attorney fees and expenses of establishing a right to indemnification, if any, under this section.

ARTICLE 10: GENERAL PROVISIONS

10.1 **Entire Agreement; Amendment.** This agreement constitutes the whole and entire agreement of the parties with respect to the subject matter of this agreement, and it shall not be modified or amended in any respect except by a written instrument executed by all of the Members. This agreement replaces and supersedes all prior written and oral agreements by and among the Members.

10.2 **Governing Law; Severability.** This agreement shall be construed and enforced in accordance with the internal laws of the State of Delaware. If any provision of this agreement is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this agreement shall remain in effect.



9/29/21, 11:11 AM Image (34).bmp https://drive.google.com/... 1/1

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

10.3 **Benefit.** This agreement shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.4 **Number and Gender.** Whenever used in this agreement, the singular shall include the plural and the plural shall include the singular, and the neuter gender shall include the male and female as well as a trust, firm, company, or corporation, all as the context and meaning of this agreement may require.

10.5 **No Third Party Beneficiary.** This agreement is made solely for the benefit of the parties to this agreement and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this agreement.

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

10.3 **Benefit**. This agreement shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.4 **Number and Gender**. Whenever used in this agreement, the singular shall include the plural and the plural shall include the singular, and the neuter gender shall include the male and female as well as a trust, firm, company, or corporation, all as the context and meaning of this agreement may require.

10.5 **No Third Party Beneficiary**. This agreement is made solely for the benefit of the parties to this agreement and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this agreement.

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

**IN WITNESS WHEREOF**, the parties have executed or caused to be executed this Operating Agreement as of the date below.

Dated: 12/30/09

Merri Gleckler
For and Behalf of Merrig, LLC

Cedric Reingold

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

EXHIBIT A

**MEMBERS**

The following persons are the initial Members of the Company, and their initial capital contributions and ownership is set forth below.

| Name | Capital Contribution ($) | Percentage Interest |
|---|---|---|
| Merri Gleckler | $1.00 | 50% |
| Cedric Reingold | $1.00 | 50% |

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

EXHIBIT B

## OFFICERS

The following person(s) are elected as officers of the Company:

| Name of Officer | Title |
|---|---|
| Merri Gleckler | Manager |
| Cedric Reingold | CFO & Manager |

FILED DATE: 9/14/2021 3:50 PM 2021CH04676

EXHIBIT C

## NEW MEMBER'S CONSENT

The undersigned agrees to be bound as a Member by the terms of the Operating Agreement of TMG Kreations, LLC as if the undersigned was a signatory thereof.

______________________________

(Signature)

Name: ____________________________

Date: ____________________________

Cook County, IL

FILED DATE: 9/14/2021 4:45 PM 2021CH04676

9/14/2021 4:45 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH04676

14818209

**IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **DEAN H. DUSSIAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.** 2021CH04676 |
| | ) | |
| **MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

**JURY DEMAND**

Plaintiff, Dean H. Dussias, hereby demands a trial by jury.

DATED: September 14, 2021

Respectfully submitted,

**DEAN H. DUSSIAS**

By: *\/s/ David J. Ben-Dov*
One of His Attorneys

David J. Ben-Dov (djbendov@gct.law)
Brittany N. Bermudez (bnbermudez@gct.law)
Golan Christie Taglia LLP
70 West Madison Street
Suite 1500
Chicago, IL 60602
Firm I.D. 42399
(312) 696-1361