**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| DEAN H. DUSSIAS,<br><br>*Plaintiff*,<br><br>v.<br><br>MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,<br><br>*Defendants*. | Case No. 1:21-cv-05709<br><br>Judge April M. Perry<br><br>Magistrate Judge Beth W. Jantz |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Mathew M. Showel, Esq. (#6300861)
GOLAN CHRISTIE TAGLIA LLP
70 W. Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300
mmshowel@gct.law

# TABLE OF CONTENTS


**INTRODUCTION** ..... 1

**FACTS** ..... 2

- **a. Gleckler and Dussias Agree that He Will Be a Member of TMG** ..... 2
- **b. Gleckler and Dussias Finalize the Terms of His Membership, Agree that Negotiations Are Concluded, and Operate Under the Terms of the Agreement for 10 Months.** ..... 3
- **c. Gleckler Consistently Acknowledged Dussias' Membership in TMG.** ..... 4
- **d. February 2021 Drafts Confirm the June 2020 Agreement.** ..... 5
- **e. Gleckler Told Dussias the GRA Was Terminated and Acted as Such.** ..... 6

**LEGAL STANDARD** ..... 7

**ARGUMENT** ..... 7

**I. DELAWARE LAW ALLOWS ORAL LLC AGREMENTS AND THE EVIDENCE SHOWS THE PARTIES REACHED AN AGREEMENT IN THIS CASE.** ..... 7

- **a. The Act Permits Oral and Implied Agreements.** ..... 7
- **b. The Evidence Shows that Gleckler Entered an Agreement with Dussias.** ..... 9
- **c. The GRA Is Not a Get-Out-Of-Jail-Free Card and Dussias Was Entitled to Rely on Gleckler's Words and Conduct.** ..... 11
- **d. The February 2021 Drafts Confirm the June 2020 Agreement.** ..... 13
- **e. Gleckler Never Conditioned Dussias' Membership on a Written Agreement.** ..... 14
- **f. The Cases Cited by Defendants Are Inapplicable.** ..... 15

**II. ACCOUNTING AND CONSTRUCTIVE TRUST APPLY TO MORE THAN THE MEMBERSHIP CLAIMS.** ..... 16

**III. GLECKLER BREACHED FIDUCIARY DUTIES TO DUSSIAS.** ....................... 17

**IV. DUSSIAS IS ENTITLED TO RECOVER VIA PROMISSORY ESTOPPEL.** ... 18

**V. TMG AND GLECKLER HAVE BEEN UNJUSTLY ENRICHED.** ...................... 18

**VI. DUSSIAS OWNS AN ECONOMIC "MEMBERSHIP INTEREST" IF HE IS NOT A MEMBER.** ............ 19

**VII. CERTAIN EXHIBITS AND STATEMENTS OF FACT SHOULD BE DISREGARDED AND STRICKEN.** ............ 20

**CONCLUSION** ............ 21

# TABLE OF AUTHORITIES


**Cases** **Page No.**

*5high LLC v. Feiler*,
2022 WL 3136612, at *7–8 (Del. Ch. Aug. 5, 2022) .......... 14

*Achaian, Inc. v. Leemon Family LLC*,
25 A.3d 800, 807 (Del. Ch. 2011) .......... 19, 20

*Act II Jewelry, LLC v. Wooten,*
301 F. Supp. 3d 905, 914 (N.D. Ill. 2018) .......... 2

*Alaska Fin. Co. III, LLC v. Glob. Mortgage Group, LLC*,
2018 WL 574940, at *3 (D. Del. Jan. 26, 2018) .......... 16

*Alexander as trustee of Franklin Pharmacy, LLC v. Aaron*,
2016 WL 11627522, at *2-3 (N.D. Ala. Aug. 18, 2016) .......... 15

*Altaire Pharmaceuticals, Inc. v. Rose Stone Enterprises*,
2013 WL 6235862, at *5 (E.D.N.Y. Dec. 3, 2013) .......... 15

*AMPMS Chicago, LLC v. DEBT, LLC*,
2022-CH-09167 .......... 15

*Ankerstjerne v. Schlumberger, Ltd*.,
155 Fed. Appx. 48, 51 (3d Cir. 2005) .......... 18

*Brinckerhoff v. Enbridge Energy Co., Inc*.,
159 A.3d 242, 262 (Del. 2017) .......... 17

*Calixte v. Walgreen Co*.,
2024 WL 5168695, at *4 n. 4 (N.D. Ill. Dec. 19, 2024) (Lefkow, J.) .......... 20

*Chrysler Corp. (Delaware) v. Chaplake Holdings*, *Ltd.,*
822 A.2d 1024, 1031 (Del. 2003) .......... 18

*Cole v. State*,
922 A.2d 354, 359 (Del. 2005) .......... 9

*Cumulus Radio Corp. v. Olson*,
2015 WL 1110592, at *3 (C.D. Ill. Mar. 10, 2015) .......... 16

*Elf Atochem N. Am., Inc. v. Jaffari*,
727 A.2d 286, 293 (Del. 1999) .......... 8

*Envo, Inc. v. Walters*,
2009 WL 5173807, at *6 (Del. Ch. Dec. 30, 2009) ............16

*Frederick Hsu Living Tr. v. ODN Holding Corp*.,
2017 WL 1437308, at *42 (Del. Ch. Apr. 14, 2017) ............19

*Garfield on behalf of ODP Corp. v. Allen*,
277 A.3d 296, 351 (Del. Ch. 2022) ............18

*Gilbert v. Unisys Corp*.,
2024 WL 3789952, at *20 (Del. Ch. Aug. 13, 2024) ............17

*Grunstein v. Silva*,
2014 WL 4473641, at *29 (Del. Ch. Sept. 5, 2014) ............15, 18

*Haveg Corp. v. Guyer*,
226 A.2d 231, 236–37 (Del. 1967) ............18

*Hossfeld v. Allstate Ins. Co*.,
726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) (Gottschall, J.) ............20

*Iacono v. Estate of Capano*,
2020 WL 3495328, at *11 (Del. Ch. June 29, 2020) ............8, 9, 10, 14

*In re Carlisle Etcetera LLC*,
114 A.3d 592, 599 (Del. Ch. 2015) ............15

*In re Coinmint*, *LLC,*
261 A.3d 867, 893 (Del. Ch. 2021) ............11, 13

*J. Leo Johnson, Inc. v. Carmer*,
38 Del. Ch. 579, 584, 156 A.2d 499, 502 (1959) ............17

