**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| DEAN H. DUSSIAS,<br><br>*Plaintiff*,<br><br>v.<br><br>MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,<br><br>*Defendants*. | Case No. 1:21-cv-05709<br><br>Judge April M. Perry<br><br>Magistrate Judge Beth W. Jantz |

**PLAINTIFF'S RULE 56.1(b)(2) RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**

Pursuant to Local Rule 56.1(b)(2), Plaintiff, Dean Dussias, by and through his attorneys, responds to Defendants' statement of material facts [Dkt. 91] as follows:

**A. The TMG Operating Agreement**

1. TMG was formed in 2009, and is in the business of manufacturing and selling boutique clothing, décor, and spa products. (Counterclaim, Dkt. 23, p. 37 ¶ 11; Answer to Complaint, Dkt. 23, p. 11 ¶ 35).

**RESPONSE**: **Plaintiff admits that TMG was formed in 2009, but disputes and objects to the remainder of this paragraph. TMG's primary business through April 2021 was selling to commercial clients, not direct-to-consumer ("DTC"), though it did have a small DTC business. Exhibit 1, Declaration of Dean H. Dussias, ¶ 4.**

2. TMG's operating agreement (the "Operating Agreement") was executed on December 30, 2009, by the then-members of TMG: Merri Gleckler for and on behalf of MerriG,

LLC, and Cedric Reingold ("Reingold"). (Operating Agreement, Ex. A; Answer to Complaint, Dkt. 23, p. 11 ¶ 36).

**RESPONSE: Plaintiff admits that Reingold and Gleckler executed an operating agreement on or about December 30, 2009 (the "Gleckler-Reingold Agreement" or "GRA"), and that Gleckler put a notation next to her signature that stated "For and on behalf of MerriG, LLC." Gleckler subsequently advised Dussias that the GRA was "gone" and that it was no longer TMG's operating agreement. Ex. 1 ¶ 16. And, while Gleckler made the notation "For and on behalf of MerriG, LLC" next to her signature, MerriG, LLC ("MerriG") is not listed in the GRA as a party to the agreement or a member, manager, or executive of TMG. Defendants' Exhibit A ("Dx A"),[1] p. 1 (stating the parties to the GRA are listed on Exhibit A), 9, and 10.**

3. Exhibit A to the Operating Agreement designates the then-members of TMG, and states: "The following persons are the initial Members of the Company, and their initial capital contributions and ownerships is set forth below.

| Name | Capital Contribution ($) | Percentage Interest |
| --- | --- | --- |
| Merri Gleckler | $1.00 | 50% |
| Cedric Reingold | $1.00 | 50% |

(Operating Agreement, Ex. A, at Exhibit A thereto)

**RESPONSE: Plaintiff admits Paragraph 3.**

4. Exhibit B to the Operating Agreement designates the officers of TMG, and states: "The following person(s) are elected as officers of the Company:

| Name of Officer | Title |
| --- | --- |
| Merri Gleckler | Manager |
| Cedric Reingold | CFO & Manager |

[1] Plaintiff will cite Defendants' exhibits as "Dx _."

(Operating Agreement, Ex. A, at Exhibit B

thereto).

<u>**RESPONSE**</u>: **Plaintiff admits Paragraph 4.**

5. Article 7 of the Operating Agreement is entitled "Withdrawal and Transfers of Membership Interests." Section 7.1 of the Operating Agreement provides:

> 7.1 **Withdrawal.** A Member may withdraw from the Company prior to the dissolution and winding up of the Company with the unanimous consent of the other Members, or if such Member transfers or assigns all of his or her Membership Interests pursuant to Section 7.2 below. A Member which withdraws pursuant to this Section 7.1 shall be entitled to a distribution in an amount equal to such Member's Capital Account.

(Operating Agreement, Ex. A, § 7.1).

<u>**REPSONSE**</u>: **Plaintiff admits Paragraph 5.**

6. Section 7.2 of the Operating Agreement provides:

> 7.2 **Restrictions on Transfer.** A Member shall not transfer any Membership Interests, whether now owned or later acquired, unless Members holding a majority of the Membership Interests not subject to transfer consent to such transfer. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A person which acquires Membership Interests in accordance with this section shall be admitted as a Member of the Company after the person has agreed to be bound by the terms of this Operating Agreement by executing a consent in the form of Exhibit C.

(Operating Agreement, Ex. A, § 7.2).

<u>**RESPONSE**</u>: **Plaintiff admits Paragraph 6.**

7. The referenced Exhibit C to the Operating Agreement is entitled "**NEW MEMBER'S CONSENT**," and provides: "The undersigned agrees to be bound as a Member by the terms of the Operating Agreement of TMG as if the undersigned was a signatory thereof," and contains a line for any such new members to sign and date. (Operating Agreement, Ex. A, at Exhibit C thereto).

<u>**RESPONSE**</u>: **Plaintiff admits Paragraph 7.**

8. The Operating Agreement contained an integration clause, providing:

> 10.1 **Entire Agreement; Amendment.** This agreement constitutes the whole and entire agreement of the parties with respect to the subject matter of this agreement, and it shall not be modified or amended if any respect except by a written instrument executed by all of the Members. This agreement replaces and supersedes all prior written and oral agreements by and among the Members.

(Operating Agreement, Ex. A, §10.1).

**RESPONSE: Plaintiff admits Paragraph 8.**

9. The Operating Agreement is governed by Delaware law. (Operating Agreement, Ex. A, § 10.2).

**RESPONSE: Plaintiff admits paragraph 9.**

**B. Gleckler's Dispute with Reingold**

10. In 2018, a dispute arose between Gleckler and her former co-owner, Reingold, resulting in a Delaware lawsuit entitled *MerriG, LLC and Merri Gleckler v. Cedric Reingold and TMG Kreations, LLC*, C.A. No. 2018-0772-MTZ. (Answer to Counterclaim, Dkt. 28, ¶ 20; Answer to Complaint, Dkt. 23, p. 11 ¶ 38).

**RESPONSE: Plaintiff admits paragraph 10.**

11. That lawsuit was resolved [redacted] (Answer to Complaint, Dkt. 23, pp. 9, 12 ¶¶ 27, 38; Answer to Counterclaim, Dkt. 28, ¶ 20; MIPA, Ex. B).

**RESPONSE: Plaintiff admits that Dx B is the MIPA, to which Gleckler, Reingold, MerriG, and TMG are all parties. Plaintiff disputes and objects to the allegation that [redacted] That is not what the MIPA says and it is unclear what [redacted] means. [redacted]**

[redacted] **Dx B § 4(a), (b), and (d).**

**C. <u>Dussias' Relationship with Gleckler and TMG</u>**

12. Gleckler met Dussias in 2009, and Dussias performed certain consulting work for TMG beginning in 2013. (Answer to Complaint, Dkt. 23, p. 5 ¶ 10; Answer to Counterclaim, Dkt. 28, ¶ 21).

