**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| DEAN H. DUSSIAS,<br><br>*Plaintiff*,<br><br>v.<br><br>MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,<br><br>*Defendants*. | Case No. 1:21-cv-05709<br><br>Judge April M. Perry<br><br>Magistrate Judge Beth W. Jantz |

**DEFENDANTS MERRI GLECKLER AND TMG KREATIONS, LLC'S LOCAL RULE 56.1(c)(2) RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

Defendants, Merri Gleckler ("Gleckler") and TMG Kreations, LLC ("TMG"), by their undersigned counsel, pursuant to Local Rule 56.1(c)(2), submit their response to Plaintiff, Dean H. Dussias's ("Dussias") Local Rule 56.1(b)(3) statement of additional facts ("SOAF").

**a. The Gleckler-Reingold Agreement**

1. Defendant Merri Gleckler and an individual named Cedric Reingold organized Defendant, TMG Kreations, LLC d/b/a Kashwere ("TMG"), under Delaware law in 2009 for the purpose of taking an ownership position in an existing business called Kashwere. Exhibit 1, Declaration of Dean Dussias, at ¶ 2; Dkt. 28 ¶ 11 (stating that TMG is organized under DE law).

**RESPONSE:** Admitted.

2. Reingold and Gleckler created an operating agreement in 2009 naming Gleckler and Reingold each as a manager and 50% member stating that TMG was member-managed (the "Gleckler-Reingold Agreement" or "GRA"). Ex. A to Defendants' Rule 56.1(a)(2) Statement of Material Facts, at pp. 8-10 (identifying members), § 4.1 (stating that it is member-managed).

**RESPONSE:** Defendants admit that they entered into the TMG operating agreement (the "Operating Agreement") in 2009, and that Exhibit B to the Operating Agreement named both Gleckler and Reingold as a Manager, Exhibit A to the Operating Agreement named both Gleckler and Reingold as Members owning a 50% Percentage Interest, and that the Operating Agreement states that it is member-managed. Defendants object to Plaintiff's statement that Gleckler and Reingold "created" the Operating Agreement, as there is no evidence cited that Gleckler and/or Reingold drafted the Operating Agreement.

**b. Gleckler and Reingold Terminate Their Relationship**.

3. In 2018, Gleckler filed a lawsuit against Reingold alleging various breaches of the GRA, which was [redacted]. Dx B. at p. 1.

**RESPONSE:** Defendants admit that a lawsuit was filed but dispute Plaintiff's description of the lawsuit, as the lawsuit was filed by Gleckler and MerriG, LLC against Reingold and TMG. (Defendants' Statement of Facts ("SOF") at Ex. B, p. 2). Defendants admit that the lawsuit was [redacted].

4. In the [redacted]

**RESPONSE:** Admitted.

5. Gleckler agreed [redacted]

**RESPONSE:** Defendants admit that the [redacted] (Defendants' SOF, at Ex. B, § 4(c)).

c. **Dussias and Gleckler Agree that Dussias Will Become a Member of TMG**.

6. In the Summer of 2019, while she was suing Reingold, Gleckler and I initiated discussions about Dussias joining TMG as a partner. Dussias informed her that he would only join TMG as a member. Ex. 1 ¶ 4.

**RESPONSE:** Defendants admit that in the summer of 2019, during the pendency of *MerriG, LLC and Merri Gleckler v. Cedric Reingold and TMG Kreations, LLC*, C.A. No. 2018-0772-MTZ, Gleckler and Dussias began discussing terms regarding Dussias potentially acquiring a membership interest in TMG. Defendants dispute that Dussias informed her that he would only join TMG as a member, as Dussias cites no competent evidence regarding any such conversation.

Defendants object to the portion of the statement that "Dussias informed her that he would only join TMG as a member," as this is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants further object to this portion of the statement pursuant to the "sham affidavit" rule, as Dussias was questioned at length during his

deposition regarding the conversations that occurred during the Summer of 2019, and did not testify that he informed Gleckler that he would "only join TMG as a member." (Defendants' SOF, at Ex. D, Dussias Dep., 47:21-56:4).[1] Defendants further object to the materiality of this portion of the statement, as Dussias' purported statement is not relevant to whether Dussias is a member of TMG under Delaware law, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

7. On July 4, 2019, Gleckler sent Dussias [redacted]. Ex. 1 ¶ 5; Exhibit 2. [redacted] [*sic*]. Ex. 2 at TMG_00167072, ¶ 1. They state further that [redacted] Ex. 1 ¶ 5.

**RESPONSE:** Admitted that Gleckler sent the email attached as Exhibit 2 to Plaintiff's SOAF, but disputed as to Plaintiffs' characterization of that email because: the email states it is "notes of our conversations," not "about his membership interest;" and Gleckler testified that she did not write the attachment to the email, but that it was a proposal prepared by Dussias that she may have re-typed. (Defendants' SOF, at Ex. E, Gleckler Dep., 137:4-140:11).

[1] Defendants' SOF attaches the transcript of Dussias' deposition. Defendants also ordered a video of Dussias' deposition, and will provide it to the Court if desired at the Court's request.

Defendants object to the materiality of the statement in paragraph 7 regarding a "side agreement," as Dussias testified in his deposition that no "side agreement" was ever created or prepared. (Defendants' SOF, at Ex. D, Dussias Dep., 122:21-123:6).

8. Dussias began working with TMG full time at the end of July 2019. He accepted a lower rate of compensation than he would have otherwise accepted in reliance on Gleckler's promise that he would officially become a member as soon as practicable. Ex. 1 ¶ 6. For example, earlier that year, he had been paid more than [redacted] per hour, plus bonus and revenue sharing for a consulting engagement. *Id.* Dussias knew that TMG could not afford his typical compensation. *Id.* It was also considerably lower than [redacted], which Dussias was willing to accept because he was receiving a membership share. *Id.*

**RESPONSE:** Defendants dispute that Dussias began to work full time for TMG in July 2019, as he was first hired as TMG's President in October 2019. (*See* citations to the record at Defendants' SOF, ¶¶ 15-16). Defendants dispute that Gleckler made a "promise that he would officially become a member as soon as is practicable," as Dussias does cite to any evidence or statement of Gleckler making such a promise or any document containing such a promise, and Gleckler testified repeatedly that she and Dussias never reached an agreement and that Dussias was aware that any agreement was contingent on Dussias signing a formal, written contract. (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14).

Defendants also object to the materiality of the statements in paragraph 8 because: whether Gleckler made a "promise that he would officially become a member as soon as is practicable" is not relevant to whether Dussias is a member of TMG under the Operating Agreement and Delaware law, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent

on a formal, written and signed contract; and Dussias's statements that his rate of pay was higher in prior engagements is not relevant to any element of his claims. Defendants also object to the portion of the statements regarding his rate of pay as inadmissible for lack of foundation, as there is no evidence in the record of any compensation that Dussias made at any other engagement, and the cited evidence does not state what those engagements were, and does not attach any documents evidencing those engagements or his rates of pay. *See SMS Fin. Recovery Services, LLC v. Canelo*, 21-CV-04000, 2023 WL 2161660, at *4 (N.D. Ill. Feb. 22, 2023) ("[A] nonmoving party at the summary judgment stage cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence."). Defendants also object to these statements as inadmissible pursuant to Rule 37(c)(1) because Dussias did not disclose any information regarding prior engagements during discovery, despite Defendants' requesting all information and documents relevant to his claims and his claimed damages.

9. On September 20, 2019, Gleckler [redacted] Ex. 1 ¶ 7; Exhibit 3.

**RESPONSE:** Admitted.

10. TMG made the [redacted]. Ex. 1 ¶ 8.

**RESPONSE:** Admitted.

11. On February 23, 2020, Dussias sent Gleckler a "Summary of principles/terms between Merri Gleckler (MG) and Dean Dussias (DHD)." Dx G. The summary provided "MG equity at 70%; DHD equity at 30%... Profit available for distribution – 70/30% to MG and DHD, respectively." *Id.* p. 2.

**RESPONSE:** Defendants admit that Dussias sent the email that is attached to Defendants' SOF as Exhibit G and that Plaintiff selectively quotes that email, which states, in relevant part:

- New Operating Agreement to be created for Kashwere that reflects the trust, commitment and partnership between MG and DHD. . . .

- MG equity at 70%; DHD equity at 30%, with the following exceptions – (a) if revenue of Kashwere less than $5MM, then DHD profit distributions to reduce to 20% - at the current time, profit distributions, if any, to be made at the 20% level, with any true-up if necessary to be paid no later than January 31st of 2021 and (b) if Kashwere's equity is sold for less than $5MM, then DHD to receive 20% of the equity value from the total consideration paid to Kashwere. Rationale for 30% start: (1) tax considerations so there is no future receipt/award of equity and (2) if any future equity event DHD starting at an assumed 30%, not 20%.

***

- MG and DHD to collaborate on an annual budget; MG to have final, reasonable approval of the budget. MG to draw $25,000/month; DHD to draw $20,000/month ($300,000/year and $240,000/year respectively); partners may defer draws to meet budget considerations. MG to have a car allowance not to exceed $_____ and DHD to have a car allowance not to exceed ______. MG and DHD to not exceed $_____/month each in incidental expenses. Profit available for distribution – 70/30% to MG and DHD, respectively; no other distributions/accruals/benefits to be paid to or accrue to the benefit of MG or DHD. Amounts subject to change only by agreement of both partners. MG to decide amount and timing of distributions consistent with budget and value creation; LLC agreement to contemplate tax distributions as a minimum.

- All other Operating Agreement content to be drafted by MG and Griesing Law for comment by DHD. Will trust terms to be reciprocal, protective of minority unit holder rights, enabling for MG to make business decisions in context of building value in Kashwere.

(SOF, at Ex. G).

12. In May 2020, Gleckler forwarded Dussias a term sheet created by an attorney. Dx H. Dussias pointed out to Gleckler that the term sheet included certain terms Gleckler and Dussias had never discussed, including a vesting period and employment agreement. Ex. 1 ¶ 9. The term sheet indicated to Dussias that the attorney was not informed about the parties' negotiations. *Id.* Gleckler agreed with Dussias that vesting and an employment agreement were not part of their agreement and that Dussias' membership was immediate. *Id.*

**<u>RESPONSE</u>:** Defendants admit that Gleckler sent the email attached to Defendants' SOF as Exhibit H that attached the Gleckler Term Sheet. Defendants dispute the statement that "Gleckler agreed with Dussias that vesting and an employment agreement were not part of their agreement and that Dussias' membership was immediate," as Gleckler repeatedly testified that the parties did not reach an agreement, that Dussias was aware of the need for a signed writing to become a member, and that she was relying on her lawyers to draft all documents relating to the proposed transaction, and all of those documents contained a vesting period. (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14; *see* citations to the record at Defendants' SOF ¶¶ 24, 42, 58).

