# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEAN H. DUSSIAS<br><br>Plaintiff,<br><br>v.<br><br>MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:21-cv-05709<br><br>Hon. Judge Martha M. Pacold<br><br>Magistrate Judge Beth W. Jantz |

**DEFENDANTS MERRI GLECKLER AND TMG KREATIONS, LLC'S**
**ANSWERS TO PLAINTIFF'S SUPPLEMENTAL INTERROGATORIES**

Defendants/Counter-Plaintiffs, Merri Gleckler ("Gleckler") and TMG Kreations, LLC ("TMG"), hereby submit their answers to the Supplemental Interrogatories issued by Plaintiff, Dean H. Dussias ("Dussias").

## GENERAL OBJECTIONS

Defendants state the following objections to each and every one of Dussias' Interrogatories, which objections are hereby adopted and incorporated into each and every answer as though fully set forth therein. The assertion of the same, similar or additional objections in Defendants' specific objections to Interrogatories, or the failure to assert any additional objection, does not waive any of Defendants' objections set forth in this section or the following sections.

1. Defendants object to the Interrogatories to the extent that they are generally vague, ambiguous, unduly burdensome, overbroad, or otherwise seek information or documents that are not relevant to the claims or defenses involved in the pending action.

2. Defendants object to the Interrogatories to the extent that they seek information that is not proportional to the needs of the case.

3. Defendants object to the Interrogatories to the extent that the terms used therein are so vague and overly broad as to be essentially meaningless and/or limitless in scope.

4. Defendants object to the Interrogatories to the extent that they seek information or documents protected against discovery by any applicable privilege or immunity, including, but not limited to, the attorney-client privilege, the insurer-client privilege, the joint defense privilege, and the work-product doctrine. The fact that Defendants do not specifically object to an Interrogatory on the grounds that it seeks privileged information shall not be a waiver of the applicable privilege or immunity.

5. Defendants object to the Interrogatories to the extent that they contain incomplete and ambiguous hypothetical questions that improperly call for opinion testimony from Defendants, and nevertheless cannot be properly answered without further information.

6. Defendants' decision to provide information notwithstanding the objectionable nature of Dussias' Interrogatories should not be construed as (a) a waiver of Defendants' general or specific objections; (b) an agreement that requests for similar information will be treated in a similar manner; or (c) an agreement that the information provided is relevant or admissible.

7. Defendants object to the Interrogatories to the extent they purport to impose a burden of disclosing information not readily available to Defendants or equally available to Dussias. Defendants further object to the Interrogatories to the extent they purport to impose a burden of identifying documents not in Defendants' possession or control, or that cannot be found in the course of a reasonable search.

8. Defendants reserve the right to assert additional objections to the Interrogatories as appropriate and to supplement their answers based upon additional facts and evidence obtained later as their investigation is continuing.

**ANSWERS AND OBJECTIONS TO SUPPLEMENTAL INTERROGATORIES**

1. Identify the date that Defendants re-characterized the $20,000.00 payment from "Owners' Equity" to "Deposit from Dean Dussias."

**ANSWER:** In addition to the General Objections, Defendants object to this interrogatory as seeking information that is not relevant to the claims or defenses involved in the pending action, and that is protected from disclosure by the attorney-client privilege, accountant-client privilege, and/or any other applicable privilege. Defendants further object to this interrogatory as vague and ambiguous, as it does not identify or refer to any specific document, and Defendants are not aware of any document that uses the term "Owner's equity" regarding any deposit made by Plaintiff.

Subject to and without waiving these objections, Defendants produced a 2019-2021 balance sheet that, for certain months, under the "Equity" subsection, listed a $20,000 "Deposit by Dean Dussias." As TMG's President, Plaintiff was in charge of accounting and finance at the time this deposit was made, and he input and/or he instructed administrative personnel to input, the $20,000 deposit into the accounting software as "equity" and/or a "capital account" without Defendants' knowledge or consent. As explained in Defendants' answer, affirmative defenses and counterclaim, Defendants contend that Plaintiff unilaterally deposited the $20,000 without Defendants' agreement or knowledge, as Plaintiff was attempting to manipulate Defendants. Defendant Merri Gleckler objected to the deposit after she became aware of it and confronted Plaintiff about it, including telling him that the discussions/negotiations for Plaintiff to become a member of TMG required him to sign mutually agreed upon documents and telling him that none

of the discussions/negotiations or any of the drafts of the letter of intent ever contemplated that Plaintiff would make any payment for membership. Further, $20,000 is an arbitrary number and would not equate to 30% of the value of the company.

In early 2021, Ms. Gleckler had oral discussions with TMG's accountant, Ray Conway, and explained to him that Plaintiff was not a member of TMG and had no equity in the company until the parties agreed on final terms and a signed, amended operating agreement was executed. The parties never agreed on final terms and did not sign an amended operating agreement, letter of intent, or any other writing. Accordingly, the deposit by Plaintiff was correctly characterized by Mr. Conway as a liability on TMG's 2020 tax returns, and not any form of equity. Plaintiff is never listed or mentioned as a member, owner, partner, or having any form of equity on TMG's tax returns in 2020 or thereafter. TMG's 2020 tax returns were prepared at some point in early 2021, but Defendants lack knowledge as to the exact date the tax returns were completed.

