UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEAN H. DUSSIAS, | ) |
| Plaintiff, | ) |
| v. | ) No. 21-cv-5709 |
| | ) Judge April M. Perry |
| MERRI GLECKLER and TMG KREATIONS, LLC, a Delaware limited Liability company, d/b/a KASHWERE, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This case involves a dispute over membership in a limited liability company. In 2019, Dean Dussias ("Plaintiff") and Defendant Merri Gleckler began discussing the possibility of Plaintiff joining as a member of Defendant TMG Kreations, LLC d/b/a Kashwere ("TMG"), a Delaware limited liability company Gleckler had founded with a business partner in 2009. For a time, Plaintiff worked for TMG as its President while continuing to discuss with Gleckler Plaintiff's membership in TMG. The parties never signed any written documents confirming Plaintiff's membership.

In April 2021, Plaintiff was terminated from TMG. At this time, Plaintiff believed he was a member of TMG and sued Gleckler and TMG in Illinois state court seeking a declaratory judgment and other relief.[1] Defendants removed the case to federal court in October 2021, and the parties have been litigating ever since.

---

[1] The six counts in Plaintiff's complaint are for declaratory judgment as to his membership interest in TMG (Count I), accounting and constructive trust as to the same (Count II), breach of contract (Count III), breach of fiduciary duty (Count IV), promissory estoppel (Count V), and unjust enrichment (Count VI, pled in the alternative to Count III). Doc. 1-3 at 13-19.

Pending now is Defendants' motion for summary judgment on all of Plaintiff's claims. The central issue raised in this summary judgment motion is the legal significance of what may have transpired during and after phone calls between Gleckler and Plaintiff in June 2020. Plaintiff claims that during those phone calls, the two agreed to the terms of Plaintiff becoming a member of TMG. Defendants dispute that any enforceable agreement was reached. For the reasons set forth below, Defendants' summary judgment motion is denied.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment must then come forward with specific facts showing there is a genuine issue for trial. *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In reviewing the facts, the court construes them in the light most favorable to the nonmovant and draws all reasonable inferences in his favor but need not draw inferences supported by only speculation or conjecture. *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

## FACTS AT SUMMARY JUDGMENT

The Court draws the following facts from the parties' Rule 56.1 statements and responses and materials cited therein.[2] The parties vehemently disagree about the inferences that should be

---

[2] Local Rule 56.1 sets forth the procedures parties must follow when filing and responding to motions for summary judgment in the Northern District of Illinois.

drawn from the facts and raise numerous evidentiary objections to each other's proposed facts. Overall, however, there are few instances where the parties dispute the facts themselves.

## I. Background

In December 2009, Glecker and non-party Cedric Reingold formed TMG Kreations, LLC as a Delaware limited liability company. Doc. 111 ¶ 1. TMG was governed by an operating agreement ("TMG Operating Agreement" or "Operating Agreement") that set conditions for the admission of new members. It provided that "[a] person may acquire Membership Interests directly from the Company upon the written consent of all Members" and that a person acquiring membership interests "shall be admitted … after the person has agreed to be bound by the terms of this Operating Agreement by executing a consent in the form of Exhibit C." Doc. 100 ¶ 6. The "Exhibit C" referenced in the TMG Operating Agreement was a document entitled "New Member's Consent" that provided for the undersigned to be bound by the Operating Agreement and contained a line for members to sign and date. *Id.* ¶ 7. Another section of the TMG Operating Agreement provided further that it "shall not be modified or amended if [sic] any respect except by a written instrument executed by all of the Members" and that it was governed by Delaware law. *Id.* ¶¶ 8-9.

In 2018, a dispute arose between Glecker and Reingold, which led to a lawsuit that ultimately resulted in Reingold's exit from TMG. *Id.* ¶¶ 3-6; Doc. 23 at 2. In the summer of 2019, Glecker and Plaintiff began discussing Plaintiff joining TMG as a member to replace Reingold. Doc. 110 ¶ 6; Doc. 23 at 2. Plaintiff asserts that he agreed to work for TMG only on the condition that he be made a member, though Defendants dispute that Plaintiff articulated such a condition. Doc. 110 ¶ 6.