*Johnson v. Advocate Health & Hosps. Corp*.,
892 F.3d 887, 894 (7th Cir. 2018) ............7

*Kelly v. DCC Tech. Holdings, Inc*.,
724 F. Supp. 3d 122, 147 (W.D.N.Y. 2024) ............12

*Kim v. Ferdinand Capital LLC*.,
2007 WL 2176410 (N.Y. Sup. Ct. July 09, 2007) ............9

*Kirsch v. MNJ Techs. Direct, Inc*.,
2021 IL App (1st) 200953-U ............15

*Levey v. Brownstone Asset Mgmt., LP*,
2014 WL 3811237, at *10 (Del. Ch. Aug. 1, 2014) ........................................................ 10

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
2016 WL 5080028, at *5 (N.D. Ill. Sept. 20, 2016) (Pallmeyer, J.) ................................ 20

*Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*,
319 A.3d 909, 945 (Del. Super. Ct. 2024) ........................................................................ 19

*Matter of Estate of DeGroat*,
2020 WL 2078992, at *23 (Del. Ch. Apr. 30, 2020) ........................................................ 16

*Mergenthaler v. Hollingsworth Oil Co. Inc.*,
1995 WL 108883, at *2 (Del. Super. Ct. Feb. 22, 1995) .................................................. 11

*Mickman v. Am. Int'l Processing, LLC*,
2009 WL 891807, at *2 (Del. Ch. Apr. 1, 2009) ................................................................ 8

*Narducci v. Moore*,
572 F.3d 313, 320-21 (7th Cir. 2009) ................................................................................ 7

*Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.*,
94 A.2d 700, 702 (1953) .................................................................................................. 17

*Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*,
297 A.2d 28, 33 (Del. 1972) ..................................................................................... 11, 12

*Pryor v. City of Chicago*,
726 F. Supp. 2d 939, 943 (N.D. Ill. 2010) (Pallmeyer, J.) ................................................ 20

*Robinson v. Darbeau*,
2021 WL 776226, at *9 (Del. Ch. Mar. 1, 2021) .......................................................... 2, 8

*Sarissa Capital Domestic Fund LP v. Innoviva, Inc.*,
2017 WL 6209597, at *21 (Del. Ch. Dec. 8, 2017) ..................................................... 9, 14

*Sheets v. Quality Assured, Inc.*,
2014 WL 4941983, at *2 (Del. Super. Ct. Sept. 30, 2014) ................................................ 9

*Simon Prop. Group, L.P. v. Brighton Collectibles, LLC*,
2021 WL 6058522, at *3 (Del. Super. Ct. Dec. 21, 2021) ................................................ 11

*Teachers' Ret. Sys. of Louisiana v. Aidinoff*,
900 A.2d 654, 671 (Del. Ch. 2006) .................................................................................. 16

*Wade Park Land Holdings, LLC v. Kalikow*,
589 F. Supp. 3d 335, 373 (S.D.N.Y. 2022) ............................................................12

*Wah Chang Smelting & Ref. Co. of Am., Inc. v. Cleveland Tungsten Inc.*,
1996 WL 487941, at *3 (Del. Ch. Aug. 19, 1996) ............................................................17

*Weyerhaeuser Co. v. Domtar Corp.*,
721 Fed. Appx. 186, 189 (3d Cir. 2018) ............................................................12

**Statutes**

6 Del. Code § 18-301(b)(1)............................................................7

6 Del. Code 18-101(9) ............................................................2, 8

6 Del. Code 18-1101(b) ............................................................8

6 Del. Code. 18-106(e)............................................................11

**Treatises**

Robert L. Symonds, Jr. & Matthew J. O'Toole, Delaware Limited Liability Companies § 4.02[A], at 4-13 (2d ed. 2019)............................................................8

For his opposition to Defendants' motion for summary judgment [Dkt. 89], Plaintiff, Dean H. Dussias ("Dussias" or "Plaintiff"), states as follows:

## INTRODUCTION

Defendants' motion for summary judgment should be denied because (i) there is extensive evidence of an agreement to make Dussias a 30% member of Defendant TMG Kreations, LLC d/b/a Kashwere ("TMG") and (ii) Defendant Gleckler had the legal authority to enter the agreement. As to the evidence, Gleckler repeatedly and expressly admitted that Dussias was a member, owner, and partner in TMG. She told TMG's accountant, "Dean is a member…" Plaintiff's Rule 56.1(b)(3) Statement of Additional Material Facts ("PF"), ¶ 31. She told an another individual, "Yes Dean is a partial owner." *Id.* ¶ 28. Dussias was identified as an "owner" on TMG's web page. *Id.* ¶ 29. Gleckler participated in sending a marketing email to all of TMG's customers (tens-of-thousands of people) identifying Dussias as an "owner." *Id.* ¶ 30. Dussias was identified in TMG's payroll system as an "owner" with Gleckler's full knowledge. *Id.* ¶ 22-24. Gleckler routinely identified Dussias as a "partner," including to important business associates of TMG. *Id.* ¶ 28, 32-36. The parties sent a capitalization table to a prospective investor that reflected Dussias' 30% ownership. *Id.* ¶ 39-40. Gleckler told Dussias they had a "handshake agreement" and told TMG's accountant that "Dean and I have an agreement in place…" *Id.* 46, 48.

The evidence shows that the parties reached a definitive agreement in the first two weeks of June 2020; implemented the terms on July 1, 2020; and operated under those terms for ten months until April 22, 2021. *Id.* ¶ 14-15, 26. Dussias made a capital contribution with Gleckler's full knowledge and agreement. *Id.* ¶ 15, 21, 74-78. Dussias received perquisites unique to Gleckler and him as owners. *Id.* ¶ 25. TMG paid taxes based on Dussias' draw as an owner. *Id.*

¶ 23. These facts, and others set forth below, are more than sufficient to establish that Gleckler and Dussias reached an agreement to make Dussias a member of TMG.

As to the second issue, Defendants diametrically misstate the relevant law. Defendants state that Delaware Limited Liability Company Act ("Act") does not permit oral or implied LLC agreements. Dkt. 90, Defendants' Memorandum of Law (cited as "Mem. _"), p. 6-7. The Act says the opposite.