**<u>RESPONSE</u>: Plaintiff admits paragraph 12.**

13. Dussias sent the following email to Gleckler on November 26, 2013, regarding a third-party named Russ Schafer claiming an ownership interest in TMG, with the subject line "LLC questions, responding to your request:"

> 1. Have lawyer review LLC Operating Agreement – its 6 ¼ pages. Must know Delaware LLC law.
>
> ***
>
> 3. Not worth focusing on Russ – he is not a Member (see his one page agreement, his deposition, pattern of actions, Section 7.2 of Kashwere Operating Agreement and section 18-702, (b) (1) of the Delaware Code. No copy of LLC Agreement signed by him, no meetings of the Members including him, no voting ever, no agreement from you, he has different terms than Merri G and [Cedric Reingold]."

(TMG_00589599, Ex. C). Dussias testified that one of the reasons he believed Mr. Schafer was not a member of TMG was because he did not sign the Operating Agreement, and Dussias believed his assessment "was accurate." (Dussias Dep., Ex. D, 333:16-20, 334:1-7).

**<u>RESPONSE</u>: Plaintiff admits Dx D is an accurate copy of the 2013 email and that paragraph 13 quotes a portion of that email.**

14. Beginning in the summer of 2019, Gleckler and Dussias began discussing terms regarding Dussias potentially acquiring a membership interest in TMG. (Answer to Complaint, Dkt. 23, pp. 6-7 ¶¶ 15, 18; Dussias Dep., Ex. D, 48:22-49:22).

**RESPONSE**: **Plaintiff disputes paragraph 14 accurately describes the discussions. In Summer of 2019, Dussias and Gleckler discussed Dussias coming to work full-time with TMG and Dussias stated that he would only do so as a member of TMG. Ex. 1 ¶ 4.**

15. In October 2019 and during the course of the parties' discussions regarding Dussias potentially acquiring a membership interest in TMG, Dussias was hired as TMG's President. (Answer to Complaint, Dkt. 23, pp. 2-3 ¶¶ 2-3).

**RESPONSE**: **Plaintiff disputes paragraph 15. Dussias did not agree to be hired as an employee by TMG; his agreement with Gleckler was that he would join TMG as an owner and be compensated as a W-2 until the final payment was made to Reingold under the MIPA. Ex 1 ¶ 5. Dussias started in July 2019. Ex. 1 ¶ 6.**

16. During his tenure as TMG's President, Dussias was paid substantial compensation. (TMG_00590523-TMG_590534, Ex. CC).

**RESPONSE**: **Plaintiff admits he received compensation between October 2019 and April 2021, but disputes and objects to the compensation was "substantial." Dussias agreed to a discounted W-2 compensation rate from August 2019 through June 2020 based on his agreement with Gleckler and her promise to him that would be an owner of TMG. Ex. 1 ¶ 6. He then accepted a draw on profits that was also lower than the salary, bonus, and profit sharing he would have required were he not an owner. *Id.***

17. Gleckler and Dussias both retained attorneys regarding the discussions and negotiations for Dussias to potentially acquire a membership interest in TMG. (Gleckler Dep., Ex. E, 164:11-165:1; DHD002228, Ex. F; Dussias Dep., Ex. D, 46:19-23, 133:11-14, 311:9-11).

**RESPONSE**: **Plaintiff disputes and objects to paragraph 17. Dussias did not retain any**

**attorneys until sometime in 2021. Dx D, 133:3-23. While Gleckler forwarded some documents prepared by attorneys, there is no evidence establishing that the attorneys were retained for the purpose of negotiating with Dussias or by whom they were retained and paid (TMG, Gleckler, or both).**

## D. <u>The Negotiations, Term Sheets, and Draft Amended Operating Agreements</u>

18. On February 23, 2020, Dussias emailed Gleckler a document entitled "Summary of principles/terms between Merri Gleckler (MG) and Dean Dussias (DHD)." (DHD002504-DHD002505, Ex. G). That document provided, in relevant part:

- MG equity at 70%; DHD equity at 30%, with the following exceptions – (a) if revenue of Kashwere less than $5MM, then DHD profit distributions to reduce to 20% - at the current time, profit distributions, if any, to be made at the 20% level, with any true-up if necessary to be paid no later than January 31st of 2021
  . . .

***

- New Operating Agreement to be created for Kashwere that reflects the trust, commitment and partnership between MG and DHD . . .

***

- All other Operating Agreement content to be drafted by MG and Griesing Law for comment by DHD. . .

(*Id.*).

<u>**RESPONSE**</u>: **Plaintiff admits that Dx G is an accurate copy of the email and attachment and paragraph 18 accurately quotes excerpts from the document.**

19. On May 4, 2020, Gleckler's attorney, Cheryl Borland from the Griesing Law Firm, drafted the following email to Dussias and Gleckler, which attached a word document entitled "Term Sheet for Dean Membership Acquisition:"

> Outlined is the Term Sheet that will outline your proposed ownership in TMG as well as the duties and policies/procedures for the operation of TMG on a go-forward

> basis.
> . . I know that you have known Merri for a number of years and were with her as she was dealing with the litigation regarding the buyout of her former co-owner. Some of the provisions included in the Term Sheet as well as the eventual Operating Agreement, once we come to agreement on the Term Sheet, are designed to prevent a similar situation from happening with you or with any other additional member, if any, in the future. I use these terms and provisions on a regular basis, especially when a new member is coming into an existing and operating business. . . .
>
> In addition, I want you to know that these terms and provisions should not be viewed as any doubt of Merri's desire to have your continued involvement in TMG and moving into ownership.
>
> Finally, please note that Griesing Law represents Merri and TMG. You have a right to engage an attorney to work with you and explain the legal principles laid out in the Term Sheet, Employment Agreement, and Operating Agreement. If you choose not to engage a separate attorney, the documents will all be clear of my representation and in the event of a conflict with you, we will continue to represent only Merri and TMG.

(DHD002228, Ex. F).

**<u>RESPONSE</u>: Plaintiff admits that Dx F is an accurate copy of the email and paragraph 19 accurately quotes a portion of it.**

20. Dussias did not respond to this email. (Dussias Dep., Ex. D, 135:7-19). However, he testified regarding his understanding of the email: "I don't think Merri wanted to be engaged in future litigation." (*Id.*, 150:3-18).