Defendants object to the admissibility of the portion of the statement that "Dussias pointed out to Gleckler that the term sheet included certain terms Gleckler and Dussias had never discussed, including a vesting period and employment agreement," as this is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants object to the admissibility of the portion of the statement that "Gleckler agreed with Dussias that vesting and an employment agreement were not part of their agreement and that Dussias' membership was immediate" for lack of foundation, as Dussias fails to point to any specific statement made by Gleckler or even the date, time, medium, or location that any such statement was made. Defendants further object to the materiality of the statements in paragraph 12 regarding the parties' discussions regarding a vesting schedule and employment agreement, as the parties' subjective intent is not relevant to whether an agreement was formed, as assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent." *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926,

at *12 (Del. Ch. Sept. 30, 2014); *see Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir.1997) (confirming that witness testimony may be rejected on summary judgment if it is contradicted by the documentary evidence or if it is internally inconsistent or implausible, and that testimony can and should be rejected without a trial if no reasonable person would believe it).

13. On June 7, 2020, Dussias sent Gleckler a term sheet that provided that Gleckler and Dussias would own 70% and 30% interests in TMG, respectively; Dussias would contribute capital of $20,000; and both Gleckler and Dussias would have employment agreements. Dx L at p. TMG_00187354-355. $20,000 was the cost of [redacted]. Ex. 1 ¶ 10.

**RESPONSE:** Defendants admit that Dussias sent the Dussias Term Sheet contained in Defendants' SOF Exhibit L that Plaintiff selectively quotes from, and admits that the Dussias Term Sheets provides proposed terms regarding the potential acquisition by Dussias of a membership interest in TMG, conditioned on the execution of a final, written agreement.

**d. The Parties Finalize and Implement the Essential Terms of Dussias' Membership and Agree that Negotiations Are Concluded.**

14. Between June 6 and 15, 2020, Gleckler and Dussias finalized the terms of Dussias' membership and concluded the negotiations. Ex. 1 ¶ 11. These discussions occurred over the course of several phone calls (both to Gleckler's cell and office numbers), adding up to multiple hours. *Id.*

**RESPONSE:** Disputed, as Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively after June 15, 2020. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the statements in paragraph 14 on the grounds that Dussias' statements are out-of-court statement offered by Dussias for the truth of the matter asserted, and are therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants further object to the admissibility of the statements in paragraph 14 for lack of foundation, as Dussias' statements are conclusory, fail to point to any specific statement made by Gleckler, fail to provide any evidence that the calls actually took place, such as call logs, phone records, or screenshots, and are contradicted by the documentary evidence showing continuing negotiations. *See SMS Fin. Recovery Services, LLC v. Canelo*, 21-CV-04000, 2023 WL 2161660, at *4 (N.D. Ill. Feb. 22, 2023) ("[A] nonmoving party at the summary judgment stage cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence."). Defendants further object to the statements in paragraph 14 pursuant to the "sham affidavit" rule, as Dussias testified during his deposition that he had between 2 and 11 phone conversations with Gleckler between May 7 and June 7, 2020, during which an oral agreement was reached. (Defendants' SOF, at Ex. D, Dussias Dep., 211:7-214:11). Dussias now changes his story in his Declaration, claiming that the calls occurred "between June 6 and 15, 2020." Defendants further object to the materiality of the statements in paragraph 14, as the parties' subjective intent is not relevant to whether an agreement was formed, as assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent," and the record contains ample documentary evidence establishing continuing negotiations beyond June 15, 2020. *See Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014).

15. The terms were finalized as follows: Dussias and Gleckler would own 30% and 70% of TMG, respectively, as they had discussed since the previous July; they would take a draw

against profits beginning July 1, 2020, in proportion to their membership interest and not receive any salary, bonus, or other compensation beyond the draw; they would share profits and losses on a *pro rata* basis; Gleckler's draw would increase from [redacted] per month to [redacted] per month; Dussias' compensation would increase from [redacted] per month to [redacted] per month; Dussias' compensation would also change from W-2 to an owner's draw; Gleckler and Dussias would distribute profits at the end of each year such that, after accounting for the draw, Gleckler would receive 70% and Dussias 30%; and Dussias would receive owners' perquisites, including full payment of [redacted] reimbursement for [redacted], payment of a [redacted], inclusion in the [redacted], and a split of the [redacted] Ex. 1 ¶ 12. Finally, Dussias would make a $20,000 capital contribution. *Id.*

**RESPONSE:** Defendants dispute that the parties "finalized" any terms or agreement, as Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively after June 15, 2020, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the statements in paragraph 15 on the grounds that Dussias' statements are out-of-court statement offered by Dussias for the truth of the matter asserted, and are therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants further object to the admissibility of the statements in paragraph 15 for lack of foundation, as Dussias' statements are conclusory, fail to point to any

specific statement made by Gleckler, fail to provide any evidence that the calls in which the terms purportedly were "finalized" actually took place, such as call logs, phone records, or screenshots, and are contradicted by the documentary evidence showing continuing negotiations. *See SMS Fin. Recovery Services, LLC v. Canelo*, 21-CV-04000, 2023 WL 2161660, at *4 (N.D. Ill. Feb. 22, 2023) ("[A] nonmoving party at the summary judgment stage cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence."). Defendants further object to the statements in paragraph 15 pursuant to the "sham affidavit" rule, as Dussias was asked repeatedly during his deposition to list the terms of his purported agreement with Gleckler, and while he listed some apparent terms, he did not list nearly all of the terms he now recites in his declaration. (Defendants' SOF, at Ex. D, Dussias Dep., 239:18-240:17). Defendants further object to the materiality of the statements in paragraph 15, as the parties' subjective intent is not relevant to whether an agreement was formed, as assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent," and the record contains ample documentary evidence establishing continuing negotiations beyond June 15, 2020. *See Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014).

16. On June 7, 2020, after one of these calls, Dussias texted Gleckler: [redacted] Exhibit 4.

**RESPONSE:** Defendants admit that the text messages in Exhibit 4 to the SOAF were sent. Defendants dispute Plaintiff's characterization that the text message occurred "after one of these calls," referring to the calls in SOAF paragraph 15, as there is no evidence cited as to what "call"

is being referred to, nor is there any evidence of any of the calls in paragraph 15 taking place (*see* Response to SOAF ¶ 15).

Defendants object to the text message cited in paragraph 16 on the grounds that Dussias' text messages are out-of-court statements offered by Dussias for the truth of the matter asserted, and are therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants further object to the materiality of the statements in paragraph 16, as the parties' subjective intent is not relevant to whether an agreement was formed, as assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent." *See Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014).

17. Gleckler also requested during these negotiations that Dussias share in profits beginning on July 1, 2020, rather than August 2019 as the parties had originally contemplated. *Id.* ¶ 15. This was a give-up of more than [redacted] by Dussias. *Id.* Dussias agreed to this term on the condition that they would agree that the negotiations were concluded and he would start receiving his draw, profit participation, and other perquisites of membership, and be entered into TMG's accounting and payroll as a member, beginning on July 1, 2020. *Id.* Gleckler agreed to these terms. *Id.* Dussias would not have continued with TMG had they not reached a definitive agreement at this time. *Id.*

**RESPONSE:** Defendants dispute that any negotiations were ever "concluded" or that there was ever an agreement, as Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively after June 15, 2020, the documents establish that any agreement was

contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the statements in paragraph 17 on the grounds that Dussias' statements are out-of-court statement offered by Dussias for the truth of the matter asserted, and are therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants further object to the admissibility of the statements in paragraph 17 for lack of foundation, as Dussias' statements are conclusory, fail to point to any specific statements made by Gleckler, fail to provide any evidence that the calls in which the negotiations purportedly were "concluded" actually took place, such as call logs, phone records, or screenshots, and are contradicted by the documentary evidence showing continuing negotiations. *See SMS Fin. Recovery Services, LLC v. Canelo*, 21-CV-04000, 2023 WL 2161660, at *4 (N.D. Ill. Feb. 22, 2023) ("[A] nonmoving party at the summary judgment stage cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence."). Defendants further object to the statements in paragraph 17 pursuant to the "sham affidavit" rule, as Dussias was asked during his deposition to describe the conversations in which he claims an agreement was reached, and he did not testify as to any "requests" made by Gleckler or that he stated that he would only remain with TMG if the negotiations were concluded. (Defendants' SOF, at Ex. D, Dussias Dep., 193:6-199:23). Defendants further object to the materiality of the statements in paragraph 17, as the parties' subjective intent is not relevant to whether an agreement was formed, as assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent." *See*

*Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014).

18. Gleckler stated that she did not want to incur additional attorney fees getting an agreement drawn up to memorialize these terms. *Id.* ¶ 16. She asked Dussias to prepare an operating agreement because she said that TMG had no operating agreement. *Id.* Specifically, as to the GRA, she told Dussias it was "gone" and not applicable to Dussias' membership in TMG. *Id.* She had also stated on prior occasions that she believed the GRA was strictly between Reingold and her and she did not consider it to govern TMG. *Id.*

**RESPONSE:** Defendants dispute that Gleckler stated she did not want to incur additional fees, as the evidence demonstrates that Gleckler's attorneys prepared numerous draft agreements after June 2020. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76). Defendants dispute that Gleckler ever stated that TMG had no operating agreement or that it was "gone" or not in effect, as Gleckler testified that she informed Dussias that the Operating Agreement required a signed writing to admit Dussias as a new member (Defendants' SOF, at Ex. E, Gleckler Dep., 150: 12-14, 161:22-162:2, 165:4-23), and Gleckler presented numerous documents to Dussias entitled "amended" or "restated" operating agreement of TMG. (*See* citations to the record at Defendants' SOF ¶¶ 21, 41, 55, 57, 66).