In order to reconcile TMG's books and records with its tax returns, *i.e.* to ensure that its books and records appropriately match the information on TMG's tax returns, adjustments are routinely made to TMG's books and records after its tax returns are filed. In early May 2023, TMG made adjustments to its 2019-2021 balance sheets to accurately remove the designation Plaintiff himself had unilaterally made without authorization of Plaintiff's $20,000 deposit as any form of "equity," and instead reflect it as a liability as it had done on its tax returns.

2. Identify any and all Person(s) involved in the decision to re-characterize the $20,000.00 payment from "Owner's Equity" to "Deposit from Dean Dussias," and identify any and all written and/or oral communications discussing, referencing and/or relating to the same.

**ANSWER:** In addition to the General Objections, Defendants object to this interrogatory as seeking information that is not relevant to the claims or defenses involved in the pending action,

and that is protected from disclosure by the attorney-client privilege, accountant-client privilege, and/or any other applicable privilege. Defendants further object to this interrogatory as vague and ambiguous, as it does not identify or refer to any specific document, and Defendants are not aware of any document that uses the term "Owner's equity" regarding any deposit made by Plaintiff.

Subject to and without waiving these objections, Defendants produced a 2019-2021 balance sheet that, for certain months, under the "Equity" subsection, listed a $20,000 "Deposit by Dean Dussias." As TMG's President, Plaintiff was in charge of accounting and finance at the time this deposit was made, and he input and/or he instructed administrative personnel to input, the $20,000 deposit into the accounting software as "equity" and/or a "capital account" without Defendants' knowledge or consent. As explained in Defendants' answer, affirmative defenses and counterclaim, Defendants contend that Plaintiff unilaterally deposited the $20,000 without Defendants' agreement or knowledge, as Plaintiff was attempting to manipulate Defendants. Defendant Merri Gleckler objected to the deposit after she became aware of it and confronted Plaintiff about it, including telling him that the discussions/negotiations for Plaintiff to become a member of TMG required him to sign mutually agreed upon documents and telling him that none of the discussions/negotiations or any of the drafts of the letter of intent ever contemplated that Plaintiff would make any payment for membership. Further, $20,000 is an arbitrary number and would not equate to 30% of the value of the company.

In early 2021, Ms. Gleckler had oral discussions with TMG's accountant, Ray Conway, and explained to him that Plaintiff was not a member of TMG and had no equity in the company until the parties agreed on final terms and a signed, amended operating agreement was executed. The parties never agreed on final terms and did not sign an amended operating agreement, letter of intent, or any other writing. Accordingly, the deposit by Plaintiff was correctly characterized by

Mr. Conway as a liability on TMG's 2020 tax returns, and not any form of equity. Plaintiff is never listed or mentioned as a member, owner, partner, or having any form of equity on TMG's tax returns in 2020 or thereafter. TMG's 2020 tax returns were prepared at some point in early 2021, but Defendants lack knowledge as to the exact date the tax returns were completed.

In order to reconcile TMG's books and records with its tax returns, *i.e.* to ensure that its books and records appropriately match the information on TMG's tax returns, adjustments are routinely made to TMG's books and records after its tax returns are filed. In early May 2023, TMG made adjustments to its 2019-2021 balance sheets to accurately remove the designation Plaintiff himself had unilaterally made without authorization of Plaintiff's $20,000 deposit as any form of "equity," and instead reflect it as a liability as it had done on its tax returns.

The persons involved in the decision to make the adjustments were Merri Gleckler and TMG's accountant, Ray Conway. Defendants are not aware of any written communications regarding these adjustments. Ms. Gleckler had oral conversations with Mr. Conway regarding the adjustments during which she explained that the documents incorrectly showed the $20,000 deposit by Plaintiff as "equity," which is inconsistent with TMG's tax returns. Ms. Gleckler remembers that her oral discussions with Mr. Conway related to the above and that the deposit was unauthorized and company records needed to be corrected for tax purposes, but does not recall the exact specifics of any of those conversations.

Dated: December 20, 2023

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ *James G. Argionis*
Attorney for Defendant

James G. Argionis
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-7900
jargionis@cozen.com
chickman@cozen.com

**VERIFICATION**

I, Merri Gleckler, states under penalty of perjury that she is authorized to answer these Supplemental Interrogatories on behalf of TMG Kreations, LLC, and that the answers are true and correct to the best of her knowledge, information, and belief.

Date: 12/20/23

Merri Gleckler – CEO of TMG Kreations, LLC

## CERTIFICATE OF SERVICE

I, James G. Argionis, an attorney, hereby certify that on December 20, 2023, I served the foregoing **Defendants Merri Gleckler and TMG Kreations' Answers to Plaintiff's Supplemental Interrogatories** on the following counsel of record:

Matthew M. Showel (mmshowel@gct.law)
Brittany N. Bermudez (bnbermudez@gct.law)
Golan Christie Taglia LLP
70 W. Madison St.
Suite 500
Chicago, IL 60602

/s/ *James G. Argionis*

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEAN H. DUSSIAS<br><br>Plaintiff,<br><br>v.<br><br>MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:21-cv-05709<br><br>Hon. Judge Martha M. Pacold<br><br>Magistrate Judge Beth W. Jantz |

**DEFENDANTS MERRI GLECKLER AND TMG KREATIONS, LLC'S**
**<u>SUPPLEMENTAL ANSWER TO PLAINTIFF'S INTERROGATORY NO. 11</u>**

Defendants/Counter-Plaintiffs, Merri Gleckler ("Gleckler") and TMG Kreations, LLC ("TMG"), hereby submit their supplemental answer to Interrogatory No. 11 issued by Plaintiff, Dean H. Dussias ("Dussias").