Plaintiff began working full-time at TMG in 2019. *Id.* ¶ 8. On September 20, 2019, Gleckler asked Plaintiff if he had begun preparing a written operating agreement. *Id.* ¶ 9. From February 2020 until June 2020, Plaintiff and Gleckler exchanged draft operating agreements and term sheets reflecting the details of Plaintiff's admission into TMG. *Id.* ¶ 11-13; *see also* Doc. 91-2 at 301-312, 323-351. Some of Gleckler's drafts contemplated a multi-year vesting period before Plaintiff acquired any membership stake. *See* Doc. 100 ¶ 24. On June 7, 2020, Plaintiff e-mailed Gleckler the last of these exchanged term sheets, with the e-mail stating, "Please see attached; call you in an hour." Doc. 91-2 at 303. Neither Gleckler nor Plaintiff signed this or any other exchanged document. Doc. 100 ¶¶ 60.

## II. The June 2020 phone calls

Plaintiff asserts that between June 6 and June 15, 2020, he and Gleckler had several phone calls, during which the pair finalized and came to agreement on the terms of his membership in TMG. Doc. 110 ¶ 14. The terms of this supposed agreement included that Gleckler and Plaintiff would own 70 and 30 percent of TMG, respectively; that Plaintiff would begin taking a draw against profits beginning July 1, 2020 in proportion to his membership interest (as opposed to a salary, wage, or other compensation); that profits would be distributed at year end reflecting their membership shares; and that Plaintiff would begin receiving certain member perquisites. *Id.* ¶ 15. Also around this time, Plaintiff asserts that he and Gleckler agreed to split a royalty payment from a TMG licensee based on their *pro rata* membership interest. *Id.* ¶ 20. Additionally, Gleckler and Plaintiff agreed on these calls that Plaintiff would make a $20,000 capital contribution to TMG as part of their agreement. *Id.* ¶¶ 15, 21.

Plaintiff further asserts that during these calls, Gleckler requested that Plaintiff's share in TMG's profits begin on July 1, 2020, rather than August 2019 as originally discussed. *Id.* ¶ 17.

According to Plaintiff, this meant giving up his draw for that time period and so he agreed to the later profit-sharing date only on the condition that negotiations were concluded and that he be made a member beginning July 1, 2020. *Id*. Plaintiff states that Gleckler agreed to this arrangement, and that the reason they did not at that time memorialize the terms of their arrangement was because Gleckler did not want to incur further attorney fees. *Id*. ¶¶ 17-19.

After these conversations, Plaintiff updated TMG's payroll system to reflect his alleged agreement with Gleckler, including by having his compensation changed to a draw and his status changed to part-owner with 30 percent stake in TMG. *See* Doc. 100 ¶ 37. Payroll records for the TMG pay period ending July 31, 2020 show Gleckler and Plaintiff receiving sums consistent with a 70/30 split. Doc. 101-2 at 34.

On June 30, $20,000 was deposited by Plaintiff in TMG's business checking account, with the reference note "Dean Dussias Membership Interest/Bnf/Dean Dussias Investment." *See* Doc. 110 ¶ 75. Plaintiff asserts Gleckler was aware of his contribution given that his contribution appeared in a TMG accounting system that Gleckler reviewed on a daily basis. *Id*. ¶¶ 77.

Also in the record is an e-mail sent on February 2, 2021 by Gleckler to her accountant, where she writes

> I reiterated what we discussed with Cheryl that Dean and I need to have our Operating Agreement finalized prior to TMG filing our return. Cheryl had some questions regarding the return being Dean and I have an *agreement* in place but not yet a *formalized ownership contract* until we both sign the operating agreement we are now creating.

Doc. 104-2 at 213 (emphasis in original).