The Act expressly allows "written, oral or implied" agreements as to the affairs of an LLC. 6 Del. Code 18-101(9).[1] The three forms are not mutually exclusive. An agreement may consist of any combination of the three. *Robinson v. Darbeau*, 2021 WL 776226, at *9 (Del. Ch. Mar. 1, 2021). Gleckler thus had the authority under to bind TMG to an oral agreement with Dussias.

Defendants also argue that a 2009 operating agreement between Gleckler and her former partner (the "Gleckler-Reingold Agreement" or "GRA") prevented Gleckler from binding TMG to an oral agreement—regardless of anything she said or did. This argument is also wrong. Gleckler was the sole member of TMG. Mem. 1. She controlled 100% of the vote and could do whatever she wanted with the GRA or TMG. Moreover, nothing in Delaware law allows Defendants to use the GRA as a get-out-of-jail-free card and disclaim the agreement she made with Dussias. For these and other reasons stated below, Defendants are not entitled to summary judgment.

## FACTS

### a. Gleckler and Dussias Agree that He Will Be a Member of TMG.

Dussias has known Gleckler since 2009 and consulted with TMG intermittently since approximately 2013. In Summer 2019, while Gleckler was suing her former business partner in

[1] *Act II Jewelry, LLC v. Wooten,* 301 F. Supp. 3d 905, 914 (N.D. Ill. 2018) (stating that Illinois choice of law rules apply the internal affairs doctrine to disputes among shareholders, officers, and the entity).

TMG, Cedric Reingold, she invited Dussias to replace Reingold as a member of TMG. PF ¶ 6. Dussias stated he would only join TMG as a member. *Id.*

Gleckler [redacted] *Id.*

Hence, Gleckler told Dussias [redacted] *Id.* [redacted]

Dussias began working with TMG full time in July 2019. *Id.* ¶ 8. He accepted reduced compensation because he was becoming a member. *Id.* TMG made the [redacted] *Id.* ¶ 10.

**b. Gleckler and Dussias Finalize the Terms of His Membership, Agree that Negotiations Are Concluded, and Operate Under the Terms of the Agreement for 10 Months.**

After some back and forth, Gleckler and Dussias reached a definitive agreement during the first two weeks of June 2020. *Id.* ¶ 14. The terms were finalized as follows: Dussias and Gleckler would own 30% and 70% of TMG, respectively (as they had discussed since the previous July); they would take a draw against profits beginning July 1, 2020, in proportion to their membership interest and not receive any compensation beyond the draw; they would share profits and losses on a *pro rata* basis; Gleckler's draw would [redacted]; Dussias' compensation would [redacted]; Dussias'

compensation would also change [redacted]; Gleckler and Dussias would distribute profits at the end of each year so that, after accounting for the draw, Gleckler would receive 70% and Dussias 30%; and Dussias would receive certain owners' perquisites. *Id.* ¶ 15. *Id.* Finally, Dussias would make a $20,000 capital contribution. *Id*.

They also agreed to [redacted] according to their 70/30 ownership interest, which they did on the June 15, 2020, payroll. *Id.* ¶ 20. They also expressly agreed that the negotiations were concluded. *Id.* ¶ 17. Dussias re-confirmed the June 2020 agreement with Gleckler in an email months later. *Id.* ¶ 41.

The agreed upon terms were reflected in TMG's payroll system, Chase bank account, and accounting system (Everest) beginning on July 1, 2020. *Id.* ¶ 20, 22-24, 74-77. These are systems that Gleckler reviewed regularly. *Id.* They were also specifically discussed with Gleckler and agreed with her before they were implemented. *Id.* ¶ 14-15, 21.

Gleckler was told in writing that Dussias was receiving a draw on February 16, 2021, by TMG's payroll processing firm, HowardSimon, Inc. ("HSimon"). *Id.* ¶ 52. She expressed no surprise or concern to Dussias or HSimon. *Id.* Accordingly, Gleckler's claims that she did not know about the capital contribution or the changes to the payroll are false (and implausible).

The parties operated under these terms from July 1, 2020, through April 21, 2021. *Id.* ¶ 26. In late April 2021, after operating under the terms of the June 2020 agreement for roughly ten months, Gleckler for the first time claimed that Dussias was not a member of TMG. *Id.* ¶ 65. On April 22, 2021, she attempted to fire Dussias as though he was an employee. *Id.* ¶ 70.

**c. Gleckler Consistently Acknowledged Dussias' Membership in TMG.**

Prior to April 22, 2021, Gleckler uniformly acknowledged Dussias' membership in TMG, both expressly and tacitly. She told TMG's accountant, "Dean is a member…" *Id.* ¶ 31. When

asked, "is Dean an owner," Gleckler responded "Yes Dean is a partial owner." *Id.* ¶ 28. She caused TMG to identify Dussias as an "owner" on its web page. *Id.* ¶ 29. She caused TMG to send a marketing email to tens-of-thousands of customers identifying Dussias as an "owner." *Id.* ¶ 30. Dussias was identified in TMG's payroll system as an "owner" with Gleckler's full knowledge. ¶ 22-24. Gleckler identified Dussias as a "partner" on dozens of occasions, including to important business associates of TMG. *Id.* ¶ 28, 32-36. Gleckler gave no indication she was using these terms colloquially or conditionally. *Id.* ¶ 45.

Gleckler participated in the creation of a capitalization table that included Dussias' 30% ownership. *Id.* ¶ 39-40. In creating the cap table, Gleckler wanted the option to dilute Dussias' interest in TMG. *Id.* This was only possible because Dussias was an owner of TMG. It would not make sense for him to negotiate diluting his interest before he acquired it.

In March 2021, Dussias wrote Gleckler that he was a 30% owner of TMG. *Id.* ¶ 41. A few days later, he again wrote: "I own 30% of Kashwere (TMG Kreations, LLC)." *Id.* ¶ 42. Gleckler never contested these statements. *Id.* ¶ 41-42.

She told Dussias they had a "handshake agreement." *Id.* ¶ 46. Dussias responded that, "we do have an agreement, [we] simply don't have updated LLC documents." *Id.* ¶ 47. In February 2021, Gleckler told TMG's accountant that "Dean and I have an *agreement* in place but not yet a *formalized ownership contract*." *Id.* ¶ 48 (italics in original).