**<u>RESPONSE</u>: Plaintiff disputes and objects to paragraph 20. Dx J shows that Plaintiff did respond. And while this paragraph accurately quotes a portion of Plaintiff's testimony from page 150 of the transcript, he testified that he thought Gleckler wanted to avoid litigation generally, not as to his understanding of Dx F in particular. Dx D, 150:3-18**

21. The term sheet attached to the e-mail (the "Gleckler Term Sheet"), which was titled "TERM SHEET - TMG KREATIONS, LLC – REVISED AND RESTATED

OPERATING AGREEMENT," provided:

> *The Term Sheet is non-binding except as expressly set forth below. It is not a complete description of the terms of any proposed transaction, is for discussion purposes only and does not create, and is not intended to create, a binding or enforceable contract between the parties or any duty on any person to negotiate toward a binding contract. Each party reserves the right to terminate discussion with respect to the acquisition of membership in TMG and the revised Operating Agreement at any time and for any reason. This summary may not be relied upon by any person as the basis for a contract by estoppel or otherwise.*
>
> ***
>
> The restructure and admission of Dean as a Member in the Company shall be conditioned on both parties being satisfied with the negotiation of the Amended and Restated Operating Agreement and the terms and conditions contained therein.
>
> ***
>
> Either party may terminate the discussions regarding the potential admission of Dean as a new Member of TMG and the ancillary and associated agreements by notice in writing at any time prior to the execution of definitive agreements between them.

(Gleckler Term Sheet, DHD002230-DHD002237, Ex. H, pp. 1, 6-7).

**<u>RESPONSE</u>: Plaintiff admits Dx H is an accurate copy of the email and attachment and that paragraph 21 accurately quotes a portion of the attachment.**

22. Dussias testified: "Q. So you were going to – so the intent between you and Merri was to document your ownership interest terms, correct? In writing. A. Yes." (Dussias Dep., Ex. D, 130:15-18).

**<u>RESPONSE</u>: Plaintiff admits paragraph 22.**

23. The Gleckler Term Sheet reiterated that "Griesing represents Merri and TMG," and stated that "The Operating Agreement and the ancillary agreements shall be fair and equitable but will be drafted for the purpose of protecting Merri – especially after the protracted litigation she went through with Cedric [Reingold]." (Gleckler Term Sheet, DHD002230-

DHD002237, Ex. H, p. 6).

**<u>RESPONSE</u>: Plaintiff admits paragraph 23 accurately quotes a portion of Dx H.**

24. The Gleckler Term Sheet provided that Gleckler would remain the sole managing member of TMG, and that Dussias would acquire up to a 30% interest, subject to the following vesting schedule:

> Dean will be entitled to acquire a twenty-percent (20%) Membership Interest in TMG in return for services rendered as well as completion of a 3 year vesting period. He may be given an additional ten percent (10%) Membership Interest in the Company in the event that TMG has greater than $5M in sales by December 31, 2020. In the event that the sales metric is not met, Dean shall not be entitled to the additional ten percent (10%). The vesting period may be accelerated in the event of a sale or change of control.
>
> ***
>
> Dean will contribute services for his Membership Interests in the Company. The Membership Interests will vest over a 3-year period. Until Dean's Membership Interests are fully vested, he shall be entitled to participate in votes. He will still be involved in providing Merri all necessary information that she needs to make decisions for TMG as the sole Managing Member.

(Gleckler Term Sheet, DHD002230-DHD002237, Ex. H, at pp. 1-2).

**<u>RESPONSE</u>: Plaintiff admits paragraph 24 accurately quotes a portion of Dx H.**

25. The Gleckler Term Sheet provided that Dussias "will enter into an employment agreement as part of his admission into the Company and in exchange for his Membership Interest," and that "Employment Agreement shall set out the term of the agreement, salary and benefits, restrictive covenants (confidentiality, non-compete, non-solicitation, non-disparagement)." (Gleckler Term Sheet, DHD002230-DHD002237, Ex. H, at p. 2).

**<u>RESPONSE</u>: Plaintiff admits paragraph 25 accurately quotes a portion of Dx H.**

26. The Glecker Term Sheet was never signed by Dussias or Gleckler. (Dussias' Answer to Counterclaim, Dkt. 28, ¶ 35; Dussias' Answers to TMG's Interrogatories, Ex. I, ¶¶

4, 11).

**RESPONSE: Plaintiff admits paragraph 26.**

27. Dussias testified that he did not agree to the terms in the Gleckler Term Sheet. (Dussias Dep., Ex. D, 181:2-17).

**RESPONSE: Plaintiff admits paragraph 27.**

28. Dussias sent an email to Gleckler on May 7, 2020, confirming he received the Gleckler Term Sheet, stating: "Confirmed, message received with attachment – will send you back a redline after I have reviewed it, etc." (DHD003280, Ex. J).

**RESPONSE: Plaintiff admits Dx J is an accurate copy of the referenced email and paragraph 28 accurately quotes a portion of the email.**

29. On June 7, 2020, Dussias e-mailed Gleckler a rewritten term sheet (the "Dussias Term Sheet"), which also stated:

> *The Term Sheet is non-binding except as expressly set forth below. It is not a complete description of the terms of any proposed transaction, is for discussion purposes only and does not create, and is not intended to create, a binding or enforceable contract between the parties or any duty on any person to negotiate toward a binding contract. Each party reserves the right to terminate discussion with respect to the acquisition of membership in TMG and the revised Operating Agreement at any time and for any reason. This summary may not be relied upon by any person as the basis for a contract by estoppel or otherwise.*
>
> ***
>
> The restructure and admission of Dean as a Member in the Company shall be conditioned on both parties being satisfied with a revised Amended and Restated Operating Agreement and the terms and conditions contained therein.
>
> ***
>
> Either party may terminate the discussions regarding the potential admission of Dean as a new Member of TMG and the ancillary and associated agreements by notice in writing at any time prior to the execution of definitive agreements between them.

(TMG_00187353, Ex. K; Dussias Term Sheet, TMG_00187354 through TMG_00187376, Ex.

L, pp. 1, 5-6).

**<u>RESPONSE</u>: Plaintiff admits Dx K and L are accurate copies of the email and attachment and paragraph 29 accurately quotes a portion of the attachment.**

30. Dussias testified that the purpose of him sending a term sheet to Gleckler was "to reach an agreement." (Dussias Dep., Ex. D, 229:15-18).

**<u>RESPONSE</u>: Plaintiff admits paragraph 30.**

31. The Dussias Term Sheet provided that "Dean upon completion of this transaction as a minority owner will become a member and be a manager of the company." (Dussias Term Sheet, TMG_00187354 through TMG_00187376, Ex. L, p. 1). He was asked why he phrased this in the future tense that he "will become a member," and he responded: "I don't recall." (Dussias Dep., Ex. D, 231:14-232:4).