Defendants object to the admissibility of the statements in paragraph 18 for lack of foundation, as Dussias' statements are conclusory, fail to point to any specific statements made by Gleckler, including when, where, or by what medium those statements were made, and are contradicted by the documentary evidence in which Gleckler presented Dussias with documents entitled "amended" or "restated" operating agreement of TMG. *See SMS Fin. Recovery Services, LLC v. Canelo*, 21-CV-04000, 2023 WL 2161660, at *4 (N.D. Ill. Feb. 22, 2023) ("[A] nonmoving

party at the summary judgment stage cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence."). Defendants further object to the materiality of the statements in paragraph 18, as under Delaware law and the terms of the Operating Agreement, the Operating Agreement can be amended only by a written document signed by the members, not by vague statements to a third-party. (*See* citations to the record at Defendants' SOF ¶ 8).

19. Gleckler and Dussias did not feel it was urgent to create an operating agreement because both parties wanted to begin the work of updating TMG's operational infrastructure (e.g., accounting systems, website, shipping) and Dussias did not expect Gleckler to renege on the agreement and did not see the need for a dispute resolution mechanism because Gleckler controlled 70% of the company. *Id.* ¶ 17.

**RESPONSE:** Defendants dispute the statements in paragraph 19 because the documentary evidence establishes that Gleckler repeatedly told Dussias that an amended operating agreement was needed. (*See* Exhibit 3 to SOAF; *see* January 24, 2020 text message from Gleckler, stating "Send me what you have regarding the operating agreement as [attorney Fran Griesing] keeps telling me I have to take care of all this. You said you have something prepared so please send and we can discuss further when u r in town. Otherwise Fran will start preparing something for you and I to discuss so we get the ball rolling," attached as Exhibit 7). Defendants further dispute the statements in paragraph 19 that there was ever an "agreement" reached, as Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous

counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the admissibility of the statements in paragraph 19 for lack of foundation, as Dussias' statements are conclusory, fail to point to any specific statements made by Gleckler, including when, where, or by what medium those statements were made. Defendants further object to the materiality of the statements in paragraph 19, as the parties' subjective intent regarding the creation of a written operating agreement is not relevant to whether Dussias is a member of TMG under the Operating Agreement or Delaware law, or whether the parties reached a meeting of the minds on the material terms of an agreement,

20. During this period, Gleckler also suggested and Dussias accepted that they split a [redacted]., according to their *pro rata* membership interest. *Id.* ¶ 18. Dussias suggested that the payment should be included with the other changes in the payroll beginning July 1 for continuity. *Id.* Gleckler insisted that it be included in the June 15 payroll [redacted]. *Id.* [redacted] Exhibit 5 at TMG_00474473-74. Gleckler's portion is calculated by [redacted]. Ex. 1 ¶ 18.

**<u>RESPONSE:</u>** Defendants dispute the statements in paragraph 20 because Dussias had no "membership interest," as Dussias did not sign a written document admitting him as a member in TMG nor did he receive the unanimous written consent of the members of TMG (*see* citations to the record at Defendants' SOF ¶¶ 60-61), Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-

162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76). Defendants further dispute the statements in paragraph 20 as the cited payroll records make no mention of any "royalty payment."

Defendants object to the admissibility of the statements in paragraph 20 for lack of foundation, as Dussias' statements are conclusory, fail to point to any specific statements made by Gleckler, including when, where, or by what medium those statements were made. Defendants further object to the materiality of the statements in paragraph 20, as the conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59).

21. On or about June 14, 2020, Dussias confirmed the following with Gleckler over the phone: (i) he would make a $20,000 capital contribution prior to July 1, 2020, that they had discussed in the previous days, (ii) the [redacted] would be reflected on the next day's payroll, and (iii) that the remaining changes would be implemented on July 1. *Id.* ¶ 19. Dussias told her he would add a note to the transfer of the capital contribution so that they could clearly identify it in the Chase account. *Id.*

**<u>RESPONSE:</u>** Defendants dispute that Dussias' deposit was a "capital contribution" because Dussias was not a member of TMG because he did not sign a written document admitting

him as a member in TMG nor did he receive the unanimous written consent of the members of TMG (*see* citations to the record at Defendants' SOF ¶¶ 60-61), Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76). Defendants dispute Dussias' implication that Gleckler was aware of his deposit, as Defendants deny having knowledge of the deposit. (*See* citations to the record at Defendants' SOF ¶ 52; TMG' Answers to Supplemental Interrogatories, attached as Exhibit 1, ¶ 1).

Defendants object to the admissibility of the statements in paragraph 21 for lack of foundation, as Dussias' statements are conclusory, fail to point to any specific statements made by Gleckler, including when, where, or by what medium those statements were made. Defendants further object to the portion of the statement that "Dussias told Gleckler that he would add a note . . ." as this is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants further object to the materiality of the statements in paragraph 21, as the conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61).

22. Shortly after the June 14 conversation, Dussias caused changes to be made to both his and Gleckler's accounts with TMG's payroll administrator, HowardSimon, Inc. ("HSimon"), effective July 1. *Id.* ¶ 20. These included: (i) increasing Gleckler's [redacted] per pay period (from [redacted] per month); (ii) adding her status as [redacted]; (iii) setting her [redacted] (iv) changing his compensation from [redacted]; (v) setting his status as [redacted]; (vi) setting his [redacted] and (vii) increasing his compensation from [redacted] per pay period (from [redacted] per month). *Id.*; Exhibit 6. Additionally, a new employee number had to be created to change Dussias from [redacted]. Ex. 1 ¶ 20. Dussias discussed these changes with Gleckler. *Id.*

**<u>RESPONSE:</u>** Defendants admit that Dussias accessed TMG's payroll system and made the changes that Exhibit 6 to the SOAF and Exhibit M to the SOF reflect were made by the username "dussias." Defendants dispute that Dussias made the changes "shortly after" June 14 or were "effective July 1," as Exhibit 6 to the SOAF and Exhibit M to the SOF reflect that those changes were made by Dussias on July 5, 2020.

Defendants object to the portion of the statement that "Dussias discussed these changes with Gleckler," as this is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce his own statements. Defendants further object to the admissibility of this portion of the statement for lack of foundation, as Dussias' statements are conclusory, fail to point to any specific statements made by Gleckler or Dussias, including when, where, or by what medium those statements were made.

23. These changes were effective as of July 1 and reflected on the July 15, 2020, payroll and in the subsequent bi-weekly payroll reports emailed directly to Gleckler and Dussias. *Id.* ¶ 21;

Dx CC at TMG_00590527-28 (showing [redacted] in pay from 6/30/20 to 7/15/20); Exhibit 7 at TMG_00590542-43 (same); Exhibit 8 at TMG_00470617, 470621 (same); Dx E, 190:23-192:4. TMG paid payroll taxes consistent with [redacted] Ex. 1 ¶ 21.

**RESPONSE:** Defendants dispute the statements in paragraph 23, as the payroll document cited by Dussias only reflects the change made by Dussias to change his method of payment to a "draw" in the amount of $7,500. Defendants dispute  the changes he made were "effective July 1," as Exhibit 6 to the SOAF and Exhibit M to the SOF reflect that those changes were made by Dussias on July 5, 2020. Defendants further dispute that Dussias' payment of a draw afforded him "membership status," as Gleckler testified that any actions she took with respect to Dussias were in "anticipation that Dean was going to be my partner, but he never. And a member of TMG, and he never was." (Defendants' SOF, at Ex. E, Gleckler Dep., 213:13-214-9).

Defendants object to the admissibility of the portion of the statement that "TMG paid payroll taxes consistent with Dussias' [redacted]" for lack of foundation, as Dussias' statements are conclusory and fail to attach or cite to any documents regarding TMG's purported payroll taxes. Defendants further object to the materiality of the statements in paragraph 23, as the conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

24. Gleckler regularly reviewed the HSimon payroll system to confirm payments to employees. *Id.* ¶ 59.

**RESPONSE:** Disputed, as Gleckler testified that she does not "scrutinize the payroll reports" and that she "rel[ies] on the people in place to take care of" that part of the business (Defendants' SOF, at Ex. E, Gleckler Dep., 213:13-214-9), and as President of TMG, Dussias was in charge of TMG's payroll and ensuring its accuracy. (Ex. 21 to SOAF). Defendants further dispute Dussias' implication that Gleckler was aware of the changes made by Dussias, as she testified she was unaware of his payroll status until after he was terminated as an employee. (Defendants' SOF, at Ex. E, Gleckler Dep., 211:14-212:20 ("I was unaware of the status of Dean's. I was unaware of his status prior to that. When I had looked into it, Dean changed his status without my knowledge. So when I realized there was no agreement, I had to dive into the details of Dean's world.")).

25. Dussias also received perquisites only provided to him and Gleckler as members. *Id.* ¶ 22. These included: full payment of [redacted], reimbursement for [redacted], payment of a [redacted], inclusion in the [redacted], and a split of the [redacted]. *Id.*

**RESPONSE:** Disputed, as: employees other than members received 100% healthcare premiums, including TMG's Director of Sales and Sales Account Manager, as well as [redacted] (TMG's Supplemental Answer to Interrogatory 11, attached as Exhibit 2); TMG did not maintain any expense accounts for "[redacted] or any other expenses (TMG's Answers to Interrogatories, attached as Exhibit 3, ¶ 11); Gleckler did not [redacted], and Dussias [redacted] without providing notice to Gleckler (*Id.*, ¶ 11).