**<u>ANSWER AND OBJECTIONS TO INTERROGATORY NO. 11</u>**

11. Identify all employees, independent contractors, and owners of Defendant TMG who received monthly healthcare premiums and/or vehicle/expense allowances. For each such Person identified, please state whether they are an employee, independent contractor or owner of Defendant TMG and the corresponding months that they received the monthly healthcare premiums and/or vehicle/expense allowances.

**<u>ANSWER:</u>** Defendants object to this Interrogatory as unduly burdensome, overbroad in time and scope, and seeking confidential HIPAA protected health information about third parties. Defendants further object to this Interrogatory on the grounds that the benefits provided to employees and independent contractors are not relevant to any claims or defenses in this case, and that information is not proportional to the needs of this case. Subject to the foregoing objections, health care premiums were provided to all employees at 50% if they elect; Gleckler received 100%; Dussias initially elected not to utilize TMG's insurance, but later switched to TMG's insurance

plan and, as President of TMG, received 100%; two other employees (Director of Sales and a Sales Account Manager) received 100%.

Dated: October 2, 2023

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ *James G. Argionis*
Attorney for Defendants

James G. Argionis
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-7900
jargionis@cozen.com
chickman@cozen.com

## CERTIFICATE OF SERVICE

I, James G. Argionis, an attorney, hereby certify that on October 2, 2023, I served the foregoing **Defendants Merri Gleckler and TMG Kreations' Supplemental Answer to Interrogatory No. 11** on the following counsel of record:

Matthew M. Showel (mmshowel@gct.law)
Brittany N. Bermudez (bnbermudez@gct.law)
Golan Christie Taglia LLP
70 W. Madison St.
Suite 500
Chicago, IL 60602

/s/ *James G. Argionis*



LEGAL\66208502\1

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEAN H. DUSSIAS<br><br>Plaintiff,<br><br>v.<br><br>MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:21-cv-05709<br><br>Hon. Judge Martha M. Pacold<br><br>Magistrate Judge Beth W. Jantz |

**DEFENDANTS MERRI GLECKLER AND TMG KREATIONS, LLC'S**
**ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendants/Counter-Plaintiffs, Merri Gleckler ("Gleckler") and TMG Kreations, LLC ("TMG"), hereby submit their answers to the First Set of Interrogatories issued by Plaintiff, Dean H. Dussias ("Dussias").

## GENERAL OBJECTIONS

Defendants state the following objections to each and every one of Dussias' Interrogatories, which objections are hereby adopted and incorporated into each and every answer as though fully set forth therein. The assertion of the same, similar or additional objections in Defendants' specific objections to Interrogatories, or the failure to assert any additional objection, does not waive any of Defendants' objections set forth in this section or the following sections.

1. Defendants object to the Interrogatories to the extent that they are generally vague, ambiguous, unduly burdensome, overbroad, or otherwise seek information or documents that are not relevant to the claims or defenses involved in the pending action.

2. Defendants object to the Interrogatories to the extent that they seek information that is not proportional to the needs of the case.

3. Defendants object to the Interrogatories to the extent that the terms used therein are so vague and overly broad as to be essentially meaningless and/or limitless in scope.

4. Defendants object to the Interrogatories to the extent that they seek information or documents protected against discovery by any applicable privilege or immunity, including, but not limited to, the attorney-client privilege, the insurer-client privilege, the joint defense privilege, and the work-product doctrine. The fact that Defendants do not specifically object to an Interrogatory on the grounds that it seeks privileged information shall not be a waiver of the applicable privilege or immunity.

5. Defendants object to the Interrogatories to the extent that they contain incomplete and ambiguous hypothetical questions that improperly call for opinion testimony from Defendants, and nevertheless cannot be properly answered without further information.

6. Defendants' decision to provide information notwithstanding the objectionable nature of Dussias' Interrogatories should not be construed as (a) a waiver of Defendants' general or specific objections; (b) an agreement that requests for similar information will be treated in a similar manner; or (c) an agreement that the information provided is relevant or admissible.

7. Defendants object to the Interrogatories to the extent they purport to impose a burden of disclosing information not readily available to Defendants or equally available to Dussias. Defendants further object to the Interrogatories to the extent they purport to impose a burden of identifying documents not in Defendants' possession or control, or that cannot be found in the course of a reasonable search.

8. Defendants reserve the right to assert additional objections to the Interrogatories as appropriate and to supplement their answers based upon additional facts and evidence obtained later as their investigation is continuing.

**ANSWERS AND OBJECTIONS TO INTERROGATORIES**

1. Identify all Persons who assisted in responding to these Interrogatories, including but not limited to any Person who provided any information concerning these Interrogatories or the answers thereto and, with respect to each such Person, identify:

a. The assistance or information given by such Person; and
b. The Interrogatory answer(s) to which such assistance or information relates.

**ANSWER:** Merri Gleckler assisted in answering each of the interrogatories, including providing all substantive information herein.

2. Identify all Persons with knowledge or information relating to the allegations contained in the Complaint and Defendants' Answer, Affirmative Defenses, and Counterclaim, and for each Person identified, state his/her full name, present address, and the substance of his/her alleged knowledge or information.

**ANSWER:** Defendants direct Plaintiff to their Rule 26(a)(1) initial disclosures.

3. Identify all Persons who have any Documents, Statements, financial records, business records, notes, or memorandums pertaining to the subject matter of the Complaint and/or Defendants' Answer, Affirmative Defenses, and Counterclaim, and the nature of the Document(s) he/she/it has.