### III. Membership dispute and Plaintiff's termination

Gleckler sent Plaintiff on February 6, 2021 another draft operating agreement. Doc. 110 ¶ 49. This version of the draft operating agreement provided that Plaintiff's membership interest would vest only after a term of years at TMG. *Id*.; *see also* Doc. 100 ¶¶ 41-42. Defendants

5

contend that Gleckler sent the draft as part of an ongoing discussion about Plaintiff's potential, but non-finalized, admission as a TMG member. Doc. 100 ¶ 39. Plaintiff asserts, however, that after receiving this draft, he called Gleckler to inform her that his membership was effective July 1, 2020 and point out that he and Gleckler had not agreed to any vesting schedule. Doc. 110 ¶ 50. Plaintiff attests that Gleckler acknowledged and agreed with him on this point. *Id*.

The parties continued to exchange written drafts. On February 16 and February 22, 2021, Plaintiff sent Gleckler two draft operating agreements with different terms than the draft sent by Gleckler on February 6. Doc. 100 ¶¶ 45-50. None of these agreements were signed by Plaintiff or Gleckler. *Id*. ¶¶ 44, 48, 51. Additional draft agreements were sent to Plaintiff by Gleckler's counsel in April 2021, but again, nothing was signed. *Id*. ¶¶ 54-59.

On April 22, 2021, Gleckler sent Plaintiff a notice of termination and informed him he was not a member of TMG. Doc. 110 ¶¶ 65, 67. While the parties quarrel over whether this exchange constituted an employee firing, it is undisputed that since April 2021, Plaintiff has received no draw or any other compensation from Defendants. *Id*. ¶ 72.

## ANALYSIS

Defendants seek summary judgment on all six counts of Plaintiff's complaint. They argue that it is undisputed that the member admission requirements of the TMG Operating Agreement were unmet and that Plaintiff cannot otherwise establish his membership interest. Plaintiff's argument opposing summary judgment relies on evidence that Defendants have challenged as inadmissible, and so before resolving the merits, the Court addresses Defendants' evidentiary challenges.

6

### I. Admissibility of Evidence Supporting Statements of Facts

At summary judgment, the court "may consider any material that would be admissible or usable at trial." *Aguilera v. Cook Cty Police & Corrs. Merit. Bd.*, 760 F.2d 844, 849 (7th Cir. 1985). In his statement of additional material facts, Plaintiff describes several phone calls between Glecker and himself in June 2020, which is when he contends they finalized and agreed to the terms of his membership in TMG. *See* Doc. 101 ¶¶ 14-15, 17-18, 20-22. Defendants argue that these assertions must be disregarded because they are inadmissible hearsay, violate the sham affidavit rule, lack foundation, and are self-serving.

Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted, and it is inadmissible. FED R. EVID. 801(c); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Out-of-court statements excluded from the definition of hearsay include statements "offered against an opposing party and … made by the party in an individual or representative capacity." FED R. EVID. 801(d)(2)(A). Additionally, "[s]tatements that constitute verbal acts (e.g., words of contract or slander) are not hearsay because they are not offered for their truth." *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007); *see also* FED R. EVID. 801(c) Advisory Committee Notes ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). Also outside the scope of hearsay are statements intended to show a speaker's state of mind or offers and negotiations between parties. *See E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 333 (7th Cir. 2002) (statement offered to show speaker's "state of mind" are "expressly excluded … from the hearsay rule"); *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 892 (7th Cir. 1995) (spoken offers and negotiations not hearsay).

Where Plaintiff's declaration describes statements made by Gleckler, a defendant in this action, these statements are not hearsay because Gleckler is a party opponent and Plaintiff offers the statements against her. FED R. EVID. 801(d)(2)(A). Moreover, Gleckler's statements are offered primarily as evidence of her offer to waive the requirements of the TMG Operating Agreement and her consent to Plaintiff becoming a member in TMG. As such, they are not asserted for their truth, and so would not be hearsay even if Gleckler were not a party-opponent. As for Plaintiff's side of the conversation, his statements are offered to demonstrate their effect on the listener, to give context to Glecker's responses, and to indicate whether an agreement was formed rather than for any underlying truth. For these reasons, the conversations described in Plaintiff's declaration are admissible.