**d. February 2021 Drafts Confirm the June 2020 Agreement.**

In February 2021, Defendants' attorney prepared a draft operating agreement that contradicted the June 2020 agreement, including by proposing a vesting schedule the parties had already rejected. *Id.* ¶ 49. Gleckler admitted the draft was contrary to their agreement. *Id.* ¶ 50.

They immediately scrapped that draft in favor of a version stating that Dussias became a member on July 1, 2020. *Id.* ¶ 51-56.

While this was occurring, HSimon emailed Gleckler that Dussias was receiving a draw and Gleckler did not respond at all. *Id.* ¶ 52. Shortly after she received this information from HSimon, while discussing the operating agreement, Gleckler told her accountant, "Dean is a Member not a Manager." *Id.* ¶ 54. The February 2021 exchange thus confirms the June 2020 agreement.

Notably, the May 2020 term sheet and February 2021 draft agreement (both prepared by Gleckler's attorneys, Dx H and Q) are outliers—every other document or other communication between the parties says Dussias became a member on or before July 1, 2020. Gleckler never objected to one of these document to say that was not the case.

**e. Gleckler Told Dussias the GRA Was Terminated and Acted as Such.**

Gleckler specifically told Dussias that the GRA was terminated and acted as such. She told Dussias the GRA was "gone" and not applicable to TMG. *Id.* ¶ 18. She said the GRA was strictly between Reingold and her. *Id.* She testified that she never intended for Dussias to sign the GRA. *Id.* ¶ 57. Gleckler never asked Dussias to sign the GRA or Exhibit C to the GRA. *Id.* ¶ 58.

Nor did she ever comply with the GRA. Exhibits A and B to the GRA identify the members and officers of TMG, respectively. [redacted] *Id.*

The GRA states that a newly admitted member must execute Exhibit C. Dx A § 7.2. Gleckler substituted her entity, MerriG, LLC, for herself as a member of TMG—then readmitted herself as a member—without ever amending the GRA Exhibits A or B or executing Exhibit C.

PF ¶ 61-62. The GRA specifies that TMG is member-managed. *Id.* ¶ 63. Gleckler converted TMG to a manager-managed LLC without amending the GRA. *Id.*

Gleckler never told Dussias that his membership was contingent on his signing the GRA or any other document or performing any other act. *Id.* ¶ 26. Indeed, she and Dussias prepared draft agreement specifically *because* Gleckler did not believe the GRA was operative. *Id.* ¶ 57. Not once, prior to this litigation, did Gleckler invoke the GRA. *Id.* ¶ 58. She treated the GRA like it did not exist and told Dussias as much.

## LEGAL STANDARD

Summary judgment is appropriate "only when no reasonable jury could have found for the plaintiffs." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). The Court must view all facts and "draw all reasonable inferences in favor of the non-moving party." *Narducci v. Moore*, 572 F.3d 313, 320-21 (7th Cir. 2009).

## ARGUMENT

### I. DELAWARE LAW ALLOWS ORAL LLC AGREEMENTS AND THE EVIDENCE SHOWS THE PARTIES REACHED AN AGREEMENT IN THIS CASE.

#### a. The Act Permits Oral and Implied Agreements.

The Act provides that a party can become a member of an LLC via a written, oral, or implied agreement. The Act defines "Member" as "a person who is admitted to a limited liability company as a member as provided in § 18-301 of" the Act. 6 Del. Code § 18-101(13). Section 18-301 provides that a party can become a member of an existing LLC "at the time provided in and upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, upon the consent of all members or as otherwise provided in the limited liability company agreement." 6 Del. Code § 18-301(b)(1).

A "limited liability company agreement" is defined in the Act as "any agreement… as to the affairs of a limited liability company and the conduct of its business." 6 Del. Code 18-101(9). The Act expressly states that such agreements can be "written, oral or implied." *Id.* The Act gives "maximum effect" to such agreements. 6 Del. Code 18-1101(b).

The options "are not mutually exclusive—an agreement may be 'partly written, partly oral and/or partly implied.'" *Robinson*, 2021 WL 776226, at *9.[2] The Act contemplates an "informal agreement." *Iacono v. Estate of Capano*, 2020 WL 3495328, at *11 (Del. Ch. June 29, 2020). It allows parties "maximum flexibility in entering into an agreement." *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 293 (Del. 1999).

Consistent with its plain language, Delaware courts uniformly hold that the Act allows for oral and implied agreements regarding the affairs of an LLC. For example, in *Robinson*, 2021 WL 776226, at *10, after trial, the court held that the plaintiff "impliedly entered into an LLC agreement by operating [the LLC] alongside" the defendant. *Id.* The court focused on the fact that the plaintiff referred to the defendant as a "Co-Owner and Co-Director" and "presented [her] as a co-equal to clients and the public." *Id.*

Likewise, in *Mickman v. Am. Int'l Processing, LLC*, 2009 WL 891807, at *2 (Del. Ch. Apr. 1, 2009), the court denied summary judgment. The plaintiff provided evidence that, "notwithstanding the language of the operating agreement, the parties to that agreement intended to make, and believed they had made, the plaintiff a member of the LLC." *Id.* Similarly, in *Iacono*, 2020 WL 3495328 at *11-12, Vice Chancelor Laster denied summary judgment, finding the evidence suggested that the parties orally agreed to form an LLC.

---

[2] Quoting Robert L. Symonds, Jr. & Matthew J. O'Toole, Delaware Limited Liability Companies § 4.02[A], at 4-13 (2d ed. 2019).

In *Kim v. Ferdinand Capital LLC*., 2007 WL 2176410 (N.Y. Sup. Ct. July 09, 2007) (DE law), the court denied summary judgment as to plaintiff's membership in an LLC. The LLC agreement did not identify the plaintiff as a member. *Id.* The LLC issued K-1s to the defendants, but not to the plaintiff. *Id.* The evidence showed that plaintiff was held out as a member and conducted business on behalf of the LLC. *Id.* The court noted that because the Act "permits an LLC agreement to be oral, a person could be a member without that fact being reflected in the LLC's records" or the LLC agreement. *Id.*

The premise underlying Defendants' motion is therefore incorrect. A written document is *not* required to admit a member to an LLC under the Act.