**<u>RESPONSE</u>: Plaintiff admits paragraph 31.**

32. The Dussias Term Sheet did not contain any vesting period and provided that Dussias would immediately become a 30% owner and a manager of TMG. It provided that "Merri will not remain as the sole Managing Member," and that Dussias "will become a Member and be a Manager of the Company." (Dussias Term Sheet, TMG_00187354 through TMG_00187376, Ex. L, p. 1).

**<u>RESPONSE</u>: Plaintiff admits paragraph 32.**

33. The Dussias Term Sheet attached a proposed employment agreement, which provided: "In completion of [Dussias] becoming a Member of the Company and in continuation of his employment activity with the Company . . . The Company desires to retain the services of [Dussias] and [Dussias] desires to be retained by the Company on the terms and conditions set forth herein." (Dussias Term Sheet, TMG_00187354 through TMG_00187376, Ex. L, p. 9

at Recitals).

**<u>RESPONSE</u>: Plaintiff admits paragraph 33.**

34. Despite drafting and attaching an employment agreement to his own term sheet, Dussias testified that he "did not agree to enter – I didn't even – didn't even contemplate nor discussed with Merri an employment agreement." (Dussias Dep., Ex. D, 205:5-11).

**<u>RESPONSE</u>: Plaintiff disputes and objects to paragraph 34 on the basis that it mischaracterizes Plaintiff's testimony and asserts a credibility argument in violation of LR 56.1. *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018). Plaintiff admits the deposition testimony is accurately quoted, but disputes and objects to the remainder of paragraph 34. Plaintiff did not testify that parties had never exchanged an employment agreement; he was testified that the concept of an employment agreement was totally inconsistent with his discussions with Gleckler and had never been raised prior to the term sheet from Gleckler's attorneys. Ex. 1 ¶ 9.**

35. The Dussias Term Sheet was never signed by Dussias or Gleckler. (Dussias' Answer to Counterclaim, Dkt. 28, ¶ 35; Dussias' Answers to TMG's Interrogatories, Ex. I, ¶¶ 4, 11).

**<u>RESPONSE</u>: Plaintiff admits paragraph 35.**

36. Despite no term sheet and no amended operating agreement having been signed, in July 2020, Dussias deposited $20,000 into a TMG bank account using an ACH transfer. (Dussias Dep., Ex. D, 301:5-14).

**<u>RESPONSE</u>: Plaintiff disputes and objects to paragraph 36 on the basis that it mischaracterizes Plaintiff's testimony and asserts a credibility argument in violation of LR 56.1. *Rivera*, 319 F. Supp. 3d at 1018. Plaintiff admits that the parties had not**

**executed a written term sheet or operating agreement at the time of the contribution, but disputes that the parties had not already reached an agreement, including that he would make a capital contribution, by the time he made the contribution. Dx D, 194:23-195:24; Ex. 1 ¶ 11-12, 19, 57-61.**

37. Despite no term sheet and no amended operating agreement having been signed, on July 5, 2020, the username "dussias" accessed TMG's payroll system and made the following changes:

- Changed Dussias' status as an "officer" from "false" to "true;"
- Changed Dussias' status as an "owner" from "false" to "true;"
- Changed Dussias' "ownerPercent" from blank to "30%;"
- Changed Dussias' compensation to receive a "draw" in the amount of [redacted]

(TMG_00590492, Ex. M). All of these changes were made by the username "dussias" as indicated in the far right column. (*Id.*). Dussias testified that he personally made these changes or directed that they be made. (Dussias Dep., Ex. D, 109:2-13, 324:22-325:2).

<u>RESPONSE</u>: **Plaintiff admits that he made the four changes specified above or directed an employee of HSimon to make them. Plaintiff disputes and objects to the remainder of paragraph 37 as unsupported by the evidence. First, the changes were not made "despite" an agreement not having been reached; the changes were made *because* Plaintiff and Gleckler had specifically agreed to these terms. Ex. 1 ¶ 11-12, 19-21. Plaintiff objects to and moves to strike Dx M as hearsay and lacking foundation. Defendants have laid no foundation for Dx M. *Calixte v. Walgreen Co*., 1:22-CV-01855, 2024 WL 5168695, at *4 n. 4 (N.D. Ill. Dec. 19, 2024) (Lefkow, J.) (website printout lacked foundation). They have not identified what it is, where it came from, who created it, how,**

**it was created, when it was created, and who compiled the data in the image. *Id.* "To be admissible on summary judgment, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule [56(c)], and the affiant must be a person through whom the exhibits could be admitted into evidence." *Pryor v. City of Chicago*, 726 F. Supp. 2d 939, 943 (N.D. Ill. 2010) (Pallmeyer, J.). Additionally, Dx M is hearsay. *Hossfeld v. Allstate Ins. Co*., 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) (Gottschall, J.) (striking hearsay document on summary judgment); *Loggerhead Tools, LLC v. Sears Holdings Corp.*, 12-CV-9033, 2016 WL 5080028, at *5 (N.D. Ill. Sept. 20, 2016) (Pallmeyer, J.), aff'd, 784 Fed. Appx. 785 (Fed. Cir. 2019) (screenshot was hearsay that could not be used on summary judgment). Defendant also objects to Defendants' descriptions of the information in Dx M as lacking foundation.**

38. Despite no term sheet and no amended operating agreement having been signed, in November 2020, Dussias prepared and filed a TMG annual report with the Illinois Secretary of State, which identified Dussias as a "member" and "manager" of TMG. (Dussias' Answers to Gleckler's Interrogatories, Ex. N, ¶ 13).

<u>RESPONSE</u>: **Plaintiff admits that he prepared and filed a TMG annual report with the Illinois Secretary of State identifying himself as a member and manager, but disputes that he did so "despite" the other conditions referenced in paragraph 38. Dussias had an agreement with Gleckler that he was a member of TMG and Gleckler was aware that he was filing the document. Ex. 1 ¶ 34.**

## E. <u>The Draft Amended Operating Agreements</u>

39. Beginning in February 2021, Gleckler and Dussias and their respective counsel, exchanged multiple drafts of proposed amended operating agreements regarding the potential

admission of Dussias as a member in TMG. (Answer, Dkt. 23, p. 19 ¶ 57).

**<u>RESPONSE</u>: Plaintiff admits that Gleckler and Dussias exchanged draft operating agreements in February 2021, but disputes and objects to the remaining allegations. The admission was not "potential" in February of 2021; Dussias and Gleckler agreed that Dussias had been an owner effective July 2020. Dx R at TMG_00416386 (stating that Dussias' membership was "effective July 1, 2020"); Ex. 1 ¶ 11-12, 15, 23.**

40. Before any draft operating agreement was ever shared with Gleckler, on January 1, 2021, Dussias e-mailed Gleckler an attachment containing just a signature page of a purported operating agreement, signed by Dussias and which stated that Dussias was a "manager" of TMG. In the email, Dussias stated: "Please see attached; counter-sign; PDF and send back." (TMG_00420805-TMG_00420806, Ex. O; Dussias Dep., Ex. D, 247:11-20). Gleckler did not sign that signature page. (*Id.*).