Defendants object to the materiality of the statements in paragraph 25, as the conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any

agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

26. Between July 1, 2020, and February 2021, there was no further discussion of terms between Dussias and Gleckler because the terms had been agreed upon. *Id.* ¶ 23. Nor did Gleckler ever ask Dussias to sign the GRA or Exhibit C to the GRA; or suggest that Dussias' membership was contingent on his signing a written document or any other future event or action. *Id.* He was a member. *Id.* The parties operated under these terms until April 22, 2021. *Id.*

**RESPONSE:** Disputed, as: the text messages between the parties demonstrate that Dussias and Gleckler participated in a phone call with Gleckler's attorney responsible for preparing the documents relating to the proposed transaction with Dussias, Fran Griesing, on October 14, 2020, and October 21, 2020 (*see* DHD000882 and DHD000890, attached as Exhibit 4), and Dussias emailed Gleckler on January 1, 2021 an attachment containing just a signature page of a purported operating agreement, signed by Dussias and which stated that Dussias was a "manager" of TMG. In the email, Dussias stated: "Please see attached; counter-sign; PDF and send back." (*see* citations to the record at Defendants' SOF ¶ 40); Gleckler presented Dussias with at least three draft documents to sign regarding his proposed acquisition of a membership interest in TMG (the Gleckler Term Sheet that stated any agreement was contingent on a formal, written and signed contract, as well as multiple drafts of an amended operating agreement that required Dussias to sign) (*see* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76). Defendants dispute that Dussias was a member or that there was any agreement, as Dussias did not sign a written document admitting him as a member in TMG nor did he receive the unanimous written consent of the members of TMG (*see* citations to the record at Defendants' SOF ¶¶ 6, 60-61), Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias

(Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

27. The parties did not revisit the issue of an operating agreement until the end of 2020. *Id.* ¶ 24; Dx O. The issue arose at that point because Gleckler wanted to have an agreement in place in order to have the business certified as a Women's Business Enterprise ("WBE") by the Women's Business Enterprise National Council ("WBENC"). Ex. 1 ¶ 24; Dx H at TMG_00168421 (referencing Gleckler's desire to have TMG certified as a WBE).

**RESPONSE:** Disputed, as: the text messages between the parties demonstrate that Dussias and Gleckler participated in a phone call with Gleckler's attorneys responsible for preparing the documents relating to the proposed transaction with Dussias, Fran Griesing, on October 14, 2020, and October 21, 2020 (*see* DHD000882 and DHD000890, attached as Exhibit 4). Defendants dispute that the "issue" of an operating agreement "arose" due to certification as a Women's Business Enterprise, as Gleckler repeatedly mentioned the need for an operating agreement to Dussias going back to September 2019 (*see* Exhibit 3 to SOAF; *see* Exhibit 2 ("Send me what you have regarding the operating agreement as [attorney Fran Griesing] keeps telling me I have to take care of all this. You said you have something prepared so please send and we can discuss further when u r in town. Otherwise Fran will start preparing something for you and I to discuss so we get the ball rolling," attached as Exhibit 7), and testified that an amended operating agreement was needed to protect her interests after enduring litigation with her former partner. (Defendants' SOF, at Ex. E, Gleckler Dep., 164:20-165:1 ("I just went through ten years of issues

with a previous partner about an operating agreement. So that's why I hired lawyers to protect me and create an operating agreement that would reflect the company's operating agreement and up any updates to admit Dean as my partner."); 173:22-174:3 ("[Fran Griesing] was aware that I was in conversation with Dean, so she wanted. Listen, I hired lawyers to protect me in the business. So if I'm having conversations with them, they wanted to update and protect me in their efforts. So that's why she wanted us to get [an amended operating agreement] done for that reason.").

**e. Gleckler Consistently and Repeatedly Acknowledges Dussias' Membership**.

28. Gleckler consistently and repeatedly acknowledged Dussias' membership in TMG. Ex. 1 ¶ 25. On October 2, 2019, Gleckler identified Dussias as "My new partner… YAY!" Exhibit 9. In the same email thread, on November 1, Gleckler was asked: "is Dean an owner? … should we thank the owners plural and mention Dean as well?" *Id.* Gleckler responded: "Yes Dean is a partial owner." *Id.*

**RESPONSE:** Defendants admit that the email in Exhibit 9 of the SOAF was sent, but dispute that the email was an acknowledgement that Dean was a member, owner, or partner in TMG, as Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future. (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13 ("You wouldn't say to somebody, here's my partner, if he signs the operating agreement . . . that never waived the, never waived the fact that the operating agreement had to be updated and it had to be in writing. And that's why I hired legal to help me protect myself from this, so I wouldn't be in the situation that we're in right now. So it doesn't matter what was. It was always with the anticipation of him being my partner. I'm not denying that."); 161:1-17 ("[H]e was introduced as my partner, never wavering the need to have it in writing, according to the operating agreement

and the input from my lawyers. I would not say this is my partner, if he signs the operating agreement or we update the operating agreement . . . I knew the operating agreement. I knew my lawyers would protect me in this agreement. So this was, you know, everything was with the anticipation of Dean signing the agreement and becoming my partner."); 164:20-165:1 ("I just went through ten years of issues with a previous partner about an operating agreement. So that's why I hired lawyers to protect me and create an operating agreement that would reflect the company's operating agreement and up any updates to admit Dean as my partner.").

Defendants object to the materiality of the statements in paragraph 28, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

29. On or about March 19, 2020, Gleckler approved that language be added to the front page of TMG's website identifying her and Dussias as "Owners." Ex. 1 ¶ 26; Exhibit 10 at TMG_0076420; Dx E, 178:21-23.

**RESPONSE:** Admitted, but Defendants dispute any implication by Dussias that this is proof he was a member, as: Gleckler's initial draft of the same document stated only "Merri Gleckler, CEO," and the document was changed to mention Dussias at Dussias' request. (Dkt. 23, at Counterclaim ¶ 53; *see* original draft of document, TMG_00529609, attached as Exhibit 5);

Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future. (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13; 161:1-17; 164:20-165:1).

Defendants object to the materiality of the statements in paragraph 29, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

30. At the same time, Gleckler and Dussias caused TMG to send a marketing email to TMG's entire customer email list (tens of thousands of people) that identified Dussias and Gleckler as "Owners" in the signature block. Ex. 1 at ¶ 27; Exhibit 11; Dx E, 178:21-23. This mail went through several edits, without Gleckler making any change to Dussias as an "owner." Exhibits 12-17. While Gleckler initially drafted the email as coming only from her, she acknowledged that it made sense that the email come from both of us as the owners. Ex. 1 at ¶ 27.

**<u>RESPONSE:</u>** Defendants admit that the email attached as Exhibit 11 to the SOAF was sent to TMG's mailing list, but dispute any implication by Dussias that this is proof he was a member, as: Gleckler's initial draft of the same document stated only "Merri Gleckler, CEO," and the document

was changed to mention Dussias at Dussias' request. (Dkt. 23, at Counterclaim ¶ 53; *see* original draft of document, TMG_00529609, attached as Exhibit 5); Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future. (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13; 161:1-17; 164:20-165:1).

Defendants object to the admissibility of the portion of the statement that Gleckler "acknowledged that it made sense that the email came from both of us as the owners," as Dussias' statement is conclusory and fails to point to any specific statement made by Gleckler, including when, where, and by what medium the statement was made. Defendants further object to the materiality of the statements in paragraph 30, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

31. On February 19, 2021, Gleckler wrote to TMG's accountant, Ray Conway, "Dean is a Member not a Manager." Exhibit 18 at TMG_00444374.

**<u>RESPONSE:</u>** Defendants admit that the statement is accurately quoted from Exhibit 18 of the SOAF, but dispute Plaintiff's characterization of the statement as evidence of Dussias'

membership, as the email was sent in relation to a draft operating agreement prepared by Dussias in which he listed himself as a manager, and Gleckler was merely clarifying to her accountant that any agreement would make Dussias a member, and not a manager. (*see* Ex. 18 to SOAF; Defendants' SOF, at Ex. E, Gleckler Dep., 216:6-19 ("I was telling Ray that although Dean called himself a member and a manager, he was not going to be a manager. He was never going to be a manager. So I was telling Ray he would, he was only going to be if we had an agreement, a member and never a manager.")).

Defendants object to the materiality of the statements in paragraph 31, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

32. On September 22, 2019, Gleckler asked Dussias via text, "Can I tell Wang you r my partner"? Exhibit 19 at TMG_00595036. Wang operates [redacted] Ex. 1 ¶ 28. She further stated that she would not tell Wang that Dussias was her partner until after [redacted]. Ex. 19 at TMG_00595036 (stating "Not before I signed" [redacted]). Around the same time, Gleckler, Dussias and the owners of [redacted] had a call to introduce Dussias as the new co-member of TMG. Ex. 1 ¶ 28.

**RESPONSE:** Defendants admit that the text messages in Exhibit 19 to the SOAF were sent, but dispute that they are evidence of Dussias' membership or ownership in TMG, as Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future, and because it would be unusual to introduce him as her "partner if he signs the operating agreement." (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13; 161:1-17; 164:20-165:1). Defendants dispute that the MIPA is mentioned anywhere in the cited text messages.

Defendants object to the materiality of the statements in paragraph 32, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76). Defendants further object to the portion of the statement that Dussias and Gleckler had a call with a third party to introduce Dussias as a co-member, as this is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802, and for lack of foundation, as Dussias fails to point to any specific statements made by anybody during

the call, fails to identify when the call took place, and does not provide any proof or evidence that the call actually took place.

33. On September 23, 2019, Gleckler wrote to [redacted]: "Cedric [Reingold] is no longer with Kashwere and I have a new partner, Dean Dussias." Exhibit 20. [redacted] Ex. 1 ¶ 29.

**RESPONSE:** Defendants admit that the email in Exhibit 20 to the SOAF was sent, but dispute that it is evidence of Dussias' membership in TMG, as Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future, and because it would be unusual to introduce him as her "partner if he signs the operating agreement." (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13; 161:1-17; 164:20-165:1).

Defendants object to the materiality of the statements in paragraph 33, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

34. On September 26, 2019, Gleckler emailed HSimon: "Dean Dussias is my new partner." Exhibit 21.

**RESPONSE:** Defendants admit that the email in Exhibit 21 to the SOAF was sent, but dispute that it is evidence of Dussias' membership or ownership in TMG, as Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future, and because it would be unusual to introduce him as her "partner if he signs the operating agreement." (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13; 161:1-17; 164:20-165:1).

Defendants object to the materiality of the statements in paragraph 34, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

35. Between September 2019 and February 27, 2021, Gleckler represented to third parties in writing that Dussias was her "partner" at least 19 times. Exhibits 22-25, Exhibit 26 at TMG_00510023, Exhibits 27-30, Exhibit 31 at TMG_00529067, Exhibit 32 at TMG_00480429, Exhibits 33-37.

**RESPONSE:** Defendants admit that the emails cited were sent, but dispute that they are evidence of Dussias' membership or ownership in TMG, as Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of

TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future, and because it would be unusual to introduce him as her "partner if he signs the operating agreement." (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13; 161:1-17; 164:20-165:1).