**ANSWER:** Defendants object to this Interrogatory as vague, overly burdensome, and requesting information in the possession of third parties and not kept by Defendants in the ordinary course of business. Defendants further object to this Interrogatory as seeking information protected

by the attorney-client privilege. Subject to the foregoing objections, Defendants possess the categories of documents described in their Rule 26(a)(1) initial disclosures. Further answering, additional documents relevant to the discussions and negotiations between the parties may be in the possession of Dean Dussias, Cheryl Borland and Fran Griesing, and Ray Conway; additional Documents relating to Defendants' Counterclaim may be in the possession of the entities listed therein, including but not limited to, NetSuite, Anatta, and Bergen. Investigation continues.

4. State whether you, your attorney, or any other person representing you, has conferred with any person who claims to have any knowledge of any facts and circumstances alleged in the Complaint, and/or Defendants' Answer, Affirmative Defenses, and Counterclaim, and if so, state for each person with whom you, your attorney or other representative has conferred:

a. The name of this person;
b. The address of this person;
c. The occupation of this person;
d. The date and substance of any conversation with this person;
e. A summary of the knowledge this person claims to have;
f. Identify any documents referencing, relating to or concerning said communication;
g. Whether this person gave you or your attorney or other representative a written or recorded statement; and
h. The name and address of the person having present possession of
i. any statement.

**ANSWER:** Defendants object to this Interrogatory to the extent it seeks information protected by the work-product doctrine. Subject to the foregoing objection, other than interviews conducted by litigation counsel that are protected by the work-product doctrine,[1] pursuant to Rule

[1] *See e.g.*, *Smith-Brown v. Ulta Beauty, Inc.*, 18 C 610, 2019 WL 2644243, at *5 (N.D. Ill. June 27, 2019) ("Thus, interrogatory 13 is asking defendants to identify the people their lawyers selected to interview, *i.e.*, to reveal their lawyers' mental processes. That is an impermissible invasion of work product."); *Menendez v. Wal-Mart Stores E. L.P.,* 1:10-CV-00053, 2010 WL 3038440, at *3 (N.D. Ind. Aug. 4, 2010) ("[I]nterrogatories 'cross [the] line' with respect to attorney work product if they seek not only who has been interviewed and a brief statement of what they said, but also who conducted the interview.").

33(e), Defendants will produce non-privileged documents, if any, containing any other Communications Plaintiffs had with any person or entity relating to Dussias.

5. Identify the date Plaintiff commenced performing work for and/or on behalf of Defendant TMG and the date that Plaintiff first received compensation from Defendant TMG in connection with any work he performed for and/or on behalf of Defendant TMG.

**ANSWER:** Defendants object to this Interrogatory on the grounds that "performing work for" is vague and ambiguous. Subject to the foregoing objection, Dussias performed work as a consultant for TMG in or about 2009, and contemporaneously received compensation for that consulting work.

6. Identify any and all monies or payments made by Defendant TMG to Plaintiff and Defendant Gleckler, and any and all monies or payments made by Plaintiff to Defendant TMG.

**ANSWER:** Defendants object to this Interrogatory as compound, unduly burdensome, overbroad in time and scope, and in part seeking information that is equally available to Dussias through such records as his tax returns, his banking records, and payroll records issued to him. Defendants further object to this Interrogatory on the grounds that the payments made by TMG to Gleckler are not relevant to any claims or defenses in this case, and that information is not proportional to the needs of this case. Subject to the foregoing objections, pursuant to Rule 33(d) and after an agreed upon protective order is entered in this case to protect financial information, Defendants will produce non-privileged documents reflecting the compensation payments made

by TMG to Plaintiff and Gleckler during the time Dussias was employed by TMG, and any payments made by Plaintiff to TMG, if any.

7. Identify the last four digits of the bank accounts and the corresponding financial institutions associated with Defendant TMG's owner's equity and payroll accounts.

**ANSWER:** Defendants object to this Interrogatory as seeking information that is not relevant to any claims or defenses in this case, and that is confidential. Subject to the foregoing objection, TMG keeps a single checking account with Chase Bank, last four digits 3741.

8. Identify all compensation (salary, owner's draws, distributions, bonuses, etc.) paid to Plaintiff and/or Defendant Gleckler on behalf of Merri G, LLC by Defendant TMG. For each compensation identified, please identify the date that Plaintiff and/or Defendant Glecker received the compensation, and the last four digits of the bank account and the corresponding financial institution from which that compensation was derived.

**ANSWER:** Defendants object to this Interrogatory as unduly burdensome, overbroad in time and scope, and in part seeking information that is equally available to Dussias. Defendants further object to this Interrogatory on the grounds that the payments made by TMG to Gleckler are not relevant to any claims or defenses in this case, and that information is not proportional to the needs of this case. Subject to the foregoing objections, all payments of any kind made by TMG were made from the 3741 checking account. Further, pursuant to Rule 33(e) and after an agreed upon protective order is entered in this case to protect financial information, Defendants will produce non-privileged documents reflecting compensation paid to Dussias, as well as compensation paid to Gleckler during the time period that Dussias was employed by TMG.

9. Identify all compensation (salary, owner's draws, distributions, bonuses, etc.) paid to employees and/or independent contractors of Defendant TMG. For each compensation identified, please identify the date that the Person received the compensation, and the last four digits of the bank account and the corresponding financial institution from which that compensation was derived.