Defendants invoke the "sham-affidavit rule," which allows courts to disregard at summary judgment "an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). The purpose of the rule is to "weed out unfounded claims, specious denials, and sham defenses" and ensure that a "genuine issue of material fact cannot be conjured out of nothing." *Id*. Defendants assert that Plaintiff's declaration, which he relies on as evidence for certain paragraphs of his statement of material facts, is inconsistent with his prior deposition testimony. While there are arguably some inconsistencies, they do not merit application of the sham affidavit rule. Defendants note that when deposed, Plaintiff testified that key phone conversations between him and Gleckler took place between May and June 2020, whereas his declaration asserts they took place only in June 2020. *See* Doc. 111 ¶ 14. Even if the Court disregards the inconsistent portion of the declaration—as the sham affidavit rule permits—there is still a genuine issue for trial, as Defendants have not articulated why it matters that certain phone calls occurred in May 2020

8

rather than June 2020. Defendants also point out that at his deposition, Plaintiff failed to "list nearly all the terms he now recites in his declaration" or describe fully requests Gleckler supposedly made during these conversations. *Id.* ¶¶ 15, 17. The Court has reviewed the portions of Plaintiff's deposition cited by Defendants and found nothing plainly contradictory. Indeed, when asked whether his listing of terms or requests was exhaustive, Plaintiff stated that there might be other terms he could not recall at the moment, *see* Doc. 91-2 at 66, 77, and so his deposition testimony does not actually contradict his later declaration.

Defendants also contend that the facts asserted in Plaintiff's statement of material facts are inadmissible for lack of foundation. "[N]o rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637-38 (7th Cir. 2001). Defendants complain that Plaintiff does not assert specific statements made by Gleckler on any of the at-issue calls, and that Plaintiff has not produced call logs, phone records, or screenshots. But Defendants cite no case or rule holding that this sort of specificity is required to admit Plaintiff's testimony about events he personally experienced. The problems Defendants note speak to the weight of the evidence, not its admissibility.

Finally, Defendants contend that Plaintiff has fabricated questions of fact through a self-serving declaration. However, self-serving statements are admissible. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Therefore, the Court rejects Defendants' admissibility objections as to the evidence relevant to this summary judgment motion, and turns to the merits of the parties' arguments.

9

## II. Plaintiff's Membership in TMG

Defendants argue that Plaintiff never became a TMG member because he did not meet the TMG Operating Agreement's requirements for new member admission. Plaintiff does not dispute that the requirements were not met, but argues Gleckler waived strict compliance with the Operating Agreement and made Plaintiff a TMG member by oral agreement. Accordingly, the Court will analyze first whether Plaintiff may avail himself of an equitable waiver defense to enforcement of the TMG Operating Agreement, and then whether a jury could find on the record that Plaintiff acquired a membership interest in TMG.

### a. Waiver

Under Delaware law, an LLC can be established through the execution of a written agreement, which then "serves as the primary source of rules governing the affairs of a limited liability company and the conduct of its business." *In re Coinmint, LLC*, 261 A.3d 867, 890 (Del. Ch. 2021). The agreement may condition the admission of new members into the LLC on the occurrence of express requirements; if the agreement is silent, a person is admitted into an LLC "upon the consent of all members." 6 Del. Cod. tit. 6 § 18-301(b)(1). In this case, it is undisputed that the TMG Operating Agreement conditioned new member admission on written consent of TMG's existing members and the prospective member signing a new member's consent document. *See* Doc. 100 ¶¶ 6-7. However, Plaintiff asserts these requirements do not apply to him because Gleckler waived strict adherence to the Operating Agreement. The question therefore becomes whether an LLC's operating agreement's dictates can be orally waived.