**b. The Evidence Shows that Gleckler Entered an Agreement with Dussias.**

In this case, the evidence establishes an agreement to make Dussias a member. The formation "of an oral contract is a question of fact." *Cole v. State*, 922 A.2d 354, 359 (Del. 2005). "Overt manifestations of assent, rather than subjective intent, control contract formation." *Iacono*, 2020 WL 3495328, at *9. Whether the parties mutually assented to a contract is "determined objectively based upon the parties' expressed words and deeds as manifested at the time rather than by their after-the-fact professed subjective intent." *Sarissa Capital Domestic Fund LP v. Innoviva, Inc.*, 2017 WL 6209597, at *21 (Del. Ch. Dec. 8, 2017) (cleaned up). The court must "look to surrounding circumstances and the parties' course of dealing in order to ascertain their intent." *Sheets v. Quality Assured, Inc.*, 2014 WL 4941983, at *2 (Del. Super. Ct. Sept. 30, 2014).

"A valid contract exists when (1) the parties have made a bargain with 'sufficiently definite' terms; and (2) the parties have manifested mutual assent to be bound by that bargain." *Innoviva*, 2017 WL 6209597, at *21. An oral contract is formed when reasonable person would

have concluded that the parties agreed to the "essential terms." *Iacono*, 2020 WL 3495328, at *9. Essential terms are distinguished from terms that are "nice-to-have" but not essential. *Id.* at *12.

In this case, the evidence establishes that the parties agreed to all essential terms in the first two weeks of June 2020. PF ¶ 14-15. The parties agreed to specific terms, implemented them, and agreed that the negotiations were concluded. *Id.* ¶ 14-17, 20-26. Looking to the parties' "expressed words and deeds," the parties operated under the June 2020 terms through late April 2021. *Id.* ¶ 26. Likewise, Gleckler overtly manifested her assent by repeatedly announcing that Dussias was an owner, member, and partner in TMG. *Id.* ¶ 28-40. She emailed every single customer of TMG that Dussias was an "owner" and put it on the company's website. *Id.* ¶ 29-30. She circulated cap tables that identified Dussias as an owner. *Id.* ¶ 39-40. She told Dussias they had a "handshake agreement." *Id.* ¶ 46. She told the accountant that she and Dussias "have an agreement in place." *Id.* ¶ 48.

Additionally, "[t]he The failure to object may be treated as acceptance" of a contract. *Levey v. Brownstone Asset Mgmt., LP*, 2014 WL 3811237, at *10 (Del. Ch. Aug. 1, 2014) (finding an implied LLC agreement after trial). In this case, Gleckler did not object when Dussias repeatedly told her he was a member. PF ¶ 41-42. Nor did she object when he listed himself as an owner in the payroll system. *Id.* ¶ 22-24. Nor did she object when he circulated a draft operating agreement in February 2021 saying that his membership had become effective July 1, 2020. *Id.* ¶ 51-54. Nor did she object when Conway said that Dussias did a "buy-in on 7/1/20." *Id.* ¶ 53. Nor did she object when HSimon told her in writing that Dussias was receiving a draw. *Id.* ¶ 52.

In sum, Gleckler overtly manifested her assent to the terms reached in the first two weeks of June 2020. The evidence thus establishes that the parties formed a contract to admit Dussias as a member of TMG and Defendants are not entitled to summary judgment.

**c. The GRA Is Not a Get-Out-Of-Jail-Free Card and Dussias Was Entitled to Rely on Gleckler's Words and Conduct.**

The GRA is not a get-out-of-jail-free card. It did not eliminate Defendants' ability to enter an oral agreement concerning Dussias' membership. Nor does it allow them to renege on that agreement now.

For starters, the Act specifically allows waiver of the requirements in an LLC agreement to join an LLC. 6 Del. Code. 18-106(e) (allowing waiver for "Any act or transaction that may be taken by or in respect of a limited liability company" including "the issuance… of any limited liability company interests"). Section 106(e) codifies the long-settled principle that parties may, "by their conduct, substitute a new oral contract without a formal abrogation of the written agreement." *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc*., 297 A.2d 28, 33 (Del. 1972).

Whether a party has waived a contractual requirement is "a jury question, unless the facts are undisputed and give rise to only one reasonable inference." *Mergenthaler v. Hollingsworth Oil Co. Inc*., 1995 WL 108883, at *2 (Del. Super. Ct. Feb. 22, 1995). Waiver occurs when: "the waiving party knew of the requirement or condition; and… intended to waive that requirement or condition." *In re Coinmint*, LLC, 261 A.3d 867, 893 (Del. Ch. 2021) (parties waived requirements of LLC agreement, finding at trial). "Part performance may prove modification or waiver of an agreement." *Simon Prop. Group, L.P. v. Brighton Collectibles, LLC*, 2021 WL 6058522, at *3 (Del. Super. Ct. Dec. 21, 2021) (summary judgment denied).

In this case, the evidence shows that Gleckler waived the writing requirement of section 7.2, if not terminated the GRA in its entirety. Gleckler *told* Dussias the GRA was "gone" and was no longer applicable to TMG. PF ¶ 18. She testified that she never intended for Dussias to sign the GRA. *Id.* ¶ 57. She never asked Dussias to sign it. *Id.* ¶ 58. She told Dussias and seemingly everyone else in the world that Dussias was an owner, member, and partner, despite his never

having executed the GRA. *Id.* ¶ 28-45. Not once, prior to this litigation, did Gleckler invoke the GRA as an obstacle to Dussias' membership. *Id.* ¶ 58.

She also *never* complied with the GRA. She substituted MerriG as the member for herself without adhering to § 7.2 of the GRA. *Id.* ¶ 61. She then re-admitted herself as a member without executing Exhibit C. *Id.* ¶ 62. She never amended Exhibit A to reflect these membership changes. *Id.* ¶ 61-62. Nor did she amend Exhibits A or B to the GRA to reflect that [redacted] *Id.* ¶ 60. Nor did she amend Exhibit B to reflect that Dussias was TMG's President. Nor did she amend the GRA to reflect the change from member-managed to manager-managed. *Id.* ¶ 63.

Gleckler was also the only member of TMG when she admitted Dussias. Mem. 1. The GRA allows TMG to take any action based on a simple majority vote. Dx A, § 6.1 ("the vote of the Members holding a majority of the Membership Interests shall be required to approve or carry an action"). As the 100% member, Gleckler could do whatever she wanted with TMG or the GRA at any time.