**<u>RESPONSE</u>: Plaintiff admits Dx O is an accurate copy of the email and attachment and paragraph 40 accurately quotes a portion of the document, which states it was being sent "[a]s discussed" and was discussed by the parties before Dussias sent it. Ex. 1 ¶ 24. It was sent in connection with Gleckler's desire to have an agreement in place so TMG could be certified by the Women's Business Enterprise National Counsel *Id.***

41. On February 6, 2021, Gleckler sent an email to Dussias stating: "Finally, attached is our Operating Agreement created by Fran [Griesing's] law firm highlighting the details of our agreement." (TMG_00162880, Ex. P). The email attached a draft document (the "First Draft") entitled "AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT OF TMG KREATIONS, LLC." (First Draft, TMG_00162881-TMG_00162927, Ex. Q).

**<u>RESPONSE</u>: Plaintiff admits Dx P and Q are accurate copies of the email and attachment and paragraph 41 accurately quotes a portion of the document.**

42. The First Draft contained a section entitled "Vesting Schedule" that provided for a three-year vesting schedule for Dussias' proposed membership interest. (First Draft, TMG_00162881-TMG_00162927, Ex. Q, p. 8 § 3.1.3). That same section also provided: "In the event that Dean resigns or is terminated prior to the Membership Interests being fully vested, Dean shall surrender his Membership Interests in the Company without payment of any compensation or consideration." (*Id.*).

**<u>RESPONSE</u>: Plaintiff admits paragraph 42.**

43. The First Draft also stated that Gleckler was the sole manager of TMG. (First Draft, TMG_00162881-TMG_00162927, Ex. Q, pp. 3-4, § 5.1).

**<u>RESPONSE</u>: Plaintiff admits paragraph 43.**

44. The First Draft was never signed by Dussias or Gleckler. (Dussias' Answers to TMG's Interrogatories, Ex. I, ¶ 4; Dussias Dep., Ex. D, 259:6-13, 320:18-22).

**<u>RESPONSE</u>: Plaintiff admits paragraph 44.**

45. On February 16, 2021, Dussias emailed another draft amended operating agreement, that he prepared, to Gleckler and TMG's accountant, Ray Conway. (TMG_00416384- TMG_00416385, Ex. R). The email attached a draft amended operating agreement (the "Second Draft") entitled: "LIMITED LIABILITY COMPANY OPERATING AGREEMENT OF TMG KREATIONS, LLC d/b/a KASHWERE (the 'Company')." (Second Draft, TMG_00416386- TMG_00416407, Ex. S). The Second Draft was not a redline of the First Draft, it was a different document. (*Id.*). The Second Draft was created by Dussias. (Dussias Dep., Ex., D, 264:1-12).

**RESPONSE**: **Plaintiff admits paragraph 45.**

46. Dussias testified that the purpose in him sending the Second Draft was to "come to finalize the document" and to "agree and sign." (Dussias Dep., Ex. D, 261:17-262:7).

**RESPONSE**: **Plaintiff disputes and objects to paragraph 46. The transcript shows that Dussias was discussing text messages about Dx Q during the testimony cited in paragraph 46. Dx D, 259:15-260:10. Dx S was not introduced until p. 262:14.**

47. The Second Draft had a retroactive effective date of July 1, 2020. (Second Draft, TMG_00416386-TMG_00416407, Ex. S, p. 1). The Second Draft contained no vesting schedule for Dussias' membership interest, and contained language to immediately make Dussias a manager of TMG. (Second Draft, TMG_00416386-TMG_00416407, Ex. S, §§ 5.2, 7.1, Exhibit A thereto).

**RESPONSE**: **Plaintiff admits paragraph 47.**

48. The Second Draft was never signed by either Dussias or Gleckler. (Dussias' Answers to TMG's Interrogatories, Ex. I, ¶ 4; Dussias Dep., Ex. D, 320:18-22).

**RESPONSE**: **Plaintiff admits paragraph 48.**

49. On February 22, 2021, Dussias emailed Gleckler a revised version of the same draft operating agreement that he prepared. (TMG_00409744, Ex. T). The draft (the "Third Draft") was entitled "LIMITED LIABILITY COMPANY OPERATING AGREEMENT OF TMG KREATIONS, LLC d/b/a KASHWERE (the 'Company')." (Third Draft, TMG_00409745- TMG_00409766, Ex. U, p. 1).

**RESPONSE**: **Plaintiff admits paragraph 49.**

50. The Third Draft changed the effective date to be retroactive to March 13, 2020. (Third Draft, TMG_00409745-TMG_00409766, Ex. U, p. 1). The Third Draft was revised to

state that MerriG, LLC would be the sole initial manager of the company. (*Id.*, § 7.1).

**<u>RESPONSE</u>: Plaintiff admits paragraph 50.**

51. The Third Draft was never signed by Dussias or Gleckler. (Dussias' Answers to TMG's Interrogatories, Ex. I, ¶ 4; Dussias Dep., Ex. D, 320:18-22).

**<u>RESPONSE</u>: Plaintiff admits paragraph 51.**

52. On March 25, 2021, the following text message exchange occurred between Gleckler and Dussias:

> Dussias: Hi – Laura Balson from gct law will contact Cheryl Borland at Fran's firm…just an fyi.
>
> Gleckler: Ok did she give you a
>
> quote? Dussias: No
>
> Gleckler: We need that. This is not open ended. I'm gifting 30% of Kashwere to you. You just want to ensure you feel comfortable that I or anyone else cannot take that away from you. There is nothing else she needs to discuss.
>
> Dussias: While yes, it's important for me to know that the 30% is real, neither you nor TMG gifted it to me – I paid for the 30% . . . I was sent a document over 40 pages, appropriate for an Operating Agreement – it requires review and then some revision and I think for both of us important its done well and sets the right foundation for a successful partnership.
>
> Gleckler: I don't think texting is smart… you put money in an account without my knowledge claiming that you told me so you bought in? I value you, which is why I gifted you the partnership opportunity ! Now you want to tell me how you want the opportunity? I'm blown away !

(DHD000994-DHD000995, Ex. V).

**<u>RESPONSE</u>: Plaintiff admits paragraph 51.**

53. Dussias testified that he thinks Gleckler was "lying" in this text message exchange. (Dussias Dep., Ex. D, 302:2-9). Dussias did not respond to Gleckler's final text message on March 25, 2021. (*Id.*, 302:24-303:5).