Defendants object to the materiality of the statements in paragraph 35, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because nearly all of the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

36. Gleckler also repeatedly represented to Dussias in writing that he was her "partner." *E.g.* Exhibit 38 at TMG_00595039; Exhibit 39 at TMG_00595305.

**RESPONSE:** Defendants admit that the text messages in Exhibits 38 and 39 of the SOAF were sent, but dispute that they are evidence of Dussias' membership in TMG, as Gleckler repeatedly testified that she anticipated and expected the negotiations to be successful and for Dussias to eventually become a member of TMG upon the signing of a formal, written contract, and that she referred to Dussias using such terms in anticipation of him becoming a member in the near future, and because it would be unusual to introduce him as her "partner if he signs the operating agreement." (Defendants' SOF, at Ex. E, Gleckler Dep., 153:16-154:13; 161:1-17; 164:20-165:1).

Defendants object to the materiality of the statements in paragraph 36, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because all of the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

37. Gleckler testified that the terms "partner" and "owner" are interchangeable in her mind. Dx E at 161:1-11.

**RESPONSE:** Disputed, as the actual quote from Gleckler's deposition reads: "Q. Okay, but you didn't call him a partner in this email, right. You said Dean is a partial owner, correct? A. Partial owner, yes, partial owner, partner. To me, it's all. Still doesn't waive anything. The need for this to be done in writing. I knew the operating agreement. I knew my lawyers would protect me in this agreement. So this was, you know, everything was with the anticipation of Dean signing the agreement and becoming my partner.").

38. "Partner" is how she referred to her previous co-owner, Reingold. Dx E at 79:23-80:2, 82:20-22, 141:18-21, 147:15-16, 149:1-4.

**RESPONSE:** Defendants admit that Gleckler referred to Reingold as her former "partner" in response to various questions during her deposition.

Defendants object to the materiality of the statements in paragraph 38, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

39. On July 23, 2020, Dussias sent a capitalization table reviewed extensively and approved by Gleckler to a prospective investor, David Lazar, reflecting Dussias' 30% membership interest. Ex. 1 ¶ 30; Exhibit 40 ([redacted] Gleckler and Dussias went through multiple rounds of edits of the table over nearly three weeks, all of which stated that [redacted]. Exhibit 41 (showing [redacted]; Exhibit 42 [redacted]; Ex. 1 ¶ 30.

**RESPONSE:** Defendants admit that the emails attached as Exhibits 41 and 42 to the SOAF were sent, but dispute that Gleckler "approved" or edited the attachments or that the attachments reflect Dussias' purported membership in TMG, as Gleckler testified that Dussias created this as a proposal to David Lazar to see if he was interested in joining TMG, but that Dussias was not a member of TMG at the time he created this document, rather this was an proposed agreement "so if David joined, that he would also become a member." (Defendants' SOF, Ex. E, Gleckler Dep., 183:5-187:4).

Defendants object to the admissibility of the statements in paragraph 39, as the proposals sent by Dussias to Mr. Lazar are out-of-court statements offered by Dussias for the truth of the matter asserted, and are therefore hearsay in violation of Rule 802. Defendants further objects to the admissibility of the portion of the statement that the documents were "reviewed extensively" by Gleckler and that Glecker participated in "multiple rounds of edits" for lack of foundation, as Dussias fails to point to any evidence or attach any document supporting that Gleckler participated in the creation of the proposals. Defendants further object to the materiality of the statements in paragraph 39, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

40. Gleckler's primary concern with the cap table was that she have the option to either (1) sell a portion of her own interest directly to Lazar (thus, reducing only her interest and generating liquidity for herself) or (2) cause TMG to sell an interest to Lazar (effectively diluting both her and Dussias and generating cash for TMG). Ex. 1 ¶ 31. The Excel version of the document could model both options. *Id.*

**RESPONSE:** Disputed, as Gleckler testified that Dussias created this as a proposal to David Lazar to see if he was interested in joining TMG, but that Dussias was not a member of TMG at the time

he created this document, rather this was an proposed agreement "so if David joined, that he would also become a member." (Defendants' SOF, Ex. E, Gleckler Dep., 183:5-187:4).

Defendants object to the admissibility of the statements in paragraph 40, as the proposals sent by Dussias to Mr. Lazar are out-of-court statements offered by Dussias for the truth of the matter asserted, and are therefore hearsay in violation of Rule 802. Defendants further objects to the admissibility of the statements for lack of foundation, as Dussias fails to point to any statement by Gleckler or other evidence supporting that Gleckler had these purported "concerns." Defendants further object to the materiality of the statements in paragraph 40, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

41. On March 29, 2021, Dussias wrote to Gleckler: "While we don't share equally (70/30)… I am your partner." Exhibit 43 at TMG_00399819. He stated further: "In February of 2020, when I was in Arizona with you and Robert, he asked me to trust that our partnership agreement would not be concluded as of March 16, 2020 [the approximate date of the final scheduled MIPA payment], but instead be July 1, 2020, which was a give up on my part of approximately $300,000 in profits." Dussias stated that Gleckler's conduct was hurting his "Kashwere ownership." *Id.* Gleckler never responded to tell Dussias he was not an owner or that his statements were inaccurate. Ex. 1 ¶ 32.

**RESPONSE:** Defendants admit that Dussias sent the email attached as Exhibit 43 to the SOAF and that Gleckler did not respond to the email, but dispute that any of the statements in the email are proof of Dussias' membership in TMG, as it consists of Dussias sending a long, unprompted email to Gleckler reciting the purported "terms" in an after-the-fact attempt to document a non-existent agreement, and in which he admits no written agreement exists: "With covid and the significant changes at Kashwere, we both allowed a document to slip until I prepared one at the very end of 2020. Of course, I would have preferred to have done it earlier and believe we both contributed to the lapse of time – at no point during that time did I doubt our agreement or the trust I had in you and in Robert." (Ex. 43 to SOAF).

Defendants object to the admissibility of the statements in paragraph 41, as the email sent by Dussias is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce its own statements. Defendants further object to the materiality of the statements in paragraph 41, as Dussias' subjective, after-the-fact statements are not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59). *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014) (assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent.").

42. On April 2, 2021, Dussias wrote to Gleckler: "I own 30% of Kashwere (TMG Kreations, LLC)" and "if we vote, as owners it's 10-0 or 7-3." Exhibit 44 at TMG_00162675. Gleckler did not write back to deny that Dussias was an owner. Ex. 1 at ¶ 33.

**RESPONSE:** Defendants admit that Dussias sent the email attached as Exhibit 44 to the SOAF and that Gleckler did not respond to the email, but dispute that any of the statements in the email are proof of Dussias' membership in TMG, as it consists of Dussias sending a long, unprompted email to Gleckler and stating near the end that he "own[s] 30% of Kashwere" in an after-the-fact attempt to document a non-existent agreement, and in which he admits that no written agreement had been reached: "Please address the partnership points you believe will enable us to move forward; my lawyers will redline the draft and you can then incorporate your changes and we can then meet to finalize." (Ex. 44 to SOAF).

Defendants object to the admissibility of the statements in paragraph 42, as the email sent by Dussias is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce its own statements. Defendants further object to the materiality of the statements in paragraph 42, as Dussias' subjective, after-the-fact statements are not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59). *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del.

Ch. Sept. 30, 2014) (assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent.").

43. In November 2020, after discussing it with Gleckler, Dussias filed an annual report with the State of Illinois, identifying himself as a "member" and "manager." Ex. 1 ¶ 34.

**RESPONSE:** Defendants admit that Dussias filed an annual report with the State of Illinois, identifying himself as a "member" and "manager." Defendants dispute that Dussias discussed the annual report with Gleckler. (Dkt. 23, at Answer ¶ 55; *Id.*, at Counterclaim ¶¶ 49-50).

Defendants object to the admissibility of the portion of the statement that "after discussing it with Gleckler" for lack of foundation, as Dussias fails to point to any specific statement made by Gleckler or even the date, time, medium, or location that any such statement was made. Defendants further object to the materiality of the statements in paragraph 43, as the conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59).

44. At no time, prior to April 22, 2021, did Gleckler, directly or indirectly, ever question Dussias' membership of TMG. Ex. 1 ¶ 35. To the contrary, she repeatedly and consistently confirmed that Dussias was a member of TMG. *Id.*

**RESPONSE:** Disputed, as Dussias was not a member because he did not sign a written document admitting him as a member in TMG nor did he receive the unanimous written consent of the members of TMG (*see* citations to the record at Defendants' SOF ¶¶ 6, 60-61), Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at

Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the admissibility of the portion of the statement that "she repeatedly and consistently confirmed that Dussias was a member of TMG" for lack of foundation, as Dussias fails to point to any specific statement made by Gleckler or even the date, time, medium, or location that any such statement was made. Defendants further object to the materiality of the statements in paragraph 44, as the conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59).

45. Nor did she provide any indication to Dussias that she was using the terms owner, member, or partner colloquially, conditionally, or subject to any qualification of any kind. *Id.*

**<u>RESPONSE:</u>** Admitted that Gleckler never told Dussias she "was using the terms owner, member, or partner colloquially, conditionally, or subject to any qualification of any kind," but disputed that any such qualification was necessary given that Dussias did not sign a written document admitting him as a member in TMG nor did he receive the unanimous written consent of the members of TMG (*see* citations to the record at Defendants' SOF ¶¶ 6, 60-61).

**f. <u>Gleckler Admits Her Agreement With Dussias</u>.**

46. On December 17, 2019, Gleckler admitted that [redacted]" Exhibit 45 at TMG_0595292.

**RESPONSE:** Defendants admit that Gleckler sent the text messages in Exhibit 45 of the SOAF, but dispute that the cited language is evidence of an agreement, as the full relevant quote is: "I don't have to sign insurance? We don't have you on any legal paperwork, so how can you sign a document without my signature? That does not seem kosher. Does Tam know that we only have a handshake agreement to date?," and Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the materiality of the statements in paragraph 46, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

47. In the same thread, Dussias wrote to Gleckler: "[redacted] *Id.* at TMG_00595292. Gleckler did not disagree with those statements. Ex. 1 at ¶ 37.