**ANSWER:** Defendants object to this Interrogatory as unduly burdensome, overbroad in time and scope, and seeking confidential information about third parties. Defendants further object to this Interrogatory on the grounds that the payments made to employees and independent contractors are not relevant to any claims or defenses in this case, and that information is not proportional to the needs of this case. Subject to the foregoing objections, every TMG employee other than sales employees receive an annual bonus. All payments of any kind made by TMG were made from the 3741 checking account. Further answering, pursuant to Rule 33(e) and after an agreed upon protective order is entered in this case to protect financial information, Defendants will produce documents reflecting compensation paid to Dussias, as well as compensation paid to Gleckler during the time period that Dussias was employed by TMG.

10. Identify all Persons who received monthly distributions and/or owner's draws from Defendant TMG. For each monthly distribution or owner's draw, please identify the date that the Person received the compensation, whether that compensation was a distribution or an owner's draw, and the last four digits of the bank account and the corresponding financial institution from which that compensation was derived.

**ANSWER:** Defendants object to this Interrogatory as unduly burdensome and overbroad in time and scope. Defendants further object to this Interrogatory on the grounds that

the distributions and owner's draws received are not relevant to any claims or defenses in this case, and that information is not proportional to the needs of this case. Subject to the foregoing objections, following the execution of the MIPA with Reingold, only Gleckler received any draws or distributions. Gleckler and Dussias agreed that once he acquired a membership interest he would receive a monthly draw, but that any payments prior to that time constituted Dussias' salary as an employee of TMG, and any purported deviation from such payments in the payroll were due to Dussias making unauthorized changes to how he would be paid, without providing advance notice to Gleckler. All payments of any kind made by TMG were made from the 3741 checking account. Subject to Rule 33(e) and after an agreed upon protective order is entered in this case to protect financial information, TMG will produce non-privileged documents reflecting compensation received by Gleckler and Dussias during the time period that Dussias was employed by TMG.

11. Identify all employees, independent contractors, and owners of Defendant TMG who received monthly healthcare premiums and/or vehicle/expense allowances. For each such Person identified, please state whether they are an employee, independent contractor or owner of Defendant TMG and the corresponding months that they received the monthly healthcare premiums and/or vehicle/expense allowances.

**ANSWER:** Defendants object to this Interrogatory as unduly burdensome, overbroad in time and scope, and seeking confidential HIPAA protected health information about third parties. Defendants further object to this Interrogatory on the grounds that the payments and benefits made to employees and independent contractors are not relevant to any claims or defenses in this case, and that information is not proportional to the needs of this case. Subject to the foregoing objections, health care premiums were provided to all employees at 50% if they elect; Gleckler

received 100%; Dussias initially elected not to utilize TMG's insurance, but later switched to TMG's insurance plan and, as President of TMG, received 100%; other employees, including certain sales employees, received 100%.

Further, Dussias began leasing a vehicle and paying for it through the company without providing advance notice to Gleckler and without her prior consent. There were no other vehicles paid for by TMG.

TMG did not maintain any expense accounts. TMG had a company AMEX corporate card that was set up by TMG's then-President, Dussias, that was to be used for company expenses only and paid for out of the 3741 checking account.

Pursuant to Rule 33(e) and after an agreed upon protective order is entered in this case to protect financial information, Defendants will produce non-privileged documents relating to Dussias' vehicle lease expenses as well as Gleckler and Dussias' company credit card expenses during the time that Dussias was employed by TMG.

12. Identify all duties, obligations and/or responsibilities of Cedric Reingold while he was a member and co-owner of Defendant TMG, the date that Cedric Reingold's ownership interest in Defendant TMG was terminated, the date that the Membership Interest Purchase Agreement was executed and produce a copy of said document.

**ANSWER:** Defendants object to this Interrogatory as impermissibly compound, and on the grounds that the duties, obligations, and responsibilities of Reingold are not relevant to any claims or defenses in this case. Defendants further object on the grounds that this Interrogatory seeks information that is confidential. Subject to the foregoing objections, the MIPA was executed on September 18, 2019, and it contains a confidentiality clause so Gleckler cannot produce it

especially without a protective order and possibly an "attorneys' eyes only" designation – guidance from the court and meet and confer sessions among counsel are warranted on the issue of producing the MIPA. Further answering, Reingold's duties as an owner of TMG included, but were not limited to, day-to-day accounting, managing accounts receivable and accounts payable, working in the warehouse, inventory reconciliation, managing containers, and book-keeping.

13. Identify all duties, obligations and/or responsibilities of Plaintiff while he was employed and/or associated with and/or had an ownership interest in Defendant TMG.

**ANSWER:** Defendants object to this Interrogatory on the grounds that it seeks information that is equally available to Dussias. Subject to the foregoing objection, Dussias, as President of TMG, had duties (that he failed to adequately perform) including, but not limited to, managing TMG's finances, leveraging technology to help grow the business, the implementation of a new website, the conversion to a new operating system, overseeing the company's move to a new third party logistics warehouse (moving away from the self-managed warehouse TMG had used for over a decade), assisting Gleckler in managing various company website accounts, managing accounts receivable and accounts payable, working in the warehouse, reviewing legal agreements, and seeking licenses and international opportunities.

14. Identify all Communications wherein Plaintiff was referred to a co-owner of Defendant TMG, member of Defendant TMG, partner of Defendant Gleckler in Defendant TMG, and/or having an equity interest in Defendant TMG.

**ANSWER:** Subject to Rule 33(e), Defendants will produce non-privileged documents, if any, responsive to this Interrogatory.