Applying Delaware law, the Court concludes that an LLC's operating agreement requirements can be waived. "Limited liability companies are creatures of contract." *Coinmint*, 261 A.3d at 889. And "[i]t is well settled in Delaware that a party may waive contractual

requirements or conditions." *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 27 A.3d 522, 529 (Del. 2011). An LLC acts through its representatives. Whether the acts of those representatives legally bind the LLC depends on the nature of the action taken. "Action that is otherwise permissible, but fails to adhere to provisions of a limited liability company agreement, is voidable, not void, and so can be validated in equity." *Coinmint*, 261 A.3d at 890-91; *Holifield v. XRI Investment Holdings LLC*, 304 A.3d 896, 924 (Del. 2023) (holding that "courts retain an inherent measure of authority and equitable power with respect to limited liability companies."). Thus, while Delaware law allows drafters of LLC agreements to require strict adherence to their terms before an action is authorized, this must be achieved by language in the agreement deeming such an action "void." *Coinmint*, 261 A.3d at 890-91; *cf. Steele v. Rosenfeld, LLC*, 936 So.2d 488 (Ala. 2005) (refusing to enforce oral agreement where LLC agreement contained the provision "[v]iolation of the provisions of this [agreement] *shall be null and void and of no effect for any purpose.*"). As Defendants have not pointed to any such "voiding" language in the TMG Operating Agreement, Plaintiff may raise an equitable waiver defense.

   The Court is not persuaded by the cases cited by Defendants because none addressed the issue of equitable waiver. *See, e.g., Alaska Fin. Co. III, LLC v. Global Mortgage Grp., LLC*, 2018 WL 574940, at *3 (D. Del. Jan. 27, 2018) (plaintiff seeking recognition of interest in an LLC based on plaintiff's transfer of cash to one of the LLC's members did not raise waiver); *Riverside Risk Advisors LLC v. Chao*, 2022 WL 14672745, *2 (Del. Ch. Oct. 26, 2022) (court explicitly did not address equitable defenses). Defendants correctly note that Section 18-106(e) of the Delaware LLC Act—which authorizes waiver—was not in effect until after the acts that Plaintiff contends give rise to waiver. However, Delaware courts applied equitable defenses to enforcement of LLC agreements before passage of Section 18-106(e). *See*, *e.g.*, *Coinmint*, 261

A.3d at 893-896 (considering equitable defenses of waiver, estoppel, and acquiescence to enforcement of LLC agreement).

The relevant question therefore becomes whether a genuine dispute of fact exists as to Gleckler waiving the TMG Operating Agreement's requirement that a member must be admitted with a signed writing. Waiver is "the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power." *Nathan Miller, Inc. v. Northern Ins. Co. of New York*, 39 A.2d 23, 25 (Del. 1944). Under Delaware law, the standards of waiver are "quite exacting" and require proof that a waivable requirement or condition exists, of which the waiving party was aware, that was intentionally waived. *Amirsaleh*, 27 A.3d at 529-30. "Intention forms the foundation of the doctrine of waiver, and an intention to waive must appear clear from the record evidence." *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 445 (Del. 2005). Once waiver occurs, the waiving party may not retract the waiver if the non-waiving party has suffered prejudice or relied to his detriment on the waiver. *Amirsaleh*, 27 A.3d at 530.

The parties agree that the operating agreement created a requirement or condition that would need to be waived for the agreement to be enforceable. As to whether Gleckler was aware of the written consent requirement, in a November 2013 e-mail from Plaintiff to Gleckler, the parties discussed a third-party claiming ownership interest in TMG. *See* Doc. 91-2 at 100. Plaintiff told Gleckler that this individual had not complied with the admission requirements laid out in the TMG Operating Agreement. *Id*. Construing the facts in the light most favorable to Plaintiff, the Court concludes a jury could find that Gleckler understood the TMG Operating Agreement's member admission requirements. Similarly, a jury could find Gleckler intended to waive the TMG Operating Agreement's member admission requirements with respect to

12

Plaintiff. For example, Plaintiff asserts that during his June 2020 calls with Gleckler, she expressed that "she did not want to incur additional attorney fees getting an agreement drawn up to memorialize these terms," that Plaintiff should consider the prior operating agreement "gone," and that it would not be applicable to Plaintiff's membership. Doc. 110 ¶ 18. Thereafter, changes were made to the TMG payroll system reflecting Plaintiff's ownership interest, *see* Doc. 100 ¶ 37, and Gleckler asserted to her accountant that "Dean and I have an *agreement* in place but not yet a *formalized ownership contract*." Doc. 104-2 at 213. Based upon this, a reasonable jury could find that Gleckler intended to waive the protection and benefit of the TMG Operating Agreement's member admission requirements.