In sum, Gleckler explicitly told Dussias that TMG was no longer bound by the GRA and acted as though it did not exist. These facts establish that Gleckler intended to waive the requirement of section 7.2, if not the entire GRA. She cannot now use the GRA to nullify her agreement with Dussias.

The GRA's prohibition against oral modification does not change this outcome. *Pepsi-Cola Bottling*, 297 A.2d at 33. "[C]ontract provisions deeming oral modifications unenforceable can be waived orally or by a course of conduct just like any other contractual provision." *Weyerhaeuser Co. v. Domtar Corp.*, 721 Fed. Appx. 186, 189 (3d Cir. 2018) (quote omitted).[3] The

[3] *See also Kelly v. DCC Tech. Holdings, Inc.*, 724 F. Supp. 3d 122, 147 (W.D.N.Y. 2024) (DE law) (plausible allegations of waiver despite prohibition against oral modification); *Wade Park Land Holdings,*

same facts showing that she waived section 7.2, show that Gleckler did not feel constrained to modify the GRA only in writing. She did whatever she wanted with GRA.

Finally, as in *Coinmint*, Dussias was entitled to rely on Gleckler's words and conduct. "[E]stoppel arises when, by its conduct, a party intentionally or unintentionally leads another, in reliance on that conduct, to change position to his detriment." C*oinmint*, 261 A.3d at 894–95 (quotes omitted). In this case, Gleckler's words and conduct led Dussias to believe that he was a member without any writing or other action required. *Id.* ¶ 26. She told him and others he was a member, owner, and partner. *Id.* ¶ 17, 36, 28-45. She never made his ownership contingent on signing the GRA or any other document document. *Id.* ¶ 26. She cannot use the GRA, after the fact, to revoke or her words and conduct.

**d. The February 2021 Drafts Confirm the June 2020 Agreement.**

The exchange of draft agreements in February 2021 confirms the June 2020 agreement. When Defendants' attorney prepared a draft operating that contradicted the June 2020 terms, Gleckler admitted it was contrary to their agreement. *Id.* ¶ 49-50. They immediately scrapped it in favor of a draft stating that Dussias had become a member on July 1, 2020. *Id.* ¶ 51, 56. All of the subsequent drafts state that Dussias became a member on or before July 1, 2020.

While this was occurring, HSimon told Gleckler in writing that Dussias was receiving a draw and Gleckler did not respond at all. *Id.* ¶ 52. *After* receiving this information, and while the drafts were being exchanged, Gleckler told her accountant. "Dean is a Member…" *Id.* ¶ 54. The February 2021 exchange thus confirms the June 2020 agreement.

Nor *could* the February 2021 exchange of drafts vitiate the June 2020 agreement. "The fact that the parties to an oral agreement manifest an intention to prepare and adopt a written

---

*LLC v. Kalikow*, 589 F. Supp. 3d 335, 373 (S.D.N.Y. 2022) (DE law) (defendant ratified transfer of LLC interest prohibited by LLC agreement).

memorial will not prevent contract formation if the evidence reveals manifestations of assent that are in themselves sufficient to conclude a contract." *Innoviva*, 2017 WL 6209597, at *21 (cleaned up). "[T]he parties' understanding that the contract should be formally drawn up and executed, does not leave the transaction incomplete and without binding force." *Id.* (cleaned up).

This is true even if the subsequent drafts contradict the oral agreement. In *Iacono*, for example, 2020 WL 3495328 at *11-12, the fact that the parties exchanged subsequent draft agreements did not negate the oral agreement the parties had *already* reached. *Id.* This was so despite the fact that the draft agreements contradicted the prior oral agreement. *Id.* "[U]nder the standard that governs a motion for summary judgment, this issue does not suggest a lack of agreement on material terms, but rather an effort by the [defendant] to amend the agreement that" the parties had already reached. *Id.* at * 12. Similarly, in *5high LLC v. Feiler*, 2022 WL 3136612, at *7–8 (Del. Ch. Aug. 5, 2022), the parties' subsequent attempt to negotiate "does not mean that an implied agreement had not already been reached." *Id.* at *8.

In sum, the facts establish that the parties reached an agreement in June 2020 that was implemented July 1, 2020, and remained in effect for ten months. The February 2021 exchange confirms the June 2020 agreement and, regardless, could not vitiate the agreement in any case.

**e. Gleckler Never Conditioned Dussias' Membership on a Written Agreement.**

Defendants' cite a number of cases for the proposition that a party can expressly condition formation of an agreement on completion of a written contract. Mem. 10. None of those cases involved the Act or were decided on summary judgment. Moreover, the evidence in this case shows that Dussias' membership was <u>not</u> conditioned on the completion of a written contract.

Gleckler told Dussias they could have a [redacted] and had a "handshake agreement." PF ¶ 7, 46. She told TMG's accountant "Dean and I have an agreement in place."

*Id.* ¶ 48. They agreed to terms orally in June 2020; implemented those terms; and operated under them for ten months without a written contract. *Id.* ¶ 14-26. They specifically decided there was no urgency to create a written operating agreement to document their agreement. *Id.* ¶ 18-19. She authorized an email to thousands of TMG customers saying that Dussias was an owner and identified him as an owner on the website without a written contract. *Id.* ¶ 28-29. Thus, Gleckler did not condition Dussias' membership on completion of a written document.

**f. The Cases Cited by Defendants Are Inapplicable.**

The other cases cited by Defendants are also inapplicable to this case. *AMPMS Chicago, LLC v. DEBT, LLC*, 2022-CH-09167, discussed an Illinois LLC and Illinois law. Both *Alexander as trustee of Franklin Pharmacy, LLC v. Aaron*, 2016 WL 11627522, at *2-3 (N.D. Ala. Aug. 18, 2016), and *Steele v. Rosenfeld, LLC*, 936 So. 2d 488, 491 (Ala. 2005) discussed Alabama LLCs and Alabama law. *Altaire Pharmaceuticals, Inc. v. Rose Stone Enterprises*, 2013 WL 6235862, at *5 (E.D.N.Y. Dec. 3, 2013), discussed a California LLC and California law to assess diversity jurisdiction. *Kirsch v. MNJ Techs. Direct, Inc*., 2021 IL App (1st) 200953-U, ¶ 16, discussed an Illinois corporation and Illinois law. It was also filed under Illinois Supreme Court Rule 23 and, therefore, is not precedential.