**<u>RESPONSE</u>: Plaintiff disputes and objects to paragraph 53. Dussias testified that Gleckler may have been lying about not being aware of the $20,000 capital contribution but also "I don't know why she sent me that text." Dx D, 302:8-15. Dx V plainly shows that Dussias sent a text to Gleckler after the quoted portion nine minutes later and he testified that he might have had a follow-up conversation with her. Dx D, 302:22-303:20.**

54. On April 8, 2021, Dussias' counsel, Kelly E. Hall of Golan Christie Taglia, emailed Gleckler's counsel, Cheryl Borland, another draft (the "Fourth Draft") of an amended operating agreement. (DHD_002916-DHD_0029223, Ex. W, at DHD_002920-DHD_002921). The Fourth Draft abandoned the form created by Dussias in the Second Draft and Third Draft, and instead was a redline to the First Draft initially created by Gleckler's counsel. (Fourth Draft, TMG_00162260- TMG_00162317, Ex. X; Dussias Dep., Ex. D, 310:19-313:24).

**<u>RESPONSE</u>: Dussias disputes and objects to paragraph 54 and moves to strike paragraph 54, Dx W and Dx X, on the basis of lack of evidentiary support and foundation. Dx W does not include an attached operating agreement and the email referenced in paragraph 54 was not to or from Gleckler or Dussias. Nor have Defendants provided any admissible evidence showing that the document attached to Dx X is the same document that was attached to the email referenced in Dx W. Dussias never claimed any knowledge of Dx X in the cited deposition testimony.**

55. The Fourth Draft revised by Dussias' counsel made multiple changes to the First Draft created by Gleckler's counsel, including adding a retroactive date of July 1, 2020, and deleting the "Vesting Schedule" section that provided for a three-year vesting schedule and that also stated: "In the event that Dean resigns or is terminated prior to the Membership Interests being fully vested, Dean shall surrender his Membership Interests in the Company without

payment of any compensation or consideration." (Fourth Draft, TMG_00162260-TMG_00162317, Ex. X, pp. 1, 9-10).

**<u>RESPONSE</u>: Plaintiff admits paragraph 55 accurately describes portions of Dx X, but Plaintiff disputes, objects to and moves to strike paragraph 55 and Dx X on the same basis as paragraph 54.**

56. The Fourth Draft was never signed by Dussias or Gleckler. (Dussias' Answers to TMG's Interrogatories, Ex. I, ¶ 4; Dussias Dep., Ex. D, 320:18-22).

**<u>RESPONSE</u>: Plaintiff admits the parties never executed Dx X, but Plaintiff disputes, objects to and moves to strike paragraph 56 and Dx X on the same basis as paragraph 54.**

57. On April 12, 2021, Gleckler's counsel emailed Dussias' counsel another draft of an amended operating agreement (the "Fifth Draft"). (DHD_002916-DHD_0029223, Ex. W, at DHD_002917-DHD_002918). The Fifth Draft was revised by Gleckler's counsel from the Fourth Draft, and was labeled with a "CLB [Cheryl L. Borland]/Griesing 4-12-21" notation in the top right corner. (Fifth Draft, TMG_00176157-TMG_00176204, Ex. Y; Dussias Dep., Ex. D, 317:6- 18).

**<u>RESPONSE</u>: Dussias disputes and objects to paragraph 57 and moves to strike paragraph 57, Dx W and Dx Y, on the basis of lack of evidentiary support and foundation. Dx W does not include an attached operating agreement and the specific email referenced in paragraph 57 was not to or from Gleckler or Dussias. Nor have Defendants provided any admissible evidence showing that Dx Y is the same document that was attached to the email referenced in Dx W. Dussias testified he had no recollection of seeing Dx Y. Dx D 316:18-317:2.**

58. The Fifth Draft added back in the "Vesting Schedule" section, which provided:

Dean's Membership Interest shall not fully vest for a period of three years from the effective date of this Agreement. In the event that Dean resigns or is terminated prior to the Membership Interests being fully vested, Dean shall surrender his Membership Interests in the Company without payment of any compensation or consideration . . ."

(Fifth Draft, TMG_00176157-TMG_00176204, Ex. Y, § 3.1.3).

**RESPONSE**: **Plaintiff admits paragraph 58 accurately describes portions of Dx Y, but disputes, objects to and moves to strike paragraph 58 and Dx Y on the same basis as paragraph 57.**

59. The Fifth Draft was never signed by Dussias or Gleckler. (Dussias' Answers to TMG's Interrogatories, Ex. I, ¶ 4; Dussias Dep., Ex. D, 320:18-22).

**RESPONSE**: **Plaintiff admits the parties never executed Dx Y, but disputes, objects to and moves to strike paragraph 59 and Dx Y on the same basis as paragraph 57.**

60. No term sheet or amended operating agreement was ever signed by Gleckler or Dussias. (Dussias' Answer to Counterclaim, Dkt. 28, ¶ 35; Dussias' Answers to TMG's Interrogatories, Ex. I, ¶¶ 4, 11; Dussias Dep., Ex. D, 320:18-22). Neither Dussias, TMG, nor Gleckler has produced a signed copy of any version of a term sheet or a signed copy of any of the drafts of the amended operating agreement.

**RESPONSE**: **Plaintiff admits paragraph 60.**

61. In response to an interrogatory asking him to "Identify all agreements between you, Gleckler, and/or TMG that were signed by you, as well as by Gleckler and/or TMG, including but not limited to any term sheets, contracts, agreements, letters of intent, or operating agreements," Dussias stated: "Subject to the foregoing objections, Plaintiff is not aware of any signed agreements fitting the description of this interrogatory." (Dussias' Answers to TMG's

Interrogatories, Ex. I, ¶ 4).

**<u>RESPONSE</u>: Plaintiff admits paragraph 61.**

62. Dussias testified that he did not agree with the drafts prepared by Gleckler's counsel, but that he did not believe it necessary to contact those lawyers or discuss the drafts with them because "the lawyers aren't the decisions-makers, Merri is." (Dussias Dep., Ex. D, 297:8- 301:4).

**<u>RESPONSE</u>: Plaintiff admits paragraph 62.**

63. Despite seven unsigned, draft documents being exchanged, Dussias included the allegation in his Complaint that "Gleckler never presented any document to Dussias to sign to confirm the terms of the operating agreement or for Dussias to consent that his ownership interest was subject to and bound by the operating agreement or pursuant to any other document." (Answer to Complaint, Dkt. 23, p. 13 ¶ 41).