**RESPONSE:** Defendants admit that Dussias sent the text messages contained in paragraph in Exhibit 45 of the SOAF, and that Gleckler did not respond specifically to the quoted text. Defendants dispute that Gleckler did "not disagree" with those statements, as Gleckler testified repeatedly that no agreement was reached between Defendants and Dussias (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the materiality of the statements in paragraph 46, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

48. On February 2, 2021, Gleckler sent TMG's accountant, Ray Conway, an email stating that "Dean and I have an *agreement* in place but not yet a *formalized ownership contract.*" Exhibit 46 (emphasis in original).

**RESPONSE:** Defendants admit that Gleckler sent the email in Exhibit 48 to the SOAF but dispute any characterization by Dussias that this evidences an agreement, as the full relevant quote is:

"Cheryl had some questions regarding the return being Dean and I have an *agreement* in place but not yet a *formalized ownership contract* until we both sign the operating agreement we are now creating," reaffirming Gleckler's intent that a written agreement was a condition to any enforceable contract. (Ex. 48 to SOAF).

Defendants object to the materiality of the statements in paragraph 48, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract, and because the statements in question are before the June 15, 2020 date that Dussias claims an oral agreement was reached with Gleckler. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

g. **<u>The Exchange of Operating Agreements in February 2021 Confirms the June 2020 Agreement</u>**.

49. On February 6, 2021, Gleckler sent Dussias a draft operating agreement. Dx Q. While that draft included Dussias' 30% membership interest, it was otherwise inconsistent with the Parties' June 2020 agreement (which had governed their conduct in the previous nine months) including a vesting schedule the parties had already mutually rejected in May 2020. Ex. 1 ¶ 39.

**<u>RESPONSE:</u>** Defendants admit that on February 6, 2021, Gleckler sent Dussias a draft operating agreement that included a vesting schedule for Dussias' proposed membership interest. Defendants dispute the remainder of the statements in paragraph 49, as Gleckler repeatedly testified that the parties did not reach an agreement and that she was relying on her lawyers to draft all documents relating to the proposed transaction, and all of those documents contained a vesting period

(Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14; *see* citations to the record at Defendants' SOF ¶¶ 24, 42, 58), and the record belies any "June 2020 agreement" given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

50. Upon Dussias' review of that draft, he pointed out to Gleckler in a telephone conversation that his membership was effective as of July 1, 2020, and the parties had never agreed to any sort of delayed vesting and had explicitly rejected the concept when it appeared in the May 2020 term sheet prepared by Geckler's attorney. Ex. 1 ¶ 40. Gleckler acknowledged this and agreed. *Id.*

**RESPONSE:** Disputed, as Gleckler repeatedly testified that the parties did not reach an agreement and that she was relying on her lawyers to draft all documents relating to the proposed transaction, and all of those documents contained a vesting period (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14; *see* citations to the record at Defendants' SOF ¶¶ 24, 42, 58), and the record belies any "June 2020 agreement" given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the admissibility of the portion of the statement that Dussias "pointed out to Gleckler in a telephone conversation that his membership was effective as of July 1, 2020," as this is an out-of-court statement offered by Dussias for the truth of the matter asserted, and is therefore hearsay in violation of Rule 802. There is no hearsay exception for a party to introduce

his own statements. Defendants object to the admissibility of the portion of the statement that "Gleckler acknowledged this and agreed" for lack of foundation, as Dussias fails to point to any specific statement made by Gleckler or even the date, time, medium, or location that any such statement was made. Defendants further object to the materiality of the statements in paragraph 50 regarding the parties' discussions regarding a vesting schedule and employment agreement, as the parties' subjective intent is not relevant to whether an agreement was formed, as assent is determined by the "objective, contemporaneous evidence," not the parties' "professed subjective intent." *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014); *see Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir.1997) (confirming that witness testimony may be rejected on summary judgment if it is contradicted by the documentary evidence or if it is internally inconsistent or implausible, and that testimony can and should be rejected without a trial if no reasonable person would believe it).

51. On February 15, 2021, Dussias emailed Gleckler and TMG's accountant, Ray Conway, a revised operating agreement. Dx S. The revised document reiterated the 70/30 membership split that parties had agreed upon since 2019 and stated that Dussias' membership had become effective on July 1, 2020. *Id.*

**RESPONSE:** Defendants admit that on February 15, 2021, Dussias emailed Gleckler and TMG's accountant, Ray Conway, a revised operating agreement that reflects a 70/30 membership and an effective date of July 1, 2020. Defendants dispute that the "parties had agreed upon since 2019" the 70/30 membership split, as Gleckler repeatedly testified that the parties did not reach an agreement (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any 2019 agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal,

written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

52. On February 16, 2021, while these discussions were occurring, an individual from HSimon emailed Gleckler: "I noticed that Dean Dussias received a draw from the company of [redacted]. Is he a partner? What's his ownership percentage?" Exhibit 47 at HS_000826. Gleckler did not confront Dussias about this information or change Dussias' compensation structure. Ex. 1 ¶ 42.

**RESPONSE:** Defendants admit that the email in Exhibit 47 to the SOAF was sent and that she did not confront Dussias or change his compensation structure, but dispute any implication that this evidences that Dussias was a member of TMG, as Gleckler testified that any actions she took with respect to Dussias were in "anticipation that Dean was going to be my partner, but he never. And a member of TMG, and he never was." (Defendants' SOF, at Ex. E, Gleckler Dep., 213:13-214-9).

Defendants object to the materiality of the statements in paragraph 52, as the conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, or whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59).

53. On February 19, 2021, Conway responded with notes on the February 15 draft operating agreement. Exhibit 48. Conway's notes referenced Dussias' "buy-in on 7/1/2020." *Id.* at TMG_00410246. He asked Dussias and Gleckler if they could make Dean's ownership effective "same day as Cedric [Reingold]'s payout in order to avoid becoming a sole proprietorship? Dean

could be allocated a $.01 capital interest at that time, with no profits interest until his buy-in on 7/1/2020." *Id.* Gleckler did not dispute that he had bought in on July 1, 2020. Ex. 1 ¶ 43.

**<u>RESPONSE:</u>** Defendants admit that the email in Exhibit 48 to the SOAF was sent, but dispute Plaintiff's characterization of that email, as the email was sent in connection with reviewing a draft amended operating agreement prepared by Dussias in which he had changed the effective date to be retroactive to July 1, 2020, and is a discussion of that term proposed by Dussias. (Ex. 48 to SOAF). Defendants further dispute that Gleckler did not dispute that Dussias "bought in" on July 1, 2020, as Gleckler responded in the email stating that she "need[s] clarification" on the document (Ex. 18 to SOAF), and testified repeatedly that no agreement was reached between Defendants and Dussias and that he was not a member of TMG until the conditions of the Operating Agreement were met (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14), and the record belies any such agreement given that the parties continued negotiating extensively in writing, the documents establish that any agreement was contingent on a formal, written and signed contract, numerous counteroffers were exchanged, and no agreement was ever finalized or signed. (*See* citations to the record at Defendants' SOF ¶¶ 39-60, 75-76).

Defendants object to the admissibility of the statements in paragraph 53, as Ray Conway's notes are out-of-court statements offered by Dussias for the truth of the matter asserted, and are therefore hearsay in violation of Rule 802.

54. Gleckler responded to Conway's notes as follows: "Dean is a Member not a Manager. All else I need clarification." Ex. 18.

**<u>RESPONSE:</u>** Defendants admit that the statement is accurately quoted from Exhibit 18 of the SOAF, but dispute Plaintiff's characterization of the statement as evidence of Dussias' membership, as the email was sent in relation to a draft operating agreement prepared by Dussias

in which he listed himself as a manager, and Gleckler was merely clarifying to her accountant that any agreement would make Dussias a member, and not a manager. (*see* Ex. 18 to SOAF; Defendants' SOF, at Ex. E, Gleckler Dep., 216:6-19 ("I was telling Ray that although Dean called himself a member and a manager, he was not going to be a manager. He was never going to be a manager. So I was telling Ray he would, he was only going to be if we had an agreement, a member and never a manager.")).

Defendants object to the materiality of the statements in paragraph 54, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59).

55. Gleckler, Dussias, and Conway discussed Conway's notes and no one questioned Dussias' ownership in TMG. Ex. 1 ¶ 45.

**RESPONSE:** Defendants admit that a conversation took place between Gleckler, Dussias, and Ray Conway regarding the draft amended operating agreement, but dispute Plaintiff's characterization of that conversation as evidence of Dussias' "ownership in TMG," as the discussion was in relation to a draft operating agreement prepared by Dussias regarding his *proposed* membership interest in TMG if an agreement were to be finalized and signed. (Ex. 18 to SOAF).

Defendants object to the materiality of the statements in paragraph 55, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

56. Dussias sent a draft incorporating Conway's comments on February 22, 2021. Ex. 1 ¶ 46; Dx U.

**RESPONSE:** Defendants admit that Dussias sent a further draft amended operating agreement on February 22, 2021.

**h. Gleckler Explicitly Told Dussias the GRA Was Terminated and Treated It as Such.**

57. In addition to the fact that Gleckler specifically told Dussias that the GRA was "gone" and that TMG had no operating agreement (*supra* ¶ 18), Gleckler testified that she never intended for Dussias to sign Exhibit C to the GRA because she intended to create a new operating agreement to govern her relationship with Dussias. Dx E, 164:11-165:1, 165:22-23.

**RESPONSE:** Defendants incorporate herein their response to paragraph 18 of the SOAF. Defendants admit that Gleckler testified that she did not present Exhibit C of the Operating Agreement to Dussias, but dispute Dussias' characterization of that testimony, as Gleckler testified numerous times that Dussias needed to sign an "updated" operating agreement in order to be admitted as a new member of TMG (Defendants' SOF, at Ex. E, Gleckler Dep., 165:4-23, 171:16-172:6, 193:18-23, 212:1-8), and all of the transaction documents presented by Gleckler to Dussias

were entitled "amended" or "restated" operating agreement of TMG. (*See* citations to the record at Defendants' SOF ¶¶ 21, 41, 55, 57, 66).

Defendants further object to the materiality of the statements in paragraph 57, as under Delaware law and the terms of the Operating Agreement, the Operating Agreement can be amended only by a written document signed by the members, not by vague statements to a third-party. (*See* citations to the record at Defendants' SOF ¶ 8).