15. Identify all Communications wherein You informed Plaintiff and/or other third parties that Plaintiff was not an owner, partner, or member of and/or did not have an equity interest in Defendant TMG, and any subsequent actions You took related thereto.

**ANSWER:** Defendants object to this Interrogatory as impermissibly overbroad, and unduly burdensome, and vague as to the meaning of "subsequent actions you took." Subject to the foregoing objections, pursuant to Rule 33(e), Defendants will produce non-privileged documents, if any, responsive to this Interrogatory, including but not limited to the negotiations related to term sheets exchanged, and communications related to those term sheets both oral and written that informed Plaintiff and others that while Plaintiff was negotiating and taking steps towards potentially becoming a member, Plaintiff and Gleckler had not completed negotiations nor had they completed the requirements of preparing and executing a writing or of complying with the written amendment requirement of the Operating Agreement.

16. Identify each and every alleged performance deficiency of Plaintiff in connection with his employment or association with and/or ownership of Defendant TMG, and identify by bates number any and all Documents relating to, referring or supporting each alleged performance deficiency, as alleged in the Counterclaim.

**ANSWER:** Defendants object to this Interrogatory as impermissibly compound, overbroad, unduly burdensome, and seeking a narrative that is better suited for a deposition. Subject to the foregoing objections, Defendants direct Dussias to the detailed allegations in their Counterclaim, which contain the performance deficiencies that are the basis of Defendants' claims. Further, pursuant to Rule 33(e), Defendants will produce non-privileged documents responsive to

this Interrogatory, including certain e-mails from the various entities mentioned in the Counterclaim that discuss Dussias' performance as an employee of TMG. Investigation continues.

17. State and quantify with particularity the amount and category of any costs, expenses, losses, or other damages that you are claiming as a result of the acts and/or omissions of Plaintiff alleged in the Counterclaim, including the reason(s) and basis for each category claimed and an explanation of how you calculated each amount, including but not limited to the claims for compensatory damages in excess of $1 million.

**ANSWER:** Defendants object to this Interrogatory as impermissibly compound and premature, as Defendants intend to retain an expert to calculate damages with particularity. Subject to the foregoing objections, Defendants direct Dussias to their Rule 26(a)(1) Initial Disclosures which describe the damages sought by Defendants in their Counterclaim. Further answering, pursuant to Rule 33(e) and after an agreed upon protective order is entered in this case to protect financial information, Defendants will produce non-privileged documents responsive to this Interrogatory.

18. Identify all potential witnesses that you expect to call at trial; and, with respect to each witness, describe the facts and opinions to which he or she is expected to testify, and identify the documents upon which such facts or opinions are based.

**ANSWER:** Defendants object to this Interrogatory as premature, as Defendants have not yet identified the witnesses they may call at trial, and Defendants will disclose any such witnesses in accordance with any scheduling order entered by the Court and the Federal Rules of Civil Procedure. Further answering, Defendants direct Plaintiff to their Rule 26(a)(1) initial

disclosures which may be supplemented per the applicable rules during or after discovery and prior to any trial.

19. Identify any documents you intend to use at trial and, for each such document, describe any facts the document tends to prove or disprove.

**ANSWER:** Defendants object to this Interrogatory as premature, as Defendants have not yet identified the documents they intend to use at trial, and Defendants will disclose any such documents in accordance with any scheduling order entered by the Court and the Federal Rules of Civil Procedure.

20. Identify all experts you intend to call to testify at trial. With respect to each such person state the following information:

a. The subject matter(s) upon which each person is expected to testify;
b. The substance of the facts and/or opinions as to which each person is expected to testify;
c. A summary of grounds for each such opinion;
d. The qualifications of such person to provide opinion testimony;
e. The terms by which each such person has been retained to testify; and
f. Identify all documents created, reviewed and or relied upon in forming such opinion.

**ANSWER:** Defendants object to this Interrogatory as compound. Defendants further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work-product doctrine. Defendants further object to this Interrogatory as premature, as Defendants have not yet identified expert witnesses that may be called at trial, and will disclose any such witness(es) in accordance with any scheduling order entered by the Court and the Federal Rules of Civil Procedure.

Dated: February 27, 2023

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ *James G. Argionis*
Attorney for Defendants

James G. Argionis
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-7900
jargionis@cozen.com
chickman@cozen.com

## VERIFICATION

I, Merri Gleckler, states under penalty of perjury that she is authorized to answer these Interrogatories on behalf of TMG Kreations, LLC, and that the answers are true and correct to the best of her knowledge, information, and belief.

Date: 2/16/2023

Merri Gleckler – CEO of TMG Kreations, LLC



LEGAL\60438979\1

## CERTIFICATE OF SERVICE

I, James G. Argionis, an attorney, hereby certify that on February 27, 2023, I served the foregoing **Defendants Merri Gleckler and TMG Kreations' Answers to Plaintiff's First Set of Interrogatories** on the following counsel of record:

David J. Ben-Dov (djbendov@gct.law)
Brittany N. Bermudez (bnbermudez@gct.law)
Golan Christie Taglia LLP
70 W. Madison St.
Suite 500
Chicago, IL 60602

/s/ *James G. Argionis*

# EXHIBIT 4

10/14/20 9:35:53 AM CDT

please consider calling Chuck - there may be background there that helps us - we will prevail 😊

10/14/20 9:39:31 AM CDT

Ok

10/14/20 9:42:02 AM CDT

we are on with Ray for 8:15am PDT

10/14/20 9:42:15 AM CDT

👍

10/14/20 3:14:49 PM CDT

Hi there - could we do two brief topics?  will give you a quick call…

10/14/20 3:17:44 PM CDT

10?