Defendants point out that after June 2020, the parties continued exchanging draft operating agreements, none of which were signed, and Gleckler denied Plaintiff's membership status in April 2021. It is true that a party can retract their waiver, but only if the non-waiving party has not suffered prejudice or relied on the waiver to his detriment. *Amirsaleh*, 27 A.3d at 530. Plaintiff states that following his June 2020 negotiations with Gleckler, he agreed to have profit-sharing begin on July 1, 2020 rather than August 2019 and that he would not have continued working at TMG had agreement not been reached. Doc. 110 ¶ 17. The Court finds that a jury could reasonably infer detrimental reliance from these asserted facts, insofar as Plaintiff chose to continue working at TMG on the understanding that he was a part-owner and member.

For the foregoing reasons, the Court concludes that there is genuine dispute of fact as to whether Gleckler waived the member admission requirements of the TMG Operating Agreement.

b. **Membership**

Defendants argue that even if Gleckler waived compliance with the TMG Operating Agreement's member admission requirements, Plaintiff and Gleckler never reached an enforceable oral agreement regarding Plaintiff's admission to TMG. The Court is not sure this is the right question. The Delaware LLC Act provides that a person may be admitted as a member of an LLC "at the time provided in and upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, upon the consent of all members or as otherwise provided in the limited liability company agreement." 6 Del. Code tit. 6 § 18-301(b)(1). The Court reads this provision to mean that whether Plaintiff has a membership interest in TMG could be proven by evidence of Glecker's consent, and not necessarily proof of all elements of an enforceable oral agreement under Delaware law (though to be sure, evidence sufficient to prove an oral agreement would also suffice to prove consent).

But in any event, construed in the light most favorable to Plaintiff, the current record could support a jury finding that Gleckler consented to Plaintiff's admission as a member and that the parties formed an oral agreement as to the material terms of that membership. In the preceding section on waiver, the Court described how a jury could conclude that Glecker intended to waive the TMG Operating Agreement's member admission requirements. Much of those same facts support the inference that Gleckler consented to making Plaintiff a TMG member, including her *pro rata* splitting of payments with Plaintiff, her acquiescence to Plaintiff's $20,000 capital contribution and changes he made to the payroll system, and her own statement from February 2021 evincing her belief that she and Plaintiff had reached an agreement as to his membership status. The Court finds these facts sufficient to raise a genuine dispute as to whether Gleckler consented to Plaintiff's admission as a TMG member.

14

In summary, the Court finds that genuine issues of fact remain as to whether Gleckler waived the member admission requirements laid out in the TMG Operating Agreement, and if so, whether she consented to Plaintiff's admission as a member. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim for declaratory relief is denied.

    c. **Supplemental Claims and Other Issues**

Defendants also seek summary judgment on Plaintiff's supplemental claims on the grounds that Plaintiff cannot establish a genuine issue of disputed fact as to his ownership interest in TMG. In light of the Court's conclusion to the contrary, the Court denies Defendants' motion for summary judgment on Plaintiff's supplemental claims for the same reason it denies summary judgment as to his claim for declaratory relief.

Both parties have also requested the Court strike or disregard certain facts from each other's statements of material fact, as well as various exhibits cited therein. *See* Doc. 102 at 27-28; Doc. 109 at 16-17. The Court has addressed the parties' admissibility arguments as to evidence required for purposes of the Cout's ruling on this motion. As to the remaining disputes, the Court finds it unnecessary to rule on the parties' request to strike or disregard, and therefore declines to do so.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment.

Dated: June 9, 2025

                                                         APRIL M. PERRY
                                                         United States District Judge