*Grunstein v. Silva*, 2014 WL 4473641, at *29 (Del. Ch. Sept. 5, 2014), was decided after trial and involved construction of the Delaware Limited Partnership Act. The court also *denied* summary judgment in that case.[4] At trial, the court discounted the plaintiff's testimony because of a perjury conviction. *Id.*

*In re Carlisle Etcetera LLC*, 114 A.3d 592, 599 (Del. Ch. 2015), discussed when an assignee of a limited liability company interest can become a member under section 18-704(a) of

[4] *See Grunstein v. Silva*, 2011 WL 378782, at *15 (Del. Ch. Jan. 31, 2011).

the Act, which is not at issue in this case. The court held that the unique language of section 18-704(a) imposed unique requirements on assignees. In *Cumulus Radio Corp. v. Olson*, 2015 WL 1110592, at *3 (C.D. Ill. Mar. 10, 2015), the court assessed diversity jurisdiction under Rule 12(b)(1). A nonparty executed a "Profits Units Award Agreement" stating that she could not become a member of the defendant LLC unless she executed the operating agreement. *Id.* The court held she was not a member for purposes of determining diversity jurisdiction because she did not execute the operating agreement. *Id.*

*Alaska Fin. Co. III, LLC v. Glob. Mortgage Group, LLC*, 2018 WL 574940, at *3 (D. Del. Jan. 26, 2018), did not hold that LLC's cannot enter into implied contracts, as Defendants claim. Mem. 7. It did not discuss implied agreements at all. The court assessed diversity jurisdiction. *Id.* at 1. The plaintiff's admission was expressly contingent on its providing a $2 million line of credit that it never provided. *Id.* None of the foregoing cases appear to involve a single-member LLC like TMG. And none of these cases support Defendants' right to summary judgment.

## II. ACCOUNTING AND CONSTRUCTIVE TRUST APPLY TO MORE THAN THE MEMBERSHIP CLAIMS.

Defendants argue they are entitled to summary judgment on Count II because Dussias is not a member of TMG. Mem. 14. This is wrong as discussed above. Additionally, accounting and constructive trust are appropriate remedies even if the trier of fact finds Dussias was not admitted as a member of TMG. Constructive trust and accounting are remedies for unjust enrichment and breach of fiduciary duty. *Teachers' Ret. Sys. of Louisiana v. Aidinoff*, 900 A.2d 654, 671 (Del. Ch. 2006); *Matter of Estate of DeGroat*, 2020 WL 2078992, at *23 (Del. Ch. Apr. 30, 2020). Constructive trust is also a remedy for promissory estoppel. *Envo, Inc. v. Walters*, 2009 WL 5173807, at *6 (Del. Ch. Dec. 30, 2009). As discussed below, Plaintiff's claims for breach of fiduciary duty, unjust enrichment, and promissory estoppel all survive even if the Court

determines that Dussias was not admitted as a member of TMG. The Court should not enter judgment on these remedies until it determines which claims are proved at trial. *Brinckerhoff v. Enbridge Energy Co., Inc*., 159 A.3d 242, 262 (Del. 2017) (denying motion to dismiss remedies).

## III. GLECKLER BREACHED FIDUCIARY DUTIES TO DUSSIAS.

Defendants move for summary judgment on Count IV only on the basis that Dussias was not admitted as a member of TMG. Mem. 14. This is wrong, as discussed above. Additionally, if the trier of fact finds that Dussias was not admitted as a member of TMG, the facts support a finding that he was owed Fiduciary duties by Gleckler as co-venturers. *Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.*, 94 A.2d 700, 702 (1953). No formality is required in the formation of a joint venture. *Wah Chang Smelting & Ref. Co. of Am., Inc. v. Cleveland Tungsten Inc*., 1996 WL 487941, at *3 (Del. Ch. Aug. 19, 1996). "[A] 'joint venture' merely describes a multi-party undertaking of a common business goal." *Gilbert v. Unisys Corp*., 2024 WL 3789952, at *20 (Del. Ch. Aug. 13, 2024). The elements of a joint venture are: common purpose; joint control; a joint proprietary interest in the subject matter; right to share in the profits; and a duty to share in the losses. *Wah Chang Smelting*, 1996 WL 487941, at *6. "The contribution of the parties need not necessarily be the same." *J. Leo Johnson, Inc. v. Carmer*, 38 Del. Ch. 579, 584, 156 A.2d 499, 502 (1959).

In this case, the facts establish a common purpose to increase TMG's profits, joint control, and a joint interest in the profits and losses of TMG. PF ¶ 68, 15. Moreover, if the Court finds that Dussias was not a member of TMG, there is a fact question as to what he was. Defendants converted his status after-the-fact to a 1099 independent contractor, so he was not an employee. *Id.* ¶ 66. He also was not an independent contractor. *Id.* ¶ 67. If he is not an owner, not an independent contractor, and not an employee, he is best characterized as a joint venturer. As such,

Gleckler owed him fiduciary duties. She breached those duties by, *inter alia*, cutting off Dussias' draw, attempting to fire him, and [redacted]. *Id.* ¶ 72-73.

## IV. DUSSIAS IS ENTITLED TO RECOVER VIA PROMISSORY ESTOPPEL.

If the trier of fact determines that Dussias is not a member of TMG, Dussias is entitled to recover on the theory of promissory estoppel (Count V). "[T]he doctrine of promissory estoppel is properly understood as a consideration substitute in cases where a contract has not been formed." *Chrysler Corp. (Delaware) v. Chaplake Holdings*, Ltd., 822 A.2d 1024, 1031 (Del. 2003). "[T]he principal question… is "whether injustice could be avoided only by enforcement of the promise." *Grunstein*, 2011 WL 378782, at *11. Promissory estoppel "has two fundamental elements… First, there must be proof that there actually was a promise and, second, that the plaintiff relied upon that promise and took action to his detriment." *Haveg Corp. v. Guyer*, 226 A.2d 231, 236–37 (Del. 1967).