**<u>RESPONSE</u>: Plaintiff disputes and objects to paragraph 63. Paragraph 41 of the complaint is misquoted. The words "Operating Agreement" are capitalized in paragraph 41 of the complaint and expressly refer to the 2009 Gleckler-Reingold Agreement ("GRA"). Dkt. 23, ¶ 35-41. Gleckler admits never having presented Plaintiff with any document purporting to bind him to the GRA and that she never intended for Plaintiff to sign the GRA or Exhibit C thereto. Dx E, 156:6-8, 164:11-165:1, 165:22-23. Gleckler also never advised Plaintiff that his ownership was contingent on executing a written document and, to the contrary, expressly agreed that he was an owner without a written contract. Ex. 1 ¶ 23. Finally, Plaintiff disputes and objects to the allegation that there were seven documents exchanged. The foregoing paragraphs do not establish that seven documents were exchange, as stated in response**

**to the relevant paragraphs above.**

64. On April 22, 2021, Gleckler's counsel sent a letter to Dussias' counsel stating:

> This letter is to inform you and your client that Merri Gleckler and TMG Kreations, LLC will not be pursuing the completion of the offer of membership into the Company by your client, Dean Dussias.
>
> We made an offer of membership and proffered a term sheet by which he would need to be agreeable to and that required that an Operating Agreement must be signed by him before he could become a Member. This offer was never accepted in writing as your client did not sign the term sheet. The Operating Agreement that he drafted that was not in line with the Term Sheet was a rejection of the terms of the original offer and can only be construed to be a counter-offer, which w[as] not accepted by my client . . .
>
> ***
>
> Based on your client's poor performance and mismanagement of the Company, this letter is to provide you and your client notice of termination of his employment with the Company, effective as of April 30, 2021.
>
> ***
>
> . . . The $20,000.00 that Dean deposited into the Company's bank account will also be returned. Despite your representations that this evidenced payment for Dean's interest in the Company, this payment was improperly deposited (without [Gleckler]'s knowledge and consent) in the Company's operating account. The payment should not have been paid to the Company as the units were not owned by the Company but were actually held by MerriG, LLC, not by the Company or Merri Gleckler, individually. . .

(4/20/21 Letter, Ex. Z).

<u>**RESPONSE**</u>: **Plaintiff disputes and objects to paragraph 64 and moves to strike paragraph 64 and Dx Z as lacking foundation and hearsay. Defendant has made no attempt to lay a foundation for the document, it is not Bates stamped, and does not appear to have been produced in discovery.**

65. Gleckler and TMG incurred thousands of dollars' worth of attorneys' fees in negotiating with Dussias and his counsel. (Dussias Dep., Ex. D, 137:1-18).

**RESPONSE: Plaintiff disputes and objects to paragraph 65 and moves to strike it for lack of evidentiary support. The cited language from Plaintiff's deposition says only that Gleckler *told* Dussias that she incurred thousands of dollars of attorneys' fees. Dx D, 137:1-18. It does not say anything about TMG's attorneys fees, as opposed to Gleckler's, and Dussias did not concede Gleckler or TMG actually spent that amount or state that he had seen any proof of it. *Id.***

66. Despite Gleckler and Dussias exchanging at least four documents (term sheets and draft amended operating agreements) that were entitled "Amended" or "Restated" Operating Agreement, Dussias now claims that the TMG Operating Agreement is no longer in effect because Gleckler allegedly told him that was the case. (Dussias Dep., Ex. D, 168:23-171:4, 271:3-10).

**RESPONSE: Plaintiff disputes and objects to paragraph 66 in that Defendants have not provided evidence that four such documents were exchanged as discussed above with respect to each of the documents. Plaintiff admits that Gleckler told him that the Gleckler-Reingold Agreement was no longer in effect once Gleckler resolved her litigation with Reingold. Ex. 1 ¶ 16.**

67. TMG produced copies of its tax returns for 2019, 2020, and 2021. None of those tax returns list Dussias as a partner, member, or owner of TMG. (2019, 2020, and 2021 Schedule K-1 Allocation Summary, Group Ex. AA). At no time did Dussias ever receive a Schedule K-1 (Form 1065), entitled "Partner's Share of Income, Deductions, Credits, etc.," from TMG. (*Id.*).

**RESPONSE: Plaintiff admits that he never received a K-1 from TMG.**

68. Dussias filled out a document in April 2020 to be sent to the federal government

on behalf of TMG entitled "Paycheck Protection Program Borrower Application Form." (Dussias Dep., Ex. D, 343:7-344:8; JPM002917-JPM002020, Ex. BB). On that document, Dussias wrote that Gleckler was the 100% owner of TMG. (*Id.*). Dussias testified that he was trying to be accurate in preparing this document, and he does not recall a reason he did not list himself as an owner. (Dussias Dep., Ex. D, 344:2-8).

**RESPONSE**: **Plaintiff admits to preparing the Dx BB in April 2020, but disputes the remainder of paragraph 68. He testified that listing Gleckler was an "accommodation to the MIPA." Dx D, 343:24-344:1.**

**F. Dussias' Inconsistent Testimony Regarding An Alleged Oral Agreement**

69. Initially, Dussias testified that he accepted an offer from Gleckler to become a member of TMG in the summer of 2019. (Dussias Dep., Ex. D, 49:12-22, 52:1).

**RESPONSE**: **Plaintiff disputes and objects to paragraph 69. In the cited testimony, Plaintiff is discussing a specific paragraph of the complaint stating that Dussias accepted an offer to join Gleckler as a co-owner and partner in TMG. Dx D, 47:21-48:21.**

70. Other than that he would allegedly become a part-owner of TMG, Dussias could not recall any other terms of the alleged oral agreement reached in the summer of 2019. (Dussias Dep., Ex. D, 60:13-17, 77:12-19).

**RESPONSE**: **Plaintiff disputes and objects to paragraph 70. Dussias testified repeatedly that the terms of his ownership were not finalized in the summer of 2019 and did not become finalized until early June 2020. *E.g.*, Dx D 76:10-15, 77:7-14, 87:17-88:9, 89:20-90:8..**

71. Dussias testified that the parties discussed his ownership interest being 20 percent and growing to 30 percent, and then in subsequent discussions that his ownership interest

would be 30 percent and could "flex" down to 20 percent. (Dussias Dep., Ex. D, 93:21-94:17, 101:8-21, 106:24-107:23, 113:21-117:4, 118:20-121:13). Dussias testified that he and Gleckler "had discussions, and we hadn't finalized them" about his ownership percentage potentially "flexing." (*Id.*, 94:23-95:9, 103:19-104:14).

**RESPONSE**: **Plaintiff admits that, early in their negotiations, he and Gleckler discussed the possibility of his interest "flexing" up from 20% or down from 30% based on whether certain financial goals were met and the parties did not include this term when they finalized the terms of his membership in June 2020 and implemented them July 1, 2020. Ex. 1 ¶ 11-12.**

72. Despite testifying that an oral agreement was reached in 2019, Dussias then testified that he and Gleckler "finalized that agreement in June of 2020," but that he believed he was already an owner in the summer of 2019 based on his earlier discussions with Gleckler (Dussias Dep., Ex. D, 57:3-19, 58:17-59:11).