58. Gleckler never asked Dussias to sign the GRA or Exhibit C to the GRA. Ex. 1 ¶ 47; Dx E, 156:6-8, 164:11-19. When considering different operating agreement drafts, the parties never compared or redlined them with the GRA. Ex. 1 ¶ 47. After the signing MIPA, Gleckler never suggested that the GRA was operative until this litigation. *Id.*

**RESPONSE:** Defendants admit that Gleckler did not ask Dussias to specifically sign the Operating Agreement, but dispute that Gleckler did not express to Dussias that the Operating Agreement remained in effect, as she presented Dussias with at least three draft documents to sign regarding his proposed acquisition of a membership interest in TMG that were entitled "amended" or "restated" operating agreement of TMG. (*See* citations to the record at Defendants' SOF ¶¶ 21, 41, 55, 57, 66; Defendants' SOF, at Ex. E, Gleckler Dep., 165:4-23, 171:16-172:6, 193:18-23, 212:1-8) (discussing the need for an "updated" operating agreement)).

Defendants further object to the materiality of the statements in paragraph 58, as under Delaware law and the terms of the Operating Agreement, the Operating Agreement can be amended only by a written document signed by the members. (*See* citations to the record at Defendants' SOF ¶ 8).

59. Gleckler referred to the GRA as "the Operating Agreement I had with Cedric." Exhibit 49.

**RESPONSE:** Defendants admit that cited email to her accountant states "Hi Ray, Attached is the Operating Agreement I had with Cedric," but dispute Dussias' implication that this is proof the Operating Agreement was no longer in effect, as Gleckler presented Dussias with at least three draft documents to sign regarding his proposed acquisition of a membership interest in TMG that were entitled "amended" or "restated" operating agreement of TMG. (*See* citations to the record at Defendants' SOF ¶¶ 21, 41, 55, 57, 66; Defendants' SOF, at Ex. E, Gleckler Dep., 165:4-23, 171:16-172:6, 193:18-23, 212:1-8) (discussing the need for an "updated" operating agreement)).

Defendants object to the materiality of the statements in paragraph 59, as under Delaware law and the terms of the Operating Agreement, the Operating Agreement can be amended only by a written document signed by the members, not by statements to a third-party. (*See* citations to the record at Defendants' SOF ¶ 8).

60. The MIPA required that [redacted] Dx E at 149:8-152:9. *See also* Dkt. 90, TMG's Memorandum of Law (claiming that the non-amended GRA is the current operating agreement for TMG).

**RESPONSE:** Admitted, but Gleckler objects to the materiality of the statements in paragraph 60, as whether Defendants amended the Operating Agreement on a previous occasion involving a documented settlement agreement with a prior co-member is not relevant to and has no bearing on whether Dussias is a member of TMG pursuant to the terms of the Operating Agreement and Delaware law.

61. Although the GRA identifies Gleckler as the member of TMG, Gleckler at some point substituted her entity MerriG, LLC as the member. Dx A, p. 9 (identifying Gleckler as member) (*see also* Dx B, p. 1, listing Gleckler as 50% owner); [redacted]); Dkt. 38 (Defendants' Local Rule 3.2 Disclosure identifying MerriG, LLC as the sole member of TMG). Gleckler never amended the Exhibits A or B to the GRA to reflect the changed membership. Dx E, 221:18-222:10. Nor did she execute Exhibit C to admit MerriG. *Id.* Gleckler has no knowledge of any other corporate action or writing by which this change in membership occurred. *Id.*

**RESPONSE:** Defendants dispute that the Operating Agreement clearly identifies only Gleckler as a member of TMG, as it is signed by Gleckler "for and on behalf of MerriG, LLC." (Defendants' SOF, at Ex. A, p. 8). Defendants admit that the Operating Agreement was not amended to reflect a change of membership.

Defendants object to the materiality of the statements in paragraph 61, as whether Defendants amended the Operating Agreement on a previous occasion involving the admission of Gleckler and/or her own LLC, is not relevant to and has no bearing on whether Dussias is a member of TMG pursuant to the terms of the Operating Agreement and Delaware law.

62. At some point after [redacted], Gleckler re-admitted herself as a member of TMG, individually. Dx E, 217:5-220:1. Gleckler never amended Exhibits A or B to the GRA or executed Exhibit C thereto to effectuate this change and Gleckler has no knowledge of any other corporate action to re-admit her as a member individually. *Id.*

**RESPONSE:** Defendants dispute that the Operating Agreement clearly identifies only Gleckler as the member of TMG, as it is signed by Gleckler "for and on behalf of MerriG, LLC."

(Defendants' SOF, at Ex. A, p. 8). Defendants admit that the Operating Agreement was not amended to reflect a change of membership following the execution of the MIPA.

Defendants object to the materiality of the statements in paragraph 62, as whether Defendants amended the Operating Agreement on a previous occasion involving the admission of Gleckler and/or her own LLC, is not relevant to and has no bearing on whether Dussias is a member of TMG pursuant to the terms of the Operating Agreement and Delaware law.

63. At some point prior to December 18, 2023, Gleckler converted TMG from a member-managed LLC to a manager-managed LLC. Exhibit 51, § 12. Gleckler did not amend the GRA to reflect this change and has no knowledge of any other corporate action or writing by which this change occurred. Dx E, 220:20-221:17.

**RESPONSE:** Defendants dispute that TMG was initially member-managed, as the Operating Agreement is ambiguous as to whether it is member or manager-managed because Exhibit B to the Operating Agreement named both Gleckler and Reingold as a Manager, but the Operating Agreement states that it is member-managed. (Defendants' SOF, at Ex. A, §§ 4.1, Exhibit B thereto). Defendants admit that the Operating Agreement has not been amended to reflect a change in the management structure.

Defendants object to the materiality of the statements in paragraph 63, as whether Defendants amended the Operating Agreement on a previous occasion regarding the management structure is not relevant to and has no bearing on whether Dussias is a member of TMG pursuant to the terms of the Operating Agreement and Delaware law.

64. At some point in 2012, [redacted]. Exhibit 52. [redacted]

[redacted] Ex. 1 ¶ 49. [redacted]. Dx E, 143:8-12.

**RESPONSE:** Disputed, as Gleckler testified that [redacted] (Defendants' SOF, at Ex. E, Gleckler Dep., 145:4-18), and Defendants consulted with Dussias in 2013 regarding Mr. Schafer and Dussias stated: "Not worth focusing on Russ – he is not a Member (see his one page agreement, his deposition, pattern of actions, Section 7.2 of Kashwere Operating Agreement and section 18-702, (b) (1) of the Delaware Code. No copy of LLC Agreement signed by him, no meetings of the Members including him, no voting ever, no agreement from you, he has different terms than Merri G and [Cedric Reingold]," an assessment that Dussias testified in this case "was accurate." (*See* citations to the record at SOF ¶ 13).

Defendants object to the materiality of the statements in paragraph 64, as whether Defendants amended the Operating Agreement on a previous occasion is not relevant to and has no bearing on whether Dussias is a member of TMG pursuant to the terms of the Operating Agreement and Delaware law.

**i. Gleckler First Denies Dussias' Membership in Late April 2021**.

65. In late April 2021, Gleckler denied that Dussias was a member of TMG for the first time. Ex. 1 ¶ 50.

**RESPONSE:** Defendants admit that in April 21 they denied that Dussias was a member of TMG, but deny that this was for the "first time," as Dussias was always aware that he was not a member of TMG until the parties reached a final agreement and there was a formal, written and signed contract. (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14).

66. On May 17, 2021, more than three months after HSimon told Gleckler that Dussias was paid a draw, Gleckler wrote HSimon: [redacted] Exhibit 53 at TMG_00391187-88. HSimon responded: [redacted]

**RESPONSE:** Defendants admit that the emails attached as Exhibit 53 to the SOAF were sent, but dispute any implication that this evidences that Dussias was a member of TMG, as Gleckler testified that once she knew Dussias was terminated and not going to become a member, [redacted]. (Defendants' SOF, at Ex. E, Gleckler Dep., 211:14-212:20 ("Because an agreement was never consummated and there was no updated operating agreement or Dean was not a member, we had to update his pay. How you would reference his TMG or Kashwere status within the company . . . I was unaware of the status of Dean's. I was unaware of his status prior to that. When I had looked into it, Dean changed his status without my knowledge. So when I realized there was no agreement, I had to dive into the details of Dean's world.").

Defendants object to the materiality of the statements in paragraph 66, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence

states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59).

67. Dussias and Defendants had never discussed his being a 1099 independent contractor and never considered him to be one. Ex.1 ¶ 51.

**RESPONSE:** Admitted, as Gleckler testified that once Dussias was terminated and she knew he was not going to become a member, the payroll records had to be updated to reflect that because Dussias had previously accessed TMG's payroll system and changed his status to an "owner" receiving a draw. (Defendants' SOF, at Ex. E, Gleckler Dep., 211:14-212:20).

Defendants object to the materiality of the statements in paragraph 67, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 19, 21, 29, 41-59).

**j. Dussias Contributed Substantially to the Success of TMG.**

68. Between August 2019 and April 2021, Dussias worked with Gleckler to upgrade several of TMG's operational functions so the business could grow; including by leading or managing nearly every facet of TMG's business, including accounting, finance, legal, information technology, taxes, and payroll. Ex. 1 ¶ 3, 52.

**RESPONSE:** Defendants admit that Dussias, as President of TMG, was given broad responsibilities to assist in many facets of the business (*see* TMG's Answers to Interrogatories, attached as Exhibit 3, ¶ 13), but dispute that any of those responsibilities were performed

adequately. (*See* TMG's Supplemental Answer to Interrogatory No. 17, attached as Exhibit 6; Dkt. 23, at Counterclaim).

Defendants object to the materiality of the statements in paragraph 68, as Dussias' responsibilities and performance as President of TMG are relevant only to TMG's Counterclaim, not to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement.

69. This included replacing every part of the architecture by which a consumer makes a purchase and receives a product from Kashwere: replacing the website the consumer uses; replacing the software that communicates the purchase from the website to TMG's accounting software; replacing TMG's accounting software Everest with NetSuite; replacing the software that communicates the consumer's website purchase to a warehouse that manages inventory and ships the actual product; replacing the antiquated system by which TMG stored, recorded, and shipped inventory; implementing the transition to all of these new systems; hiring a professional bookkeeper (that TMG still uses); engaging a professional email marketing platform; and hiring professional marketing personnel. Ex. 1 ¶ 53.

**RESPONSE:** Defendants admit that Dussias, as President of TMG, was given broad responsibilities to assist in many facets of the business (*see* TMG's Answers to Interrogatories, attached as Exhibit 3, ¶ 13), but dispute that any of those responsibilities were performed adequately. (*See* TMG's Supplemental Answer to Interrogatory No. 17, attached as Exhibit 6; Dkt. 23, at Counterclaim).

Defendants object to the materiality of the statements in paragraph 68, as Dussias' responsibilities and performance as President of TMG are relevant only to TMG's Counterclaim, not to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement.

70. The new order fulfillment architecture went live on March 3, 2021. *Id.* ¶ 54. It worked well while Dussias was still working at TMG. *Id.* After more than a year of work to get the new systems up and running, once Dussias got them functioning, Gleckler attempted to fire Dussias as though he was an employee on April 22, 2021. *Id.*

**RESPONSE:** Defendants dispute that any of Dussias' responsibilities were performed adequately. (*See* TMG's Supplemental Answer to Interrogatory No. 17, attached as Exhibit 6; Dkt. 23, at Counterclaim). Defendant admits that Dussias was sent a notice of termination of his employment on April 22, 2021. (*See* citations to the record at Defendants' SOF ¶ 64).

Defendants object to the materiality of the statements in paragraph 70 regarding the "new order fulfillment architecture," as Dussias' responsibilities and performance as President of TMG are relevant only to TMG's Counterclaim, not to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement.

71. Gleckler and Dussias spoke roughly twice a day every day on average between August 2019 and April 2021. Ex. 1 ¶ 55. Between May 4, 2019, and April 15, 2021, Gleckler and Dussias exchanged 568 pages of text messages, produced as DHD000429-996. *Id.*

**RESPONSE:** Defendants dispute that Gleckler spoke to Dussias nearly as frequently at stated in paragraph 71, as Dussias does not cite to any evidence to establish that these conversations took place. Defendants admit that the text messages produced as DHD000429-996 were sent.

Defendants object to the materiality of the statements in paragraph 71, as the frequency of Dussias' communications with Gleckler are not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement. Defendants further object to the admissibility of the statements in paragraph 71 for lack of foundation, as Dussias' statements are conclusory and fail to provide any evidence that the calls actually took place, such as call logs, phone records, or screenshots.

**k. Dussias Has Not Been Compensated for His Interest in TMG.**

72. Dussias has not received a draw or other payment from TMG since April 2021. Ex. 1 ¶ 56. He did not receive a 30% share of TMG's profits for 2021 or any other year. *Id.*

**RESPONSE:** Admitted.

73. Between March 31, 2021, and May 15, 2024, Gleckler [redacted] Exhibit 54; Dx E, 53:5-16. [redacted] Ex. 54. [redacted]. Dx E, 53:17-54:6.

**RESPONSE:** Defendants admit that Gleckler, the sole member of TMG, receives funds from her business and uses those funds for various purposes, including [redacted].

Defendants dispute any implication by Dussias that Gleckler's use of funds is improper, as the Operating Agreement provides that Gleckler is entitled to maintain a Capital Account and that "The Company shall have the right to make distributions of cash and property to the Members pro rata based on the relative Membership Interests. The timing and amount o distribution shall be determined by the Members in accordance with Delaware law." (Defendants' SOF, at Ex. A, §§ 2.3, 3.2).

Defendants object to the materiality of the statements in paragraph 73, as the distributions received by Gleckler have no relevance to any element of Dussias' claims.

**l. The Capital Contribution Was Reflected in Systems That Gleckler Regularly Reviewed.**

74. In addition to the fact that Gleckler and Dussias spoke repeatedly about Dussias' capital contribution before he made it and the fact that he told her he was going to make it weeks beforehand (*supra* ¶ 14-15, 21), the capital contribution was disclosed in TMG's Chase account, Chase statements, and accounting software—all of which Gleckler had access to and accessed regularly. Ex. 1 ¶ 57.

**RESPONSE:** Defendants reincorporate herein their responses to paragraphs 14-15 and 21. Defendants admit that Dussias made a deposit into TMG's Chase account that was visible on Chase and later on TMG's accounting software, and that Gleckler had access to and regularly accessed those platforms. Defendants dispute that Dussias' deposit was a "capital contribution" because Dussias was not a member of TMG given he did not sign a written document admitting him as a new member, nor did he receive written consent from all of the members, and no agreement was

ever reached by Defendants and Dussias. (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14; *see* citations to the record at Defendants' SOF ¶¶ 6, 39-61, 75-76). Defendants dispute Dussias' implication that Gleckler was aware of the deposit, as Defendants deny having knowledge of the deposit. (*See* citations to the record at Defendants' SOF ¶ 52; TMG' Answers to Supplemental Interrogatories, Ex. 1, ¶ 1).

Defendants object to the materiality of the statements in paragraph 74, as s the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

75. On or about June 30, 2020, Dussias sent by ACH payment the $20,000 capital contribution to TMG's primary Chase Account ending in [redacted] Ex. 1 ¶ 58. The deposit was received in TMG's Chase account on June 30, 2020. *Id.* It was reflected in [redacted] Exhibit 55 at JPM000953; Ex. 1 ¶ 58. Gleckler examined TMG's online Chase account on a near-daily basis. Ex. 1 ¶ 58-59.

**RESPONSE:** Defendants admit that Dussias sent a $20,000 book transfer to TMG's bank account on June 30, 2020, with the reference "[redacted] Defendants dispute that Gleckler examined TMG's online Chase account on a near-daily basis, as the Chase records show the precise dates the bank account was accessed. (*See* Ex.

56 to SOAF). Defendants dispute that Dussias' deposit was a "capital contribution" because Dussias was not a member of TMG given he did not sign a written document admitting him as a new member, nor did he receive written consent from all of the members, and no agreement was ever reached by Defendants and Dussias. (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14; *see* citations to the record at Defendants' SOF ¶¶ 6, 39-61, 75-76). Defendants dispute Dussias' implication that Gleckler was aware of the deposit, as Defendants deny having knowledge of the deposit. (*See* citations to the record at Defendants' SOF ¶ 52; TMG' Answers to Supplemental Interrogatories, Ex. 1, ¶ 1).

Defendants object to the materiality of the statements in paragraph 75, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

76. Documents produced by Chase show [redacted]. Exhibit 56 at p. 7 [redacted]. [redacted] Dx E, 222:11-226:13.

**<u>RESPONSE</u>:** Admitted.

77. The capital contribution was also reflected in TMG's accounting system called Everest. Ex. 1 ¶ 59. Gleckler reviewed TMG's financial data in Everest on a daily basis. *Id.* Gleckler had her own customized interface ("dashboard") in Everest that she kept open on her computer at nearly all times. *Id*.

**RESPONSE:** Defendants admit that Dussias' deposit was later reflected in Everest, and that Gleckler accessed Everest regularly. Defendants dispute any implication that Defendants input Dussias' deposit into Everest, as Dussias himself input his deposit into Everest as he was TMG's President and was responsible for TMG's accounting and finance at that time. (*See* TMG's Answers to Supplemental Interrogatories, attached as Exhibit 1, ¶ 1). Defendants dispute that Dussias' deposit was a "capital contribution" because Dussias was not a member of TMG given he did not sign a written document admitting him as a new member, nor did he receive written consent from all of the members, and no agreement was ever reached by Defendants and Dussias. (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14; *see* citations to the record at Defendants' SOF ¶¶ 6, 39-61, 75-76). Defendants dispute Dussias' implication that Gleckler was aware of the deposit, as Defendants deny having knowledge of the deposit. (*See* citations to the record at Defendants' SOF ¶ 52; TMG' Answers to Supplemental Interrogatories, Ex. 1, ¶ 1).

Defendants object to the materiality of the statements in paragraph 77, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that the documentary evidence

states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

78. In early 2020, Dussias sent TMG's accountant, Ray Conway, a trial balance prepared from the Everest accounting records reflecting his $20,000 capital contribution ("Capital Account DHD"). Exhibit 57 at DHD003749, [redacted]; Ex. 1 ¶ 60.

**<u>RESPONSE:</u>** Disputed, as Plaintiff does not cite to any evidence that he sent TMG's accountant the document in Exhibit 57, which is a Word document produced by Dussias without any description or identifying information. Defendants dispute that Dussias' deposit was a "capital contribution" because Dussias was not a member of TMG given he did not sign a written document admitting him as a new member, nor did he receive written consent from all of the members, and no agreement was ever reached by Defendants and Dussias. (Defendants' SOF, at Ex. E, Gleckler Dep., 161:8-162:16, 164:11-165:23, 166:24-168:14; *see* citations to the record at Defendants' SOF ¶¶ 6, 39-61, 75-76).

Defendants object to the statements in paragraph 78 because: Plaintiff fails to cite any evidence that the document in Exhibit 57 was sent; paragraph 78 lacks any foundation to establish the authenticity of the document in Exhibit 57, including who prepared it; and the document in Exhibit 57 is hearsay. Defendants further object to the materiality of the statements in paragraph 78, as the statements or conduct of the parties is not relevant to whether Dussias is a member of TMG under Delaware law and the terms of the Operating Agreement, which required Dussias to sign a written document regarding his admission as a new member and required the written consent of all members of TMG (*see* citations to the record at Defendants' SOF ¶ 6), or to whether the parties reached a meeting of the minds on the material terms of an agreement, especially given that

the documentary evidence states that any agreement is contingent on a formal, written and signed contract. (*See* citations to the record at Defendants' SOF ¶¶ 6, 21, 29, 39-61, 75-76).

Dated: March 17, 2025

Respectfully submitted,

COZEN O'CONNOR

By: <u>*/s/ James G. Argionis*</u>
Attorneys for Defendant

James G. Argionis (#6228773)
Corey T. Hickman (#6317871)
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
312-474-7900 Phone
312-382-8910 Fax
jargionis@cozen.com
chickman@cozen.com

**CERTIFICATE OF SERVICE**

I, James G. Argionis, an attorney, hereby certify that on March 17, 2025, I filed the foregoing **Response to Plaintiff's Statement of Additional Facts** electronically, via Electronic Case Filing (ECF), which shall send notice to all counsel of record.

/s/ *James G. Argionis*