10/14/20 3:18:04 PM CDT

yes

10/14/20 7:02:33 PM CDT

On phone call in 5 .

10/14/20 7:02:54 PM CDT

Fran said she'll call us in 1- 1 1/2 hrs?

10/14/20 7:03:04 PM CDT

She has company.

10/14/20 7:11:36 PM CDT

No problem

10/14/20 7:24:06 PM CDT

https://virtualfourseasons.com/

10/21/20 9:28:00 AM CDT

Me too

10/21/20 9:43:46 AM CDT

?? Right?

10/21/20 9:52:16 AM CDT

Yes

10/21/20 10:58:33 AM CDT

Fran in two minutes, right?

10/21/20 11:07:58 AM CDT

👍

10/22/20 11:06:18 AM CDT

Are we getting back on?

10/22/20 11:06:40 AM CDT

No

10/22/20 5:00:13 PM CDT

hi - would you send me meeting link please

10/22/20 5:00:52 PM CDT

???

10/22/20 5:01:10 PM CDT

for the call with Jess

10/22/20 5:01:17 PM CDT

David google meeting

10/22/20 5:01:36 PM CDT

I don’t I ow if I received . Let me check

# EXHIBIT 5

**FRONT PAGE OF WEBSITE**

Dear Loyal Customers,

All of us at Kashwere wish you good health and the comfort of being with those you love during this uncertain time.

As our way of giving all of you a kashwere hug were extending a 25% discount and free shipping off our entire site thru May 1st.

Be Well

Merri Gleckler

CEO

*"I've learned that people will forget what you said, people will forget what you did, but people will never forget how you made them feel." -Maya Angelou*

---

**FOR ACCOUNTS:**

Dear X,

In recognizing the financial burden of the current situation, as our loyal partner Kashwere would love to offer you the opp to give your loyal guests a "kashwere hug" and benefit from

a revenue share. It's our way of saying thank you for your partnership and together letting your guest know they too are appreciated.

Should you want to participate please contact me to learn more.

Wishing you and your family good health and the comfort of being together during this uncertain time.

Lisa

---

*"I've learned that people will forget what you said, people will forget what you did, but people will never forget how you made them feel." -Maya Angelou*

**PROPERTIES TO SEND TO THEIR GUESTS:**

Dear Loyal Guests,

Recognizing in this uncertain time you are unable to visit us, so this time were coming to you to let you know how much we care. With our valued partner kashwere, a brand loved for its beauty and comfort, we invite you to visit  their website as our guest to purchase any item and receive a preferred discount of 30%

Wishing you good health and the comfort of being with those you love.

*Warm Regards,*

*X Property*

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEAN H. DUSSIAS<br><br>Plaintiff,<br><br>v.<br><br>MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited liability company, d/b/a KASHWERE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:21-cv-05709<br><br>Hon. Judge Martha M. Pacold<br><br>Magistrate Judge Beth W. Jantz |

**DEFENDANTS MERRI GLECKLER AND TMG KREATIONS, LLC'S**
**AMENDED AND SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 17**

Defendants/Counter-Plaintiffs, Merri Gleckler ("Gleckler") and TMG Kreations, LLC ("TMG"), hereby submit their supplemental, amended answer to Interrogatory No. 17 of the First Set of Interrogatories issued by Plaintiff, Dean H. Dussias ("Dussias").

17. State and quantify with particularity the amount and category of any costs, expenses, losses, or other damages that you are claiming as a result of the acts and/or omissions of Plaintiff alleged in the Counterclaim, including the reason(s) and basis for each category claimed and an explanation of how you calculated each amount, including but not limited to the claims for compensatory damages in excess of $1 million.

**ANSWER:** TMG is seeking the following categories of damages: (i) disgorgement of compensation and benefits paid to Dussias during the time he was in breach of his fiduciary duty; (ii) out-of-pocket expenses relating to specific vendors that Dussias was responsible for and mismanaged while he was an employee, (iii) damage to reputation, including lost customer traffic from the website and resulting lost profits; and (iv) punitive damages.

As to (i) (disgorgement of compensation and benefits paid to Dussias during the time he was in breach of his fiduciary duty), TMG intends to rely on and refers Plaintiff to documents bates labeled TMG_00590494 through TMG_00590496, TMG_00590498 through TMG_00590516, TMG_00590518 through TMG_00590552, and TMG_00590648 through TMG_00590663, which include Dussias' Form W-2 and Form 1099-NEC, and payroll records relating to Dussias.

As to (ii) (out-of-pocket expenses relating to specific vendors that Dussias was responsible for and mismanaged while he was an employee), TMG intends to rely on and refers Plaintiff to documents bates labeled TMG_00589502 through TMG_00589503, TMG_00589568 through TMG_00589589, TMG_00589603 through TMG_00589605, TMG_00589610 through TMG_00589672, TMG_00589681, TMG_00589804 through TMG_00589885, and TMG_00590553 through TMG_00590557, which includes invoices, ledgers, receipts, emails, and other documents quantifying, supporting, and/or relating to TMG's claimed damages for out-of-pocket expenses incurred because of Dussias' misconduct.

As to (iii) (damage to reputation, including lost customer traffic from the website and resulting lost profits), TMG intends to seek damages for reputational harm to the company caused by Dussias' misconduct. TMG's reputational harm is predicated on a loss of consumer confidence that directly arose from Dussias' failures. (*See* Counterclaim ¶¶ 60-84). Dussias failed to manage TMG's warehouse and failed to properly vet, manage, and oversee TMG's third-party logistics and e-commerce fulfillment vendors, including failing to provide appropriate scope of work, training/guidelines, guidance, and instruction. (*See* Counterclaim ¶¶ 73-77). As a result, Bergen Logistics was unable to keep up with TMG's shipping needs, routinely shipped products late, shipped products incorrectly, damaged products in transit, mixed products in cartons or had the

wrong products altogether in a mislabeled carton, cut the factory carton tops off of all of TMG's products in storage requiring TMG to re-box, repackage, and sometimes discard those products, failed to put proper UPC codes on products after Dussias failed to have this done prior to inventory being delivered to Bergen. This caused lost consumer confidence on both the consumer-side and the wholesale-side, in that customers and wholesalers often received products late or not at all, received double-shipped products, received the wrong products or damaged products, and/or received boxes of products that were falling apart or not packed correctly, including during the busy holiday seasons when TMG was being relied on for gifts and holiday promotions. Dussias also failed to budget to determine the affordability of vendors, including Bergen Logistics and NetSuite, causing TMG to pay exorbitant sums of money for vendors and products with a scale of operations that far exceed the needs or affordability of a company of TMG's size, causing further strain on the business and less resources available to dedicate to customer service. Dussias failed to properly vet, manage, and oversee Anatta Design, which Dussias engaged to build TMG's new website. The resulting website was extremely slow, frequently crashed, reduced TMG's footprint in search engines, and was not user-friendly. This caused lost consumer confidence and lower website traffic in that customers likely would not return to the website or make other efforts to purchase TMG products after a poor user experience on the website. Ultimately, TMG had to completely replace the website with a new website built from scratch, causing further lost consumer confidence during the period when TMG was transitioning between websites and did not have an adequate website from which consumers could purchase products. Dussias also placed TMG's Amazon and other accounts in his name such that Gleckler was unable to access those accounts in a timely fashion following Dussias' departure from TMG, leading to delays in processing payments and shipping products. Dussias also belittled Gleckler to other TMG

employees and vendors, including telling employees not to disclose things to her and to keep her "out of the loop," which sowed a dysfunctional internal environment at TMG, damaging its reputation as a company to work for and/or to do business with. Dussias also failed to properly set up, oversee, and manage TMG's account with Zonos, an international shipping vendor, which caused a loss in consumer confidence in that international customers were unable to place orders for products during the time that the Zonos account was not properly managed. All of the above items were especially damaging to the reputation of TMG given that it is a brand selling luxury, high-quality goods, and customers and wholesalers purchasing such goods expect to receive the highest level of customer service and products.

As to damages and/or reputational harm relating to lost customer traffic from the website specifically, TMG intends to rely on and refers Plaintiff to documents bates labeled TMG_00589590 through TMG_00589598, TMG_0591073 through TMG_0591160, and TMG_0596437, which includes Google Analytics data and other documents relating to the website.

Finally, TMG intends to seek punitive damages against Dussias based on his intentional conduct described in TMG's Counterclaim, including but limited to taking unilateral and unauthorized actions to create the outward appearance that he was a member or manager of TMG, without Gleckler's consent, and sabotaging and grossly mismanaging TMG as its President as part of his scheme to defraud Gleckler, steal the business and take control of TMG.

Dated: October 3, 2024

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ *James G. Argionis*
Attorney for Defendants

James G. Argionis
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-7900
jargionis@cozen.com
chickman@cozen.com

## VERIFICATION

I, Merri Gleckler, state under penalty of perjury that she is authorized to answer these Interrogatories on behalf of TMG Kreations, LLC, and that the answers are true and correct to the best of her knowledge, information, and belief.

Date: October 3, 2024

Merri Gleckler – CEO of TMG Kreations, LLC

## CERTIFICATE OF SERVICE

I, James G. Argionis, an attorney, hereby certify that on October 3, 2024, I served the foregoing **Defendants Merri Gleckler and TMG Kreations' Supplemental and Amended Answer to Interrogatory 17** on the following counsel of record:

Matt Showel
Golan Christie Taglia LLP
70 W. Madison St.
Suite 500
Chicago, IL 60602
mmshowel@gct.law

/s/ *James G. Argionis*

# EXHIBIT 7

1/24/20 10:24:36 AM CST

K, will add

1/24/20 10:24:46 AM CST

Call you after I add?

1/24/20 12:43:15 PM CST

I’m speaking to Fran at noon about Cedrics email .

Send me what you have regarding the operating agreement as she keeps telling me I have to take care of all this . You said you have something
prepared so please send and we can discuss further when u r in town .

Otherwise Fran will start preparing something for you and I to discuss so we get the ball rolling .

1/24/20 12:43:33 PM CST

I’m also going to get her feedback re Russ

1/24/20 1:27:49 PM CST

What info is Cedric wanting?

1/24/20 1:28:07 PM CST

R these consistent with what he gave me

1/24/20 1:28:09 PM CST

below the line operating expenses

1/24/20 1:28:24 PM CST

yes, it is what he gave you, we have given him less

1/24/20 1:29:36 PM CST

also, in doing the financials with me, he has for the most part already seen the numbers, but not taken anything with him - it’s all familiar to him - I don’t think we lose anything by providing and he gets next to nothing new as well