In this case, the evidence establishes that Gleckler promised Dussias ownership in TMG and held him out as an owner. PF ¶ 17, 28-45. It was reasonable and foreseeable that Dussias would think he was an owner, when Gleckler specifically told him and others that he was an owner. Dussias suffered a detriment from this reliance. He accepted lower compensation; he committed years of his life; he did not pursue other opportunities. *Id.* ¶ 8, 26. Thus, if the trier of fact ultimately determines the parties did not reach a contract to become an owner of TMG, he can recover via promissory estoppel.[5]

## V. TMG AND GLECKLER HAVE BEEN UNJUSTLY ENRICHED.

Dussias can recover under the theory of unjust enrichment whether or not the trier of fact finds a contract was formed. *Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 351 (Del.

---

[5] Defendants rely on *Ankerstjerne v. Schlumberger, Ltd.*, 155 Fed. Appx. 48, 51 (3d Cir. 2005). That case was decided on Pennsylvania law in the employment context.

Ch. 2022). Unjust enrichment "is a flexible doctrine that a court can deploy to avoid injustice." *Frederick Hsu Living Tr. v. ODN Holding Corp*., 2017 WL 1437308, at *42 (Del. Ch. Apr. 14, 2017). "To plead unjust enrichment, a plaintiff must show: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, and (4) the absence of justification." *Matrix Parent, Inc. v. Audax Mgmt. Co*., LLC, 319 A.3d 909, 945 (Del. Super. Ct. 2024) (cleaned up). Unjust enrichment is colorable even against a defendant who receives the benefit "honestly" or is not a "wrongdoer." *Id.* at 946.

Defendants argue they are entitled to summary judgment on Count V because Dussias is not a member of TMG. Mem. 15. This is wrong as discussed above.

Defendants also argue they are entitled to summary judgment because Dussias received a salary and Defendants incurred attorneys' fees in negotiating with Dussias. Mem. 15. Dussias took reduced compensation to join TMG based on Gleckler's promise that he would be a member. PF ¶ 8. He has not received his 30% interest in profits in any year. *Id.* ¶ 72. TMG has thus been unjustly enriched by the money it did not pay Dussias. Meanwhile, Gleckler has [redacted] *Id.* ¶ 73. Accordingly, Defendants are not entitled to summary judgment on Count VI.

## VI. DUSSIAS OWNS AN ECONOMIC "MEMBERSHIP INTEREST" IF HE IS NOT A MEMBER.

If the trier of fact finds that the GRA is operative and prohibits Dussias from becoming a "Member" of TMG, the facts demonstrate that he owns at least a non-voting economic interest in TMG. LLC agreements must be read as a whole. *Achaian, Inc. v. Leemon Family LLC*, 25 A.3d 800, 807 (Del. Ch. 2011). The Court assumes that no provision is superfluous and every word should be given meaning and effect. *Id.* n. 38.

In this case, as in *Achaian*, the GRA distinguishes between a voting "Member" and a economic "Membership Interest." Dx A § 7.2 Section 7.2 states that a "person which acquires Membership Interests… shall be admitted as a Member of the Company after the person has agreed to be bound by the terms of this Operating Agreement." *Id.* Thus, as in *Achaian*, party can own a Membership Interest without being admitted as a Member. *Achaian*, 25 A.3d at 805-07. As an owner of an economic Membership Interest, Dussias is still entitled to receive his 30% draw and profit share. He is therefore entitled to recover under Counts I, II, III, IV and VI and Defendants are not entitled to summary judgment.

## VII. CERTAIN EXHIBITS AND STATEMENTS OF FACT SHOULD BE DISREGARDED AND STRICKEN.

Exhibits M, W, X, Z and paragraph 37, 54 through 59, and 64 of Defendants' Statement of Material Fact [Dkt. 91 and 91-1] are not admissible and should be stricken. The movant must provide a foundation for any document to be considered on summary judgment. *Calixte v. Walgreen Co.*, 2024 WL 5168695, at *4 n. 4 (N.D. Ill. Dec. 19, 2024) (Lefkow, J.) (website printout lacked foundation). "To be admissible on summary judgment, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule [56(c)], and the affiant must be a person through whom the exhibits could be admitted into evidence." *Pryor v. City of Chicago*, 726 F. Supp. 2d 939, 943 (N.D. Ill. 2010) (Pallmeyer, J.). Hearsay may not be considered unless subject to an exception. *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) (Gottschall, J.) (striking hearsay document on summary judgment); *Loggerhead Tools, LLC v. Sears Holdings Corp.*, 2016 WL 5080028, at *5 (N.D. Ill. Sept. 20, 2016) (Pallmeyer, J.), aff'd, 784 Fed. Appx. 785 (Fed. Cir. 2019) (screenshot was hearsay on summary judgment).

Defendants have not authenticated Dx M and it is hearsay. Dx M and paragraph 37, which is based on Dx M, should be stricken.

Paragraphs 54 through 56, Dx W, and Dx X lack evidentiary support and foundation. Dx W does not include an attached operating agreement and the email referenced in paragraph 54 was not to or from Gleckler or Dussias. Nor have Defendants provided any admissible evidence showing that the document attached to Dx X is the same document that was attached to the email referenced in Dx W. Dussias never claimed any knowledge of Dx X in the cited deposition testimony. Dx D, 310:19-313:24.

Paragraphs 57 through 59 and Dx Y lack evidentiary support and foundation. Defendants provided no admissible evidence showing that Dx Y is the same document that was attached to the email referenced in Dx W. Dussias testified he had no recollection of Dx Y. Dx D, 316:18-317:2.

Paragraph 64 and Dx Z lack foundation. Defendant has made no attempt to lay a foundation for the document, it is not Bates stamped, and does not appear to have been produced in discovery.

## CONCLUSION

For the foregoing reasons, Defendants' are not entitled to summary judgment and their motion should be denied in its entirety.

Dated: March 3, 2025

Respectfully submitted,

**DEAN H. DUSSIAS**

By: *_/s/ Matthew M. Showel_*____
One of his Attorneys

Mathew M. Showel, Esq. (#6300861)
GOLAN CHRISTIE TAGLIA LLP
70 W. Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300
mmshowel@gct.law

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, hereby certifies that he caused a copy of **Plaintiff's Opposition to Defendant's Motion for Summary Judgment** to be served on all counsel of record by filing it with the Court's CM/ECF system on March 3, 2025.

By: *_/s/ Chase Thede__*____