**RESPONSE**: **Plaintiff disputes and objects to paragraph 72. Plaintiff testified repeatedly that Gleckler offered him ownership in TMG in summer 2019; he joined TMG in Summer 2019; and terms of his ownership were finalized in the first two weeks of June 2020 and implemented on July 1, 2020. *E.g.* Dx D, 51:16-18, 56:24-57:5, 61:11-62:15; 63:16-65:18. Plaintiff admits that he and Gleckler considered him to be an owner and agreed that he was an owner from the moment he started working with TMG in August 2019.**

73. Dussias then testified that the alleged agreement was finalized on July 1, 2020. (Dussias Dep., Ex. D, 61:11-63:2). He admitted that the oral agreement he claims was "finalized" in 2020 had different terms than the alleged oral agreement reached in 2019. (*Id.*,

99:5-10).

<u>RESPONSE</u>: **Plaintiff admits that he testified that his agreement with TMG and Gleckler was finalized in the first two weeks of June 2020 and implemented July 1, 2020, but disputes that he "admitted" or testified that the July 1, 2020 terms were different than a previously-reached agreement. Plaintiff testified that the terms were negotiated between August 2019 and June 2020; the only change over that time that was addressed in his deposition was the potential for his ownership interest to go from 30% to 20% if TMG did not meet certain financial goals. *E.g.* Dx D, 51:16-18, 56:24-57:5, 61:11-62:15; 63:16-65:18; Ex. 1 ¶ 11. Plaintiff admits that the terms that were finalized in June and July of 2020 did not include the "flex" provision that was initially discussed. Dx D, 94:6-95:9.**

74. Dussias was asked: "Are you telling me in early June of 2020, despite all those drafts, you guys orally just said we're done and all these terms are finalized in my mind, in both of our minds that first weekend of June of 2020?" and he responded: "We finalized our ownership then." (Dussias Dep., Ex. D, 66:14-24).

<u>RESPONSE</u>: **Plaintiff admits paragraph 74.**

75. Dussias was asked why "were there so many drafts back and forth . . . if you never agreed that the parties, you and Merri, would put something in writing and both of you would sign it?" and he responded: "I don't know why." (Dussias Dep., Ex. D, 136:15-24). He was also asked what he thought was the purpose of Gleckler's attorneys sending him a term sheet, and he responded: "I don't know." (*Id.*, 220:8-16, 221:17-21).

<u>RESPONSE</u>: **Plaintiff disputes and objects to the allegation that he testified as to the "purpose of Gleckler's attorneys sending him a term sheet." In the cited testimony, he**

**was questioned about one specific term sheet (deposition exhibit 9) and testified "I don't know what was in Merri or her lawyer's heads." Dx D, 221:4-16. Plaintiff admits the remainder of paragraph 75.**

76. Dussias then testified that he "participated in the exchange of drafts of documents" for the purpose "to put in place an operating agreement for the company." (Dussias Dep., Ex. D, 145:12-146:1).

**RESPONSE: Plaintiff admits paragraph 76.**

77. Dussias testified that, just after the parties exchanged competing term sheets in June 2020, they "agreed that we would stop this" and "be done," and at that point they reached a final oral agreement. (Dussias Dep., Ex. D, 192:18-193:5, 198:6-12, 241:14-20, 351:20-352:9). Dussias was asked the following question and answered with the following testimony: "Q. What you're telling me is sometime before midnight of Sunday June 7th, you reached some oral agreement with Merri as to your ownership interest in TMG? A. I believe so." (Dussias Dep., Ex. D, 235:23- 236:3). Dussias claimed that this oral agreement was reached during "at least two" and "less than 11" conversations with Gleckler in May and June 2020. (*Id.*, 214:2-11).

**RESPONSE: Plaintiff disputes that the cited testimony references reaching an oral agreement "just after the parties exchanged competing term sheets" or makes any mention of "competing term sheets." Plaintiff also disputes that he testified that his agreement with TMG and Gleckler was reached "during 'at least two' and 'less than 11' conversations with Gleckler in May and June 2020." Plaintiff was questioned at length about conversations during a specific period of time and both the finalized terms and the term sheets that were exchanged. Dx D, 190:3-197:18, 208:1-214:11. He testified that,**

**during that time period, those topics were covered in two longer conversations (*id.* 196:4-10) and possibly some additional shorter conversations (*id.* 211:7-24). He stated that he could not remember exactly how many conversations were responsive to the questioning. *Id.* 190:3-19. When asked to estimate the total number of conversations over that specific time period that his ownership was discussed, he estimated that it was more than two and possibly as many as 11. *Id.* 212:1-214:11.**

78. Dussias testified that the only written document outlining the supposed oral agreement is "all the places that the ownership percentage existed in terms of the payroll system, the accounting system of the company, and I think there are other places." (Dussias Dep., Ex D, 107:24-108:17, 145:7-11, 241:21-242:17). He was asked if he could identify the documents that could be looked at to determine the specific terms of the alleged agreement, and he responded: "Not off the top of my head." (*Id.*, 183:15-184:8).

**RESPONSE**: **Plaintiff disputes that he testified that the "only written document outlining the supposed oral agreement" was as stated in the portion of the transcript quoted in paragraph 78. He was not asked about the "only written document outlining the supposed oral agreement" and, regardless, he testified that "I think there are other places. I don't recall at this time." Dx D, 108:13-17. He did not purport to exclude as written records of his ownership, for example, the dozens of instances when Gleckler told third parties he was an owner or partner. Ex. 1 ¶ 25-35. He also identified "books and records of the company" and "drafts of the documents that went back and forth." Dx D, 145:7-11. Plaintiff admits the remainder of paragraph 78.**

79. Dussias went to Brown University, received an MBA from Northwestern University, and testified that he has substantial experience in drafting and reading business

contracts. (Dussias Dep., Ex. D, 139:15-140:6, 174:17-175:3, 270:6-7).

**RESPONSE**: **Plaintiff admits he went to Brown University and received an MBA from Northwestern University. Plaintiff disputes and objects to the remainder of paragraph 79 and objects to it as unsupported by the cited evidence. Plaintiff testified "I have a lot of experience doing contracts," but did not testify that "he has substantial experience in drafting and reading business contracts." Dx D 270:6-7.**

Dated: March 3, 2025

Respectfully submitted,

**DEAN H. DUSSIAS**

By: */s/ Matthew M. Showel*
One of his Attorneys

Mathew M. Showel, Esq. (ARDC No. 6300861)
GOLAN CHRISTIE TAGLIA LLP
70 W. Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300
mmshowel@